UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DODSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TEMPUR-SEALY INTERNATIONAL, INC., et al., <br><br> Defendants. | Case No. 13-cv-04984-JST <br><br> **ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE** <br><br> Re: ECF Nos. 18, 19 |

In this putative class action for violations of California's Consumer Legal Remedies Act, California's Unfair Competition Law, California's False Advertising Law, and various other states' consumer protection laws, Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the first amended complaint ("FAC"). Additionally, Defendants move to strike Plaintiffs' class allegations. For the following reasons, both motions are DENIED.

**I.   BACKGROUND**

Plaintiffs bring this action on their own behalf and on behalf of a putative class of purchasers of Tempur products against Defendants Tempur-Sealy International, Inc. and Tempur-Pedic North America, LLC (collectively "Defendants") for claims arising out of Defendants' marketing and sale of mattresses, pillows, and other bedding products containing "Tempur" material.[1]  Specifically, Plaintiffs allege that Defendants' representation of their Tempur products as "formaldehyde free," "free of harmful (volatile organic compounds) VOCs," "allergen resistant," and "hypoallergenic" are false and misleading, because "reliable testing of Tempur-pedic products reveals that formaldehyde and other potentially harmful VOCs, that can trigger

---

[1] Plaintiffs are Michael Dodson, Alvin Todd, Henry and Mary Thompson, Robbie Simmons, Tina White, Keith Hawkins, Thomas Comiskey, Louis Pace, Patricia Kaufman, Johnny Martinez, Rosemarie Valdez, Toni Kibbee, and Brian Stone.

allergy and asthma symptoms, are present in Tempur-pedic products and in the chemicals off-gassing from Tempur-pedic products." FAC ¶ 11.

Plaintiffs bring twenty-four claims under the laws of eleven states: (1) a claim for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. §§ 17200 et seq.; (2) a claim for violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. §§ 17500 et seq.; (3) a claim for violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; (4) a claim for violations of Illinois' Consumer Fraud and Deceptive Practices Act; (5) unjust enrichment under Illinois' common law; (6) a claim for violations of Maryland's Consumer Protection Act; (7) unjust enrichment under Maryland state common law; (8) a claim for violations of Massachusetts' Consumer Protection Act.; (9) unjust enrichment under Massachusetts state common law; (10) a claim for violations of Missouri's Merchandising Practices Act; (11) unjust enrichment under Missouri state common law; (12) a claim for violations of North Carolina General Statute; (13) unjust enrichment under North Carolina state common law; (14) a claim for violations of New Jersey's Consumer Fraud Act; (15) unjust enrichment under New Jersey state common law; (16) a claim for violations of New Mexico's Unfair Practices Act; (17) unjust enrichment under New Mexico state common law; (18) a claim for violations of New York's Deceptive Acts and Practices law; (19) a claim for violations of New York's False Advertising law; (20) unjust enrichment under New York state common law; (21) a claim for violations of Washington's Consumer Protection Act; (22) unjust enrichment under Washington state common law; (23) a claim for violations of Wisconsin's Deceptive Trade Practices Act; and (24) unjust enrichment under Wisconsin state common law.

The Court has jurisdiction over this action under 28 U.S.C. § 1332(d).

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. When dismissing a complaint, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995).

### B.    Pleading Fraud

A plaintiff asserting a claim sounding in fraud must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which require the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff satisfies her pleading burden under Rule 9(b) by alleging the "who, what, where, when, and how" of the charged misconduct. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).

### C.    Motion to Strike

A court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." Whittlestone, Inc. v. Handi–Craft Co., 618 F.3d 970, 973 (9th Cir. 2010).

## III.    DISCUSSION

### A.    Motion to Dismiss

Defendants move to dismiss each of the claims in the complaint on the ground that the advertisements and representations at issue are protected by a safe harbor, that Plaintiffs fail to plead sufficient facts under Iqbal, and where applicable, that Plaintiffs fail to plead sufficient facts to satisfy the heightened pleading requirements of Rule 9(b). Defendants also contend that several state claims are barred by the applicable statutes of limitations and that Plaintiffs lack standing to pursue their claims.

The Court addresses each of these arguments in turn.

### 1. Safe Harbors

Plaintiffs allege that Defendants made numerous misrepresentations regarding the nature and chemical makeup of their Tempur products. Specifically, Plaintiffs aver that the following representations made by the Defendants were false or misleading: that Tempur products (1) are "formaldehyde free;" (2) are "free of harmful VOCs;" (3) are "allergen resistant" or "hypoallergenic;" (4) are "completely safe;" (5) are "harmless;" and (6) have only a "slight odor" that will "dissipate in a few days." FAC ¶¶ 5, 7, 9, 10, 11, 138. Plaintiffs also allege that Defendants explicitly omitted from their statements: (1) the fact that numerous health agencies list formaldehyde as a "known human carcinogen;" (2) that VOCs "can be and are often allergenic;" and (3) that Tempur-pedic has received many "customer complaints . . . claiming Tempur-pedic's products were causing them allergic reactions . . . ." FAC ¶¶ 6, 8, 48, 96. Thus, Plaintiffs' allegations thus arise out of the undisclosed presence of formaldehyde and VOCs contained in or emitted from Defendants' Tempur products.

Defendants move to dismiss all claims in the complaint on the ground that California's Business and Professions Code section 17580.5(b) provides a safe harbor that shields them from liability for representing their products as free from formaldehyde and VOCs even if the products did, in fact, contain formaldehyde and VOCs.

As will be discussed below, Defendants fail to show that California's Business and Professions Code section 17850.5(b) applies to the claims at issue in this action.

The California Supreme Court has described its state's 'safe harbor' doctrine in this manner:

> Although the unfair competition law's scope is sweeping, it is not unlimited . . . . Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor.

Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1164 (9th Cir. 2012) (citing Cel-Tech Commc'ns, Inc., v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 182 (1999)). "Under the safe harbor

4

doctrine, '[t]o forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct.'" Id. (citing Cel-Tech, 20 Cal. 4th at 183).

Section 17850.5(a) makes it unlawful for any entity "to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied." Cal. Bus. & Prof. Code § 17580.5(a). It defines the term "environmental marketing claim" as including any claim outlined in the "Guides for the Use of Environmental Marketing Claims" distributed by the Federal Trade Commission ("FTC Guides"). Id. Section 17580.5(b) establishes a defense "to any suit or complaint brought under [section 17580.5(a)]" if the "environmental marketing claims conform to the standards or are consistent with the examples contained in the 'Guides for the Use of Environmental Marketing Claims' published by the Federal Trade Commission." Cal. Bus. & Prof. Code § 17580.5(b).

Plaintiffs contend that neither section 17850.5 nor the FTC Guides shield Defendants from liability for two reasons. First, Plaintiffs contend that section 17580.5 offers a "safe harbor" only for claims "targeting misrepresentations relating to environmental impact" rather than claims involving health and safety misrepresentations, such as the ones at issue here. Second, Plaintiffs argue that, even if section 17580.5 applies to Defendants' conduct, Defendants have not and cannot meet their burden to show that their products do not cause material harm and thus fall within the safe harbor at this stage of the litigation, because the question of whether the safe harbor applies is a question of fact that cannot be resolved on a motion to dismiss.

The Court concludes that the safe harbor in section 17850.5(b) does not apply to the conduct at issue in this action, because that provision, by its own terms, can only be used as "a defense to any suit or complaint brought under [section 17850.5(a)]." See Cal. Bus. & Prof. Code § 17580.5(b). Here, Plaintiffs do not bring any claims under section 17850.5(a), which makes unlawful any "untruthful, deceptive, or misleading environmental marketing claim[s]." Environmental marketing claims must be based on representations as to "the natural environment," such as "ecologically friendly," "earth friendly," "environmentally friendly," "ecologically sound," "environmentally sound," "environmentally safe," "ecologically safe," "environmentally lite," or "green product[.]" See Cal. Bus. & Prof. Code § 17580; 16 C.F.R.

5

§260.1 et seq (Guides for the Use of Environmental Marketing Claims). No such misrepresentations are alleged here.

### 2. California's Consumer Legal Remedies Act ("CLRA")

Defendants move to dismiss Plaintiffs' claims under the CLRA. They argue that Plaintiffs' "claims fail for the reasons set forth in Sections III-VI [of the motion]," which are that Plaintiffs have failed to plausibly allege any cognizable cause of action, actual reliance, a claim based on a nondisclosure of facts, or a duty to disclose.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any customer." Cal. Civ. Code § 1770(a). Such acts and practices include representing that goods have characteristics that they do not have, representing that goods are of a particular quality when they are of another, and advertising goods with the intent to not sell them as represented. Cal Civ. Code §§ 1770(a)(5), 1770(a)(7), 1770(a)(9).

A plaintiff may bring a claim under the CLRA for a failure to disclose a material fact if the plaintiff shows that the defendant had a duty to disclose such a fact. To establish a duty to disclose under California law, a plaintiff must plausibly plead that at least one of the following four circumstances exists: (1) the defendant was in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively concealed a material fact from the plaintiff; or (4) the defendant made partial representations but also suppressed some material fact. Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1095 (N.D. Cal 2007) (citing LiMandri v. Judkins, 52 Cal. App. 4th 326, 337 (1997)). Additionally, a plaintiff asserting a CLRA claim must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (finding that "Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL").

Here, Plaintiffs do not allege that a fiduciary relationship exists between the parties. Therefore, Plaintiffs must plead facts showing that at least one of the remaining circumstances giving rise to a duty to disclose exists. Each of the three remaining circumstances requires the

existence of a material fact.  Non-disclosed information is material if, "had the omitted information been disclosed, one would have been aware of it and behaved differently." Falk, 496 F. Supp. 2d at 1095 (citing Mirkin v. Wasserman, 5 Cal. 4th 1082, 1094 (1993)).  Within the context of a claim under the CLRA, whether a fact is material is judged from the perspective of a "reasonable consumer." Id. (citing Consumer Advocated v. Echostar Satellite Corp., 113 Cal. App. 4th 1351, 1360 (2003)).

The Court concludes that Plaintiffs have sufficiently pleaded the existence of two of the remaining circumstances giving rise to a duty to disclose.

First, Plaintiffs sufficiently allege that Defendants had exclusive knowledge of the chemical contents of its products and the existence of VOCs and formaldehyde.  Plaintiffs are not in a position to know the presence of such chemicals in the products, especially given that Defendants attributed the products' odor to the "manufacturing process." FAC ¶ 4.  Further, Defendants had exclusive access to the chemical contents of its Tempur products, the nature and degree of chemicals off-gassing from its products, and the volume and contents of customer complaints of allergic reactions and symptoms.  FAC ¶ 169.

Second, Plaintiffs plausibly allege that Defendants actively concealed the contents of their Tempur products because advertisements and promotional materials specifically attributed the products' strange odor to a "manufacturing process" and explicitly represented that Tempur material is "free of harmful VOCs such as formaldehyde and CFC–harsh chemicals that can trigger allergies and asthma." FAC ¶¶ 4, 10.

Additionally, Plaintiffs have plausibly pled that the presence of VOCs and formaldehyde was material because they allege that they would not have purchased the Tempur products or would have paid less for them had they known the true contents of the products.  FAC ¶¶ 132, 141.

These allegations are sufficient to draw the reasonable inference that Defendants had a duty to disclose the true chemical contents of the Tempur products and the possible ramifications of such chemicals being present in the Tempur material.

Furthermore, the Court concludes that Plaintiffs have also sufficiently plead the "who,

what, when, where, and how" required by Rule 9(b). Plaintiffs have plausibly alleged that (1) since at least September 2007 and continuing through at least August 7, 2013, Defendants have misrepresented the contents and quality of its Tempur products and omitted the fact that such products were "free of harmful VOCs such as formaldehyde and CFCs" on its website, in its retail in-store brochures, and in other marketing materials; (2) such representations and omissions were likely to deceive a reasonable consumer because Plaintiffs did not have access to information regarding the chemical makeup of its products; (3) that Plaintiffs relied on Defendants' misrepresentations and omissions in purchasing the Tempur products; and (4) that Defendants' misrepresentations and omissions caused injury to Plaintiffs in that Plaintiffs would not have purchased, or would have purchased at a significantly reduced price, the Tempur products had Plaintiffs known their true contents. FAC ¶¶ 10, 54-56, 141, 156.

Plaintiffs have also sufficiently pleaded the "who" required by Rule 9(b). In an alleged multi-defendant fraud conspiracy, the rule in this circuit is that "[i]n the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." Fields v. Wise Media, LLC, No. C-12-05160-WHA, 2013 WL 3187414 at *4 (N.D. Cal. June 21, 2013) (citing Swartz v. KPMG LLP, 476 F.3d 756, 764–65 (9th Cir. 2007). Plaintiffs are not required, at the pleading stage, to identify which of the Defendants made each particular alleged misrepresentation, particularly where Defendants allegedly had overlapping marketing responsibilities, FAC ¶¶ 37-38, and it is peculiarly within their knowledge which defendant "made" each alleged misrepresentation within the context of their respective marketing campaigns. Fields, 2013 WL 3187414, at *4.

As Plaintiffs have pleaded sufficient facts to state a claim under the CLRA, Defendants' motion to dismiss this claim is DENIED.

### 3. California's False Advertising Law ("FAL")

The FAL makes it unlawful for any person or entity to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" in connection with the sale of "real or personal property" or "services." Cal. Bus. & Prof. Code § 17500. The FAL encompasses not just false statements, but

also those that "may be accurate on some level, but will nonetheless tend to mislead or deceive." Ariz. Cartridge Remfrs. Ass'n, Inc. v. Lexmark Int'l, Inc., 421 F.3d 981, 985 (9th Cir. 2005).

Whether advertising is false or misleading under the FAL will be determined from the perspective of the "reasonable consumer." Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) (citation omitted). "Under the reasonable consumer standard, [a plaintiff] must show that members of the public are likely to be deceived [by the advertising]." Id. (citation and internal quotations omitted). Because claims under the FAL are "grounded in fraud," they must also satisfy the heightened pleading standards of Rule 9(b). See Yumul v. Smart Balance, Inc., 733 F. Supp. 2d 1117, 1122-23 (C.D. Cal. 2010) (citing Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003)).

Defendants move to dismiss Plaintiffs' FAL claim. Once again, Defendants argue that "Plaintiff's FAL claim fails for the same reasons as stated in Sections III - VI [of the motion]," which are that Plaintiffs have not plausibly alleged any cognizable cause of action, actual reliance, a claim based on a nondisclosure of facts, a duty to disclose, and any cause of action under the UCL. Mot. at 16. In a parenthetical, Defendants suggest that, specifically, the FAL claim fails because "Plaintiffs fail to allege the specific representation which was viewed by each representative plaintiff." Id. at 10-11 (citing Davis-Miller v. Auto. Club of So. Cal., 201 Cal. App. 4th 106, 117 (2011)).

The Court concludes that Defendants' motion must be DENIED.

First, the Court has already rejected the arguments upon which the motion is predicated in section III.A.2, supra, and it also found that Plaintiffs' allegations satisfy the requirements of Rule 9(b).

Second, to the extent that Defendants contend that Plaintiffs have not alleged reliance because they have not alleged that each of them viewed the advertisements at issue, the Court is not persuaded by that argument, because it is premised on Davis-Miller, which is inapposite. The holdings in Davis-Miller pertain to the existence of commonality in the context of class certification. Davis-Miller, 201 Cal. App. 4th at 117. Nevertheless, Davis-Miller is helpful in that it points to In re Tobacco II as containing the correct standard to determine reliance in connection

with false advertisements. See In re Tobacco II Cases, 46 Cal. 4th 298, 306 (2009). There, the California Supreme Court held that:

> [W]here . . . a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements. . . . [A] plaintiff must plead and prove actual reliance to satisfy the standing requirement . . . but . . . is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where . . . those misrepresentations and false statements were part of an extensive and long-term advertising campaign.

Id. at 328.

The question of when to apply the Tobacco II exception is not an easy one, and the appellate courts have yet to draw bright lines for its application. This Court has previously observed "that the Tobacco II 'exception' appears to be a narrow one," Haskins v. Symantec Corp., No. 13-CV-01834-JST, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013); see also Rodman v. Safeway, Inc., No. 11-CV-03003-JST, 2014 WL 988992 (N.D. Cal. Mar. 10, 2014) (describing the exception as "limited"), and other courts have expressed the fear that over-application of the exception would "swallow the rule" requiring plaintiffs to plead reliance. See, e.g., In re WellPoint, Inc. Out-of-Network UCR Rates Litig., 903 F. Supp. 2d 880, 926 (C.D. Cal. 2012).

The present case is a close call. Weighing the arguments on both sides, however, the Court concludes that Plaintiffs have sufficiently pleaded reliance under Tobacco II. Plaintiffs allege that Defendants' misrepresentations have been extensive, appearing within in-store brochures, on Tempur-pedic's website, and on its official Facebook page. FAC ¶¶ 5, 11, 25. Further, such misrepresentations have allegedly taken place since at least 2007. Id. ¶ 9. Accordingly, because the allegations in the complaint sufficiently raise the inference that the representations at issue were "part of an extensive long term advertising campaign," this claim cannot be dismissed on the ground that Plaintiffs have not established reliance.

### 4. California's Unfair Competition Law ("UCL")

Plaintiffs allege that Defendants violated each of the three prongs of the UCL because Defendants failed to disclose or misrepresented the presence and amount of formaldehyde and VOCs in their products, which is unlawful, unfair, and fraudulent.

10

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "An act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (2007).

### a. Unlawful Prong

An act is unlawful under the UCL if it violates another law. "[V]irtually any state, federal or local law can serve as the predicate for an action under section 17200." Davis, 691 F.3d at 1168 (citing People ex rel. Bill Lockyer v. Fremont Life Ins. Co., 104 Cal. App. 4th 508, 515 (2002).

Plaintiffs allege that Defendants' omissions and misrepresentations violate the UCL because they are unlawful under California Civil Code §§ 1709, 1710, and 1711, the CLRA, the FAL, and California common law.

Defendants move to dismiss this claim on the grounds that (1) the CLRA and the FAL cannot serve as predicate statutes because Plaintiffs have failed to plead a violation under the CLRA or the FAL; and (2) California Civil Code §§ 1709-11 cannot serve as predicate statutes because Plaintiffs have failed to allege facts meeting the specific elements of those statutes.

First, as discussed above, Plaintiffs have sufficiently stated a claim under the CLRA and the FAL. This alone is sufficient to deny Defendants' motion with respect to this claim. Plaintiffs also have sufficiently stated a claim under California Civil Code sections 1709-11, which in turn also requires the denial of Defendants' motion.

California Civil Code section 1709 makes it unlawful to "willfully deceive[] another with intent to induce him to alter his position to his injury or risk." Cal. Civ. Code § 1709. Section 1710 defines deceit broadly as: (1) the suggestion, as a fact, of what which is not true, by one who does not believe it to be true; [t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; (3) [t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or (4) a promise, made without any intention of performing it. Cal. Civ. Code § 1710. Section 1711 widens the applicability of section 1709 and provides that "[o]ne

who practices a deceit with intent to defraud the public . . . is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit." Cal. Civ. Code § 1711.

Here, Plaintiffs have stated a claim under sections 1709-11 and have satisfied the requirements of Rule 9(b) with respect to these claims. Plaintiffs have plausibly alleged that (1) since at least September 2007 and continuing through at least August 7, 2013, Defendants have misrepresented the contents and quality of its Tempur products and omitted the fact that such products were "free of harmful VOCs such as formaldehyde and CFCs" on its website, in its retail in-store brochures, and in other marketing materials; (2) such representations and omissions were likely to deceive a reasonable consumer because Plaintiffs did not have access to information regarding the chemical makeup of its products; (3) that Plaintiffs relied on Defendants' misrepresentations and omissions in purchasing the Tempur products; and (4) that Defendants' misrepresentations and omissions caused injury to Plaintiffs in that Plaintiffs would not have purchased, or would have purchased at a significantly reduced price, the Tempur products if Plaintiffs had known their true contents. FAC ¶¶ 10, 54-56, 141, 156. Because Plaintiffs have stated a claim under the unlawful prong of the UCL based on the CLRA, the FAL, and California Civil Code §§ 1709-11, Defendants' motion to dismiss this claim is DENIED.

### b.  Unfair Prong

"The UCL does not define the term 'unfair' as used in Business and Professions Code section 17200," Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1364 (2010), and "[t]he standard for determining what business acts or practices are 'unfair' in consumer actions under the UCL is currently unsettled." Yanting Zhang v. Superior Court, 57 Cal. 4th 364, 380 n. 9 (2013). In this circuit, in the consumer context, a practice may be deemed unfair if either (1) it is tethered to specific constitutional, statutory, or regulatory provision, or (2) its harm to consumers outweighs its utility. Lozano v. AT & T Wireless Servs. Inc., 504 F.3d 718, 736 (9th Cir. 2007).[2]

---

[2] The parties' briefs do nothing to assist the Court in resolving the confusion over the appropriate test for unfairness. The Defendants take their definition of "unfair" from an Eleventh Circuit case that was considering the Federal Trade Commission Act, not California's Unfair Competition Law. ECF No. 18 at p. 14 (citing Orkin Exterminating Co., Inc. v. F.T.C., 849 F.2d 1354 (11th Cir. 1988)). Plaintiffs cite Camacho v. Auto. Club of S. California, 142 Cal. App. 4th 1394

Here, it is unnecessary to apply the first test, because Plaintiffs allegations easily satisfy the second. Plaintiffs allege that Defendants' misrepresentations concerning the content of their products led Defendants' customers to purchase products that triggered class members' allergies and caused other harm. In their motion, Defendants offer no arguments concerning the utility of the alleged misrepresentations. Thus, the FAC adequately states a claim under the "unfairness" prong of the UCL.

Accordingly, Defendants' motion to dismiss this claim is DENIED.

#### c. Fraudulent Prong

A plaintiff may bring a claim under the fraudulent prong of the UCL if the defendant's conduct is "likely to deceive." Newsom v. Countrywide Home Loans, Inc., 714 F. Supp. 2d 1000, 1012 (N.D. Cal. 2010) (citing Morgan v. AT & T Wireless Servs. Inc., 177 Cal. App. 4th 1235, 1249 (2009)). To state a claim for fraud under the UCL, a plaintiff must allege the existence of (1) a duty to disclose, and (2) reliance. Id. Additionally, a claim for fraudulent conduct under the UCL must meet the heightened pleading requirements of Rule 9(b). See Kearns, 567 F.3d at 1125.

Defendants move to dismiss Plaintiffs' claims under the fraudulent prong of the UCL "for the same reasons articulated in Sections III - VI [of the motion]." Mot. at 16. The Court has already rejected these arguments in section III.A.3.a., supra, and it also found that Plaintiffs had sufficiently complied with Rule 9(b)'s heightened pleading requirements. Accordingly, Defendants' motion to dismiss this claim is DENIED.

### 5. Plaintiffs' State-law Claims

Defendants move to dismiss Plaintiffs' non-California state-law claims on the ground that "Plaintiffs have failed to allege Tempur engaged in any unfair or deceptive conduct or that Plaintiffs have been injured as a result of the alleged conduct." Mot. at 18. Each non-California state-law claim requires a factual showing as to elements that are the same or substantially similar to the elements of the California claims at issue. Because the Court has concluded that Plaintiffs

---

(2006), whose "unfairness" test the Ninth Circuit has expressly declined to apply in the consumer context. Lozano, 504 F.3d at 736.

13

have adequately pleaded each of the California claims, Defendants' motion to dismiss the non-California claims is DENIED.

### 6. Statutes of Limitations

Defendants contend that the claims of Plaintiffs Michael Dodson and Rosmarie Valdez are barred by the applicable statute of limitations under California and New York law.

Plaintiffs respond that the statute of limitations applicable to these claims has been "tolled by Defendants' fraudulent concealment, the discovery rule, and/or the continuing violations rule." FAC ¶ 158.

#### a. Statute of limitations under California Law

Any claim brought under the CLRA "shall be commenced not more than three years from the date of the commission of such method, act, or practice." Cal. Civ. Code § 1783. Claims brought under the FAL and the UCL "shall be commenced within four years after the cause of action accrued." Cal. Bus. & Prof. Code § 17208.

The Ninth Circuit has recently explained the fraudulent concealment and discovery rules and their application:

> In California, the discovery rule postpones accrual of a claim until "the plaintiff discovers, or has reason to discover, the cause of action." California applies a special standard in cases of fraudulent concealment. In these cases, a plaintiff must show: "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." "A plaintiff must affirmatively excuse his failure to discover the fraud within [the statute of limitations] by showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry."

Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1024 (9th Cir. 2008) (internal citations and quotations omitted).

The Court concludes that the discovery rule and the doctrine of fraudulent concealment toll the applicable California statutes of limitations for purposes of the motion to dismiss. Here, Plaintiffs allege that they did not have a reason to discover Defendants' alleged wrongdoing at the time they purchased the products at issue, because Defendants' advertising and promotional

14

materials attribute any smell coming off the products to the "manufacturing process," and not the "off-gassing" of formaldehyde and VOCs. Moreover, Defendants "had exclusive knowledge about the content of the Tempur products [and] the nature and degree of chemicals off-gassing from Tempur-pedic mattresses and pillows." FAC ¶ 169. For that reason, Plaintiffs plausibly allege that they could not have been expected to know the true chemical contents of the products at issue at the time of purchase. Plaintiffs also plausibly allege that they did not have a reasonable opportunity to discover the alleged wrongdoing until the "scientific testing" of Tempur-pedic products in 2012 and 2013 exposed Defendants alleged misrepresentations and omissions, which revealed that the Tempur-pedic mattresses and pillows can and do contain potentially harmful VOCs including, but not limited to, formaldehyde. FAC ¶ 11. As such, Plaintiffs' California claims are not time-barred.

### b. Statute of limitations under New York Law

Defendants argue that the claims brought by Plaintiff Rosmarie Valdez on behalf of herself and other New York plaintiffs are barred by the statute of limitations. Plaintiffs respond that the motion must be denied because they have alleged that the deceptive practices of the Defendants continued long after Plaintiff Valdez purchased her mattress.

Plaintiff Valdez brings her claims under New York Business Law sections 349 and 350, which are subject to a three year statute of limitations that beings to run when the injury occurs. See Gaidon v. Guardian Life Ins. Co. of Am., 96 N.Y.2d 201, 208 (2001); Gristede's Foods, Inc. v. Unkechauge Nation, 532 F. Supp. 2d 439 (E.D.N.Y. 2007).

"[E]quitable tolling allows plaintiffs to overcome an expired statute of limitations when they were induced by fraud, misrepresentation, or deception to refrain from timely commencing an action." M & T Mortgage Corp. v. White, 736 F. Supp. 2d 538, 555 (E.D.N.Y. 2010) (citation and internal quotation marks omitted). Equitable tolling can apply if the plaintiff satisfies three elements: (1) that the defendant concealed the existence of the cause of action from the plaintiff; (2) that the plaintiff brought suit within the applicable limitations period upon learning the cause of action; and (3) that plaintiff's ignorance of the claim did not result from a lack of diligence. Id. at 556.

The Court concludes that Plaintiffs have shown that the New York statute of limitations is subject to equitable tolling, as Plaintiffs have alleged that Defendants misrepresented and omitted the chemical content of its Tempur products and thus concealed the existence of the claims they now bring. Plaintiffs have also alleged that they filed this action soon after learning the true contents of the Tempur products from tests taken in 2012 and 2013. Accordingly, these claims are not time-barred.

### 7. Standing

Defendants argue that the injuries allegedly suffered by Plaintiffs "are nowhere near sufficient to establish the type of injury needed for [Article III] standing." Mot. at 17. To support this argument, Defendants rely on Boysen v. Walgreen Co., No. C-11-06262-SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012), a case that is distinguishable from the facts at issue here.

In Boysen, the court found that the plaintiffs did not have Article III standing to assert UCL and FAL claims based on the allegation that the juice drinks they purchased, which were labeled as "Heart Healthy," contained lead and arsenic. Id. at *2. The plaintiffs did not allege that they were physically harmed by the fruit juice; instead, the injury they alleged was economic, as the plaintiffs alleged that they would not have purchased the drinks if they had known about the drinks' undisclosed contents. Id. The court granted the defendant's motion to dismiss, finding that the complaint failed to "alleg[e] that any person has ever been injured by the products [or] . . . that consumption of the products may cause physical harm." Id. at *7.

Here, unlike in Boysen, Plaintiffs have alleged that the chemicals contained in Tempur-pedic's products can and do cause physical harm and that the products have injured customers. See FAC ¶ 106 ("TEMPUR material can and does contain VOCs including but not limited to formaldehyde and . . . Tempur-pedic's customers have had ongoing complaints concerning allergic reactions and symptoms related to Tempur-pedic's products."). Accordingly, Plaintiffs' claims cannot be dismissed in light of Boysen.

Also, the Ninth Circuit has noted that where plaintiffs have "spent money that, absent defendants' actions, they would not have spent," there is "a quintessential injury-in-fact" that establishes standing under Article III's injury requirement. Maya v. Centex Corp., 658 F.3d 1060,

1069 (9th Cir. 2011) (citation omitted). Plaintiffs here have alleged that they would not have purchased the products at issue had they known of the products' chemical contents. As such, Defendants' motion to dismiss Plaintiffs' claims for lack of standing is DENIED.

### B. Motion to Strike Class Allegations

Plaintiffs seek to represent eleven sub-classes of Tempur-pedic customers. Each of these subclasses will be governed by the law of a different state. FAC ¶¶ 109-123.

Defendants move to strike Plaintiffs' class allegations on the ground that the "FAC reveals the insurmountable obstacles to class treatment in this case." Mot. at 2.

Plaintiffs oppose the motion, arguing that Defendants "have failed to meet their heavy burden to show that striking the class allegations is warranted at this stage of the litigation." Opp'n at 2.

Courts rarely grant motions to strike class allegations at the pleading stage. See, e.g., In re Wal-Mart Stores, Inc. Wage and Hour Litigation, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (noting that "dismissal of class actions at the pleading stage should be done rarely and that the better course is to deny such a motion because 'the shape and form of a class action evolves only through the process of discovery'") (citation omitted); see also 7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Civil § 1785.3 (3d. 2005) (providing that the practice employed in the overwhelming majority of class actions is to address class certification issues only after an appropriate period of discovery).

Here, discovery has not yet commenced and no motion for class certification has been filed. Accordingly, the Court is not inclined to address issues as to class certification at this stage of the proceedings. Accordingly, Defendants' motion to strike the class allegations is DENIED.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## IV. CONCLUSION

Defendants' motions to dismiss and to strike are DENIED.

The Court will conduct a case management conference on May 14, 2014 at 2:00 p.m. A Joint Case Management Statement must be filed at least ten court days beforehand.

**IT IS SO ORDERED.**

Dated: April 16, 2014

_____
JON S. TIGAR
United States District Judge