1

2

3

4                     UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7   ALVIN TODD, et al.,                    Case No.  13-cv-04984-JST

          Plaintiffs,
8
          v.                              **DISCOVERY ORDER**
9
                                          Re: ECF No. 79
10  TEMPUR-SEALY INTERNATIONAL,
    INC., et al.,
11          Defendants.

12          Before the Court is a Joint Discovery Letter Brief, filed on November 10, 2014.  ECF No.

13  79.  In the Joint Letter Brief, the parties seek the Court's intervention to resolve discovery disputes

14  relating to: (1) production of historical versions of Defendants' website and social media pages;

15  (2) production of contact information of potential class members; (3) the time frame of responsive

16  documents; and (4) delays in Defendants' production of documents.

17  **I.      BACKGROUND**

18          Plaintiffs' initial Complaint, filed on October 25, 2013, and operative Second Amended

19  Complaint, filed on August 29, 2014, allege misrepresentations and omissions by Defendants

20  Tempur-Sealy International, Inc. and Tempur-Pedic North America, LLC that their mattresses and

21  pillows were "formaldehyde free," "free of harmful [volatile organic compounds ("VOCs")]," had

22  only a "slight odor" that would last a "few days," and were "hypoallergenic."  ECF Nos. 1, 63, 79.

23  The Court entered a Stipulated Protective Order in this case on September 16, 2014.  ECF No. 68.

24  The parties represent that they have attempted to resolve all discovery disputes without the Court's

25  intervention, but that they are unable to resolve these remaining issues.  ECF No. 79 at 2.

26  **II.     DISCUSSION**

27          **A.      Website and Social Media Pages**

28          Plaintiffs seek historical versions of Defendants' website and social media pages dating

United States District Court
Northern District of California

1    from January 1, 2003, that refer to or mention whether Defendants' mattresses and pillows contain

2    VOCs like formaldehyde, emit odors, off-gas, contain allergens, are hypoallergenic, or are

3    otherwise safe.  ECF No. 79 at 2.  Plaintiffs argue that these materials relate to their core

4    allegations in the case and that Defendants should have to produce the information so that there is

5    no question as to its genuineness.  Id. at 2–3.  Defendants state that they are producing "copies of

6    prior web pages in their possession obtained from internet archive sites, and information or

7    communications from consumers received through its [sic] web and social media pages in

8    Tempur-Pedic's possession that are not visible or obtainable by the public."  Id. at 3.  But

9    Defendants maintain that they "do not maintain a historical archive of web or social media pages,"

10   and that Plaintiffs should bear the burden of locating relevant information to the extent that it is

11   currently displayed on an active webpage or is available in archives or other locations maintained

12   by non-parties unrelated to Defendants.

13          Under Federal Rule of Civil Procedure 34(a)(1), Defendants must produce documents in

14   their "possession, custody, or control."  "Control is defined as the legal right to obtain documents

15   on demand."  HTC Corp. v. Tech. Properties Ltd., No. 08-cv-00882-JF (HRL), 2011 WL 97787,

16   at *3 (N.D. Cal. Jan. 12, 2011) (quoting In re Citric Acid Litig., 191 F.3d 1090, 1107 (9th Cir.

17   1999)).

18          As defendants apparently acknowledge, they must produce responsive documents currently

19   in their possession and information that is not available to the public.  ECF No. 79 at 3, but they

20   must also produce any information in their possession, custody or control even it is also publicly

21   available.  Regal Elecs, Inc. v. Pulse Eng'g, Inc., No. 03-cv-1296-JW (RS), 2005 WL 3078983, at

22   *3 (N.D. Cal. Nov. 16, 2005) ("Rule 34, however, does not excuse Regal from providing

23   documents in its possession or control, solely because the information is also publicly available.");

24   Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc., No. 01-cv-20418-JW, 2005

25   WL 1459555, at *6 (N.D. Cal. June 21, 2005) ("It is not usually a ground for objection that the

26   information is equally available to the interrogator or is a matter of public record." (quoting St.

27   Paul Reinsurance Co. v. Commercial Fin. Corp., 198 F.R.D. 508, 513 (N.D. Iowa 2000))).

28          Defendants are correct, however, that they are not required to survey internet archives to

United States District Court
Northern District of California

2

1    produce documents not currently in their possession that are equally available to Plaintiffs. Estate

2    of Young v. Holmes, 134 F.R.D. 291, 294 (D. Nev. 1991) (Plaintiff did not have "control" of

3    articles he had sold to the New York Post where he could not command release of the documents

4    and the Defendant could secure copies of the requested documents as readily as the Plaintiff).

5           Defendants are therefore ordered to produce all responsive documents in their possession,

6    custody, or exclusive control, regardless of whether they are publicly available.

7           **B.**      **Identification of Putative Class Members**

8           Second, Plaintiffs seek contact information for potential class members who have made

9    relevant purchases since January 1, 2006 and/or who have registered their warranties. ECF No. 79

10   at 3. Plaintiffs argue that information regarding class members is relevant to the first phase of the

11   litigation and that disclosure of this information is routine and does not constitute a serious

12   invasion of the privacy of the purchasers. Id. at 4–5. Defendants maintain that Plaintiffs have

13   failed to demonstrate a plausible need for putative class member identifying information to

14   demonstrate the appropriateness of class certification in this case, which is based on a false-

15   advertising campaign, rather than the experiences of individual mattress purchasers. Id. at 5.

16   Furthermore, Defendants argue, the demonstrated willingness of Plaintiff's counsel "to engage in

17   direct solicitation and targeted misleading advertising of Tempur-Pedic customers who would not

18   have brought claims in the first place . . . should prevent class member discovery." Id. at 6.

19          Plaintiffs' request for the contact information of putative class members is reasonable and

20   directly relevant to the issue of class certification. "The disclosure of names, addresses, and

21   telephone numbers is a common practice in the class action context." Currie-White v.

22   Blockbuster, Inc., No. 09-cv-2593-MMC (MEJ), 2010 WL 1526314, at *2 (N.D. Cal. Apr. 15,

23   2010). "While the putative class members have a legally protected interest in the privacy of their

24   contact information and a reasonable expectation of privacy the information sought by Plaintiff[s]

25   is not particularly sensitive." Artis v. Deere & Co., 276 F.R.D. 348, 353 (N.D. Cal. 2011);

26   Ramirez v. Trans Union, LLC, No. 12-cv-00632-JSC, 2013 WL 1003608, at *2 (N.D. Cal. Mar.

27   13, 2013). The privacy interests at stake are distinguishable from those involved in compelled

28   disclosure of more intimate information, such as medical records or personal histories. Artis, 276

*United States District Court*
*Northern District of California*

1    F.R.D. at 353.  Moreover, the parties in this case have entered into a stipulated protective order

2    that should ameliorate concerns about class member privacy.  See Wellens v. Daiichi Sankyo Inc.,

3    13-cv-00581-WHO (DMR), 2014 WL 969692, at *3 (N.D. Cal. Mar. 5, 2014) (citing Benedict v.

4    Hewlett-Packard Co., No. 13-cv-0119-LHK, 2013 WL 3215186 at *2 (N.D. Cal. June 25, 2013)

5    ("numerous courts in the Northern District of California have allowed pre-certification discovery

6    of putative class members' confidential information subject to a protective order")).

7        Defendants cite Adkins v. Apple, Inc., No. 14-cv-01619-WHO, 2014 WL 4618411, at *5

8    (N.D. Cal. Sept. 15, 2014), for the proposition that the Court should weigh the danger of abuses of

9    the class action procedure against the rights of the parties, but they do not point to any risks

10   comparable to those identified in Adkins.  In that case, the need for discovery was primarily

11   predicated on a potential conflict created by plaintiffs' counsel, who had provided plaintiffs with

12   the money with which they purchased the Apple devices that formed the basis for their complaint,

13   which was filed three business days later.  Id.  Here, Defendants accuse Plaintiffs' counsel of

14   directly soliciting Plaintiffs through misleading targeted advertisements, and suggest that Plaintiffs

15   will use the contact information requested to improperly solicit class members.  ECF No. 79, at 6.

16   Plaintiffs deny these allegations.  Id. at 5.  "The court will not preemptively deny Plaintiffs

17   discovery to which they are entitled based on Defendant[s'] speculative concern that Plaintiffs will

18   use it improperly, especially when other measures (e.g. sanctions) exist to discourage such

19   behavior."  Wellens, 2014 WL 969692, at *4; see also Gulf Oil Co. v. Bernard, 452 U.S. 89, 104

20   (1981) ("We recognize the possibility of abuses in class-action litigation, and agree with

21   petitioners that such abuses may implicate communications with potential class members.  But the

22   mere possibility of abuses does not justify routine adoption of a communications ban that

23   interferes with the formation of a class or the prosecution of a class action in accordance with the

24   Rules.").

25       Defendants are ordered to produce the contact information of potential class members.

26   However, for the reasons explained below, production shall be limited to information concerning

27   potential class members who made purchases on or after January 1, 2007, rather than January 1,

28   2006.

United States District Court
Northern District of California

1

### C.     Time Frame of Responsive Documents

2       The parties dispute the proper time frame for the production of documents which

3 Defendants have agreed to provide, including: "(i) organizational charts; (ii) communications

4 related to VOCs, allergens, formaldehyde, hypoallergenic [materials], odor, actual or suspected

5 allergic reactions, off-gassing; (iii) communications with Carmichael Lynch Spong, Blackstone

6 Group and Stevenson Group; and (iv) a summary/chart of concerns and complaints by

7 consumers."  ECF No. 79 at 7.  Defendants are limiting production to documents dating from

8 January 1, 2007, while Plaintiffs contend they are entitled to documents dating from January 1,

9 2006.  Id. at 6–7.

10       Although Plaintiffs are correct that "relevant information may predate the limitations

11 period," Worley v. Avanquest North America Inc., No. 12-cv-04391-WHO (LB), 2013 WL

12 6576732, at *2 (N.D. Cal. Dec. 13, 2013), Plaintiffs have not demonstrated the relevance of

13 documents that predate Defendants' proposed cut-off date in this case.  See also id. at *3 (ordering

14 Defendants to produce, as a starting point, documents covering, but not predating, the statute of

15 limitations period).  Defendants note that no Plaintiff purchased a mattress prior to May 2007;

16 only one Plaintiff purchased a mattress prior to 2010; the longest statute of limitations bars claims

17 prior to October 2007; and the only two Plaintiffs who have testified to seeing VOC

18 representations purchased their mattresses in 2011.  ECF No. 79 at 7.  Defendants shall produce

19 responsive documents dating from January 1, 2007.

20       ### D.     Delay in Production

21       Plaintiffs state that "Defendants have been producing responsive documents on a rolling

22 basis, but production remains incomplete."  Id. at 8.  It is unclear what relief Plaintiffs seek, as

23 Defendants state that they "are producing the documents that did not get downloaded by Plaintiffs

24 and will produce a disk of the full production if Plaintiffs desire."  Id.  Defendants are ordered to

25 produce responsive documents within seven days of the date of this Order.

26 **III.     CONCLUSION**

27       For the foregoing reasons, the Court orders the following:  Defendants shall produce all

28 documents responsive to Plaintiffs' website and social media requests that are in their possession,

United States District Court
Northern District of California

1   custody, or exclusive control, regardless of whether they are publicly available.  Defendants shall

2   produce contact information of potential class members who made relevant purchases and/or

3   registered their warranties since January 1, 2007.  Production of documents that Defendants have

4   agreed to provide, including "(i) organizational charts; (ii) communications related to VOCs,

5   allergens, formaldehyde, hypoallergenic [materials], odor, actual or suspected allergic reactions,

6   off-gassing; (iii) communications with Carmichael Lynch Spong, Blackstone Group and

7   Stevenson Group; and (iv) a summary/chart of concerns and complaints by consumers," shall be

8   limited to documents dating from January 1, 2007.  Defendants shall produce responsive

9   documents within seven days of the date of this Order.

10      IT IS SO ORDERED.

11   Dated: November 16, 2014



JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28