UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALVIN TODD, et al.,

    Plaintiffs,

v.

TEMPUR-SEALY INTERNATIONAL, INC., et al.,

    Defendants.

Case No. 13-cv-04984-JST (MEJ)

**DISCOVERY ORDER**

Re: Dkt. No. 99

## BACKGROUND

In this putative class action, Plaintiffs[1] bring claims against Defendants Tempur-Sealy International, Inc. and Tempur-Pedic North America, LLC ("Defendants") arising out of Defendants' marketing and sale of mattresses, pillows, and other bedding products containing TEMPUR® material. Specifically, Plaintiffs allege that Defendants' representation of their Tempur products as "formaldehyde free," "free of harmful (volatile organic compounds) VOCs," "allergen resistant," and "hypoallergenic" are false and misleading, because "reliable testing of Tempur-pedic products reveals that formaldehyde and other potentially harmful VOCs, that can trigger allergy and asthma symptoms, are present in Tempur-pedic products and in the chemicals off-gassing from Tempur-pedic products." Sec. Am. Compl. ¶ 11. The Court entered a Stipulated Protective Order in this case on September 16, 2014. Dkt. No. 68.

Plaintiffs now move to compel production of the formula for Defendants' TEMPUR®

---

[1] On August 29, 2014, Plaintiffs filed a Second Amended Complaint which named 24 class representatives representing 11 states. Dkt. No. 63. Since that filing, several plaintiffs have been voluntarily dismissed, and 18 plaintiffs representing 10 states remain. The remaining plaintiffs are Alvin Todd, Robbie Simmons, Tina White, Keith Hawkins, Thomas Comiskey, Patricia Kaufman, Johnny Martinez, Toni Kibbee, Alan Kaufman, Sara Stone, Jerry Kucharski, Julie Davidoff, Ericka Anderson, Kurt Anderson, Melody Todd, Diane Kuckarski, Tracey Palmer, and Brian Stone.

material. Jt. Ltr., Dkt. No. 99. The present dispute concerns Defendants' responses to Plaintiffs Tina White and Patricia Kaufman's First Set of Interrogatories and Requests for Production, specifically requests regarding the production of the chemical formulation/ingredients of Defendants' products. The following requests are at issue:

> <u>Tina White's Interrogatory No. 7</u>: Please list the chemical ingredients that are included in Tempur-pedic mattresses manufactured during the Relevant Time that were sold in the Pertinent States. If different chemicals are involved based on the model of the mattress, please specify and describe those differences in your response.
>
> <u>Patricia Kaufman's Request for Production No. 2</u>: Copies of documents […], since January 1, 2001 related to the raw materials used in producing Tempur-pedic mattresses and/or pillows, including foam type and/or TEMPUR®, TEMPUR® and/or foam supplier, chemicals used to make the TEMPUR® and/or foam, the MSDS for the materials and/or components in the foam, the chemical additives in the foam.

Jt. Ltr. at 2.[2] Defendants' objections read in part: "Plaintiff seeks the exact formula of TEMPUR® material, and Defendant[3] objects to producing this information as the closest held trade secret of Defendant's business. Only a handful of people in Tempur-Pedic know the formula for TEMPUR® material. Disclosure of this information, accidental or otherwise, could destroy Defendant's business." *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. A court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had

---

[2] The parties did not include copies of Plaintiffs' requests, but Plaintiffs state that Interrogatories Nos. 4, 6, 8, 10, and 11 are similar to Interrogatories No. 7; and Request for Production Nos. 3, 4, and 14 are similar to Request for Production Nos. 2 and 3. *Id.*
[3] The parties refer to "Defendant" and "Defendants" interchangeably.

1   ample opportunity to obtain the information by discovery in the action; or (iii) the burden or
2   expense of the proposed discovery outweighs its likely benefit, considering the needs of the case,
3   the amount in controversy, the parties' resources, the importance of the issues at stake in the
4   action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

5   "The court may, for good cause, issue an order to protect a party or person from
6   annoyance, embarrassment, oppression, or undue burden or expense," including by (1) prohibiting
7   disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3)
8   preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to
9   certain matters. Fed. R. Civ. P. 26(c)(1). "Rule 26(c) confers broad discretion on the trial court to
10  decide when a protective order is appropriate and what degree of protection is required." *Seattle
11  Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

12  "Trade secrets" and other "confidential research, development, or commercial
13  information" are explicitly addressed in Rule 26. The Court, for good cause, may issue a
14  protective order to protect this information. To obtain a protective order based upon a trade secret,
15  the party seeking protection "must first establish that the information sought is a trade secret and
16  then demonstrate that its disclosure might be harmful." *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612,
17  617 (N.D. Cal. 2006) (citations omitted). The burden then shifts to the party seeking the discovery
18  to demonstrate that the information is relevant and "necessary to prepare the case for trial." *Id.*
19  The Court must then weigh the risk of disclosure of the trade secret to unauthorized parties with
20  the risk that a protective order will impede prosecution or defense of the claims. *Id.* Once the
21  moving party has established relevance and necessity, "the discovery is virtually always ordered."
22  *Id.* (quoting *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal.
23  1995) (additional citations omitted)).

## DISCUSSION

25  Plaintiffs contend that the TEMPUR® formula is relevant because their claims revolve
26  around Defendants' advertising campaign, which consisted of "numerous affirmative
27  misrepresentations" on Defendants' marketing materials. Jt. Ltr. at 3. They argue that discovery
28  of the formula used in Defendants' products would show whether they knowingly made the

3

affirmative misrepresentations about their products and failed to disclose material information of which they had actual knowledge. *Id.* Plaintiffs maintain that they "are entitled to know whether Defendant's products start with and/or contain substances that pose the same or similar risks as those substances that the Defendants stated their products were 'free' of, and whether such substances were intentionally added to Defendants' product formulas." *Id.*

In response, Defendants note that Plaintiffs' claims in the Second Amended Complaint concern alleged misrepresentations and omissions regarding the off-gassing of potentially harmful VOCs and formaldehyde. *Id.* at 5 (citing Sec. Am. Compl. ¶¶ 3, 6, 50, 56, 58). They maintain that information regarding the formula and ingredients used to manufacture TEMPUR® foam is irrelevant to the issue of off-gassing and unnecessary and cumulative in light of Plaintiffs' numerous other discovery requests seeking specific information regarding off-gassing, VOCs, and testing. *Id.* However, after the parties met and conferred, Defendants agreed to disclose the formula ingredients used in the manufacture of its pillows and mattresses from 2007 to 2013, but only if Plaintiffs would agree to additional safeguards which would protect their trade secret. Specifically, Defendants requested that they be notified of the name of any expert or consultant to whom Plaintiffs intend to disclose the formula components before any disclosure. *Id.*

First, having reviewed the parties' arguments, the Court finds that discovery of the TEMPUR® formula is appropriate. Plaintiffs have shown the relevance of the information because their claims revolve around Defendants' advertising campaign, which consisted of "numerous affirmative misrepresentations" on Defendants' marketing materials, such as Defendants' products were "hypoallergenic," "resistant to allergens," and "free of harmful VOCs (volatile organic compounds) such as formaldehyde and CFC (chlorofluorocarbon)—harsh chemicals that can trigger allergies and asthma." Jt. Ltr. at 3. They have made a prima facie showing of the need for the formula, alleging it would show whether Defendants knowingly made the affirmative misrepresentations about their products and failed to disclose material information of which they had actual knowledge. *Id.* Finally, a stipulated protective order is already in place in this action, and the parties agree that the formula is entitled to protection.

There remains, however, the issue of whether the existing protective order provides

4

adequate protection.  The court has discretion in determining whether or not to amend or modify a protective order.  *Iowa Beef Processors, Inc. v. Bagley*, 601 F.2d 949, 955 (8th Cir. year?), *cert. denied*, 441 U.S. 907 (1979); *Marilley v. McCamman*, 2012 WL 4120633, at *6 n.1 (N.D. Cal. Sept. 19, 2012) (ordering amendment of protective order to cover documents for which defendant claimed a deliberative process privilege); *Sanchez v. Johnson*, 2001 WL 1870308, at *7 n.8 (N.D. Cal. Nov. 19, 2001) (same).  Defendants maintain the current protective order is not sufficient to protect their trade secret because Plaintiffs could potentially disclose Defendants' formula to an unknown "consultant" whose identity may not be disclosed to Defendants for years.  Jt. Ltr. at 5.  Without knowing the identity of this consultant and any potential ties to a competitor, Defendants argue they may suffer irreparable harm before the consultant is revealed to them at the conclusion of the case.  *Id.*  They maintain that notification of the expert's or consultant's name before disclosure is the only way to sufficiently protect their trade secret.  *Id.*

Plaintiffs argue that the discovery requests seeking Defendants' product formula were outstanding at the time of the entry of the stipulated protective order, and the modifications sought by Defendants at this juncture are not reasonable and were previously rejected by Plaintiffs.  *Id.* at 3-4.  They note that the current protective order already provides that documents designated as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" may only be disclosed to Experts[4] who have signed the "Acknowledgment and Agreement to Be Bound."  Stip. Prot. Order ¶¶ 7.2, 7.3.  The protective order additionally requires that "Highly Confidential – Attorneys' Eyes Only" documents may not be viewed by an expert until after the receiving party has completed a reasonable investigation to determine that the Expert is not a current or past employee, nor anticipates being a future employee, of a party or a party's competitor.  *Id.* at 7.4(a)(2).  Plaintiffs argue that requiring them to disclose, in advance, the identity of anyone they might consult about Defendants' formulas invades the attorney work product doctrine and eliminates the possibility for Plaintiffs to have non-disclosed consulting experts.  Jt. Ltr. at 4.

---

[4] The Protective Order Expert defines "Expert" as "a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor." Stip. Prot. Order ¶ 2.7.

Defendants ask the Court to require that Plaintiffs notify them of any person they seek to disclose the TEMPUR® formula to before disclosure, arguing that this is the only way to sufficiently protect their trade secret. Jt. Ltr. at 5-6. In support, Defendants cite the protective orders in *Apple, Inc. v. Samsung Electronics, Ltd.*, No. C-11-1846 LHK (N.D. Cal. Jan 30, 2012), Dkt. No. 687, ¶ 12 (requiring prior to disclosure of any protected material to an expert, the party seeking to disclose was required to provide the producing party written notice of the expert's name, employers, past employment relationships, and prior cases); *Burberry Ltd. v. K-1, Inc., et al.*, 2014 WL 1365702, at *3 (C.D. Cal. Apr. 4, 2014) ("Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Receiving Party that seeks to disclose to an Expert any information or item that has been designated 'HIGHLY CONFIDENTIAL' must first make a written request to the Designating Party . . ."). However, these cases are easily distinguishable in that the parties agreed to the notice provisions as part of a stipulated protective order. Defendants cite no authority in which a party, such as the Plaintiffs in this case, opposed such a provision.

The Court agrees with Plaintiffs that requiring them to disclose in advance the identity of anyone they might consult about Defendants' formula potentially invades the attorney work product doctrine and removes Plaintiffs' ability to have non-disclosed consulting experts. Furthermore, the current protective order already requires the reasonable investigation of *all* Experts, including consultants. As there is no indication that Plaintiffs have failed to comply with the current investigation requirements, the current protective order is already sufficient to resolve both Defendants' concerns about a non-disclosed expert's potential ties to a competitor and Plaintiffs' concerns about the ability to utilize non-disclosed expert consultants.

However, in an abundance of caution, the Court will modify the protective order, paragraph 7.4(a)(2). The bolded section below reflects the Court's modification:

> *(a)(2) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to paragraph 7.3(c) first must complete a reasonable investigation of the Expert and determined (1) that the Expert's current employer(s) are not competitors of the Receiving Party, (2) that the Expert is not a past employee of a Party or a Party's competitor and at the time of retention not anticipated to*

*become an employee of a Party or a competitor; and (3) that the Expert, and all persons working with or for the Expert that will receive the Protected Material, have executed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).*

*For each such investigation completed, the Party or its counsel who conducted the investigation must prepare and sign a declaration attesting to the reasonableness of his or her investigation and that the investigation determined (1) that the Expert's current employer(s) are not competitors of the Receiving Party, (2) that the Expert is not a past employee of a Party or a Party's competitor and at the time of retention not anticipated to become an employee of a Party or a competitor; and (3) that the Expert, and all persons working with or for the Expert that received the Protected Material and executed the "Acknowledgment and Agreement to Be Bound" (Exhibit A). The Receiving Party shall keep and store all such declarations and shall provide them to the Designating Party at the conclusion of the litigation if the Court so orders upon showing of good cause by the Designating Party.*

*In addition, the Receiving Party shall maintain a log of all persons to whom the Protected Material is provided and shall provide such log to the Designating Party at the conclusion of the Litigation if so ordered upon good cause showing by the Designating Party. The log shall be kept with sufficient detail to allow the Designating Party to determine whether the Receiving Party has complied with the requirements of this Order.*

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion to compel production of the formula for Defendants' TEMPUR® material. The Court's modification of the protective order is effective as of the date of this order.

**IT IS SO ORDERED.**

Dated: February 2, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge