United States District Court
Northern District of California

1

2

3

4                             UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7    ALVIN TODD, et al.,                          Case No.  13-cv-04984-JST   (MEJ)

              Plaintiffs,
8                                                 **ORDER RE: MOTION TO RETAIN
                                                  CONFIDENTIALITY**
9          v.
                                                  Re: Dkt. No. 102
10   TEMPUR-SEALY INTERNATIONAL,
     INC., et al.,

11            Defendants.

12

13                                   **INTRODUCTION**

14         Pending before the Court is Defendant Tempur-Sealy International, Inc.'s ("Defendant")

15   Motion to Retain Confidentiality, in which Defendant moves to retain the confidentiality of certain

16   documents produced in the course of litigation.  Dkt. No. 102.  Plaintiffs[1] oppose the motion.  Dkt.

17   No. 104.  The Court has reviewed each of the disputed documents in camera.  Having considered

18   the parties' positions, relevant legal authority, and the record in this case, the Court issues the

19   following order.

20                                    **BACKGROUND**

21         In this putative class action, Plaintiffs bring claims against Defendant arising out of its

22   marketing and sale of mattresses, pillows, and other bedding products containing TEMPUR®

23   material.  Specifically, Plaintiffs allege that Defendant's representation of its Tempur products as

24

25   _____
     [1] On August 29, 2014, Plaintiffs filed a Second Amended Complaint which named 24 class
26   representatives representing 11 states.  Dkt. No. 63.  Since that filing, several plaintiffs have been
     voluntarily dismissed, and 18 plaintiffs representing 10 states remain.  The remaining plaintiffs are
27   Alvin Todd, Robbie Simmons, Tina White, Keith Hawkins, Thomas Comiskey, Patricia Kaufman,
     Johnny Martinez, Toni Kibbee, Alan Kaufman, Sara Stone, Jerry Kucharski, Julie Davidoff,
28   Ericka Anderson, Kurt Anderson, Melody Todd, Diane Kuckarski, Tracey Palmer, and Brian
     Stone.

1   "formaldehyde free," "free of harmful (volatile organic compounds) VOCs," "allergen resistant,"

2   and "hypoallergenic" are false and misleading because "reliable testing of Tempur-pedic products

3   reveals that formaldehyde and other potentially harmful VOCs, that can trigger allergy and asthma

4   symptoms, are present in Tempur-pedic products and in the chemicals off-gassing from Tempur-

5   pedic products."  Sec. Am. Compl. ¶ 11.

6          The Court entered a Stipulated Protective Order in this case on September 16, 2014.  Dkt.

7   No. 68.  The protective order allows the parties and non-parties to designate information or items

8   for protection by marking them as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL –

9   ATTORNEYS' EYES ONLY."  *Id.* ¶¶ 2.2, 2.8.  The protective order defines "CONFIDENTIAL"

10  information or items as "information (regardless of how it is generated, stored or maintained) or

11  tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c)" and highly

12  confidential-attorneys' eyes only as information or items that are "extremely sensitive

13  'Confidential Information or Items.'"  *Id.* ¶¶ 2.2, 2.8.  The scope of the protection is broad

14  including not only the protected material but also "(1) any information copied or extracted from

15  Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and

16  (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal

17  Protected Material."  *Id.* ¶ 3.  According to the protective order, "the protections conferred . . . do

18  not cover . . . (a) any information that is in the public domain at the time of disclosure to a

19  Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a

20  result of publication not involving a violation of this Order . . . ; and (b) any information known to

21  the Receiving Party prior to the disclosure . . . ."  *Id.* ¶ 3.

22         A party may challenge a confidentiality designation by providing written notice of each

23  challenged designation and describing the basis for each challenge.  *Id.* ¶ 6.2.  If the dispute

24  regarding the designation cannot be resolved informally, the Designating Party must file a motion

25  to retain confidentiality.  *Id.* ¶¶ 6.2-6.3.

26         On January 2, 2015, Defendant produced approximately 83,581 pages with every page

27  designated for protection under the protective order.  Adams Decl. ¶ 44, Dkt. No. 104-2.  After

28  receipt of this production, on January 14, 2015 Plaintiffs initiated a challenge to Defendant's

United States District Court
Northern District of California

2

1    designation of 213 documents totaling 4,583 pages.  *Id.* ¶ 46.  Counsel for the parties met in

2    person to attempt to resolve the dispute informally on January 28, 2015, but were unable to reach a

3    resolution.  Cerrone Decl. ¶ 3, Dkt. No. 102-4.

4                                           **LEGAL STANDARD**

5          "It is well-established that the fruits of pretrial discovery are, in the absence of a court

6    order to the contrary, presumptively public."  *Phillips ex rel. Estates of Byrd v. Gen. Motors*

7    *Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002).  Under Federal Rule of Civil Procedure 26, "[t]he

8    court may, for good cause, issue an order to protect a party or person from annoyance,

9    embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  Information

10   the court may protect includes "trade secret[s] or other confidential research, development, or

11   commercial information."  Fed. R. Civ. P.  26(c)(1)(G).  "A party asserting good cause bears the

12   burden, for each particular document it seeks to protect, of showing that specific prejudice or harm

13   will result" if a protective order is lifted.  *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122,

14   1130 (9th Cir. 2003) (citations omitted).

15         When the confidentiality of information under a protective order is challenged, the court

16   must conduct a two-step analysis.  "First, it must determine whether particularized harm will result

17   from disclosure of information to the public."  *In re Roman Catholic Archbishop of Portland in*

18   *Ore.*, 661 F.3d 417, 424 (9th Cir. 2011) (quotation omitted).  "Broad allegations of harm,

19   unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."

20   *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (citing *Seattle Times Co.*

21   *v. Rhinehart*, 467 U.S. 20, 36 (1984)).  Instead, the party seeking to maintain confidentiality must

22   "allege specific prejudice or harm."  *Id.*  "Where a business is the party seeking protection, it will

23   have to show that disclosure would cause significant harm to its competitive and financial

24   position.  That showing requires specific demonstrations of fact, supported where possible by

25   affidavits and concrete examples, rather than broad, conclusory allegations of harm."  *Contratto v.*

26   *Ethicon, Inc.*, 227 F.R.D. 304, 307 (N.D. Cal. 2005) (citation and internal quotations omitted).

27         "Second, if the court concludes that such harm will result from disclosure of the discovery

28   documents, then it must proceed to balance the public and private interests to decide whether

*United States District Court*
*Northern District of California*

3

1    maintaining a protective order is necessary." *In re Roman Catholic Archbishop*, 661 F.3d at 424.

2    In doing this balancing, the court must consider the following list of non-exhaustive factors: "(1)

3    whether disclosure will violate any privacy interests; (2) whether the information is being sought

4    for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will

5    cause a party embarrassment; (4) whether confidentiality is being sought over information

6    important to public health and safety; (5) whether the sharing of information among litigants will

7    promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is

8    a public entity or official; and (7) whether the case involves issues important to the public." *Id.* at

9    424 n.5 (quoting *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995))..

10                                              **DISCUSSION**

11   **A.       Whether Defendant Will Suffer Particularized Harm from Disclosure**

12             1.       Research Documents

13            The designated materials at issue include documents marked as "Gallup Study Reports,"

14   which contain research performed on behalf of Defendant by Multi-sponsor Surveys, Inc. *See*

15   Appendix of Challenged Designations ("Appendix") Docs. 1-8, Dkt. No. 102-1. These research

16   reports are related to information about prospective mattress buyers, current mattress owners, and

17   the consumer mattress market. Defendant submitted the Declaration of Kelly Faerber,

18   Defendant's Director of Internal Audit, attesting to the commercially sensitive nature of the facts

19   and data in the designated documents. Faerber Decl. ¶¶ 2-6, 9-10, Dkt. No. 103-1. Faerber

20   explains that the designated materials are for the guidance of company executives only and have

21   not been made available to the public. *Id.* ¶¶ 9-10. Faerber further explains that Defendant has

22   taken measures to prevent the public disclosure of these reports. *Id.* ¶¶ 2-6, 9-10.

23            Defendant argues that the information contained in the reports is highly sensitive as it is

24   part of its business strategy and marketing information, which if revealed to a competitor, would

25   put Defendant at a competitive disadvantage. Mot. at 3. Defendant maintains that disclosure

26   would create a substantial risk of serious harm, such as by providing competitors with access to

27   Defendant's confidential research and a means to target their competing marketing strategies

28   based on any weaknesses or strengths revealed by the reports. *Id.*

United States District Court
Northern District of California

1    Plaintiffs concede that the Gallup Study Reports could be considered confidential under

2    Rule 26(c)(1)(G).  Opp'n at 11-12.  However, they argue that there are significant differences

3    among the dates and content of some of these documents, and "certainly every page is not possibly

4    worthy of protection from disclosure."  *Id.* at 12.

5    Having reviewed the reports in camera, the Court finds that they are related to Defendant's

6    confidential business strategy and marketing information.  The Court notes that most of the

7    documents themselves are marked: "This report, the literary property therein and the common law

8    copyright thereto, are the exclusive property of Multi-sponsor Surveys, Inc.  This report is a

9    privileged, confidential communication.  The material herein is available to and is for the guidance

10   of your executives only and is not to be copied, quoted from, published or divulged to others."

11   *See* Appendix Docs. 1, 3, and 5-8.  Defendant has also shown the harm that could result from

12   disclosure, including the potential for competitors with access to the reports to target their

13   competing marketing strategies based on any weaknesses or strengths revealed therein.  Defendant

14   specifically argues that "[d]eveloping a protocol for a market survey is no small task, and to

15   develop such a protocol costs money.  Possession of market research can give a market participant

16   an advantage over competitors, but only if they can possess the information exclusively."  Reply at

17   7, Dkt. No. 105.  The Court agrees that the value of Defendant's market research—including both

18   the protocol and the results—could be significantly diminished if it was freely disclosed to the

19   public.

20   Thus, based on the information before it, the Court finds that Defendant has shown a

21   particularized harm that can result from disclosure of the challenged materials to the public—

22   namely, that competitors would be able to see Defendant's strengths and weaknesses, and use its

23   business strategies to their own benefit or to Defendant's detriment.  *See Muench Photography,*

24   *Inc. v. Pearson Educ., Inc.*, 2013 WL 4475900, at *4 (N.D. Cal. Aug. 15, 2013) (permitting a

25   party to retain confidentiality where the information at issue could reveal product development

26   efforts and business strategies to competitors, who could then use those strategies themselves).

27   The designated materials also include a document identified by Defendant as "Internal

28   Market Research."  Appendix Doc. 9.  This document is entitled "2010 Tempur-Pedic Product

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1    Descriptions" and contains general descriptions of Defendant's products.  Plaintiffs argue that the

2    information in this document was already provided to the public.  Opp'n at 11 (citing Adams Decl.

3    ¶ 65).  They also argue that it fails to contain information that qualifies for protection under Rule

4    26(c).  *Id.*  Having reviewed the document in camera, the Court agrees with Plaintiffs and finds

5    that the Internal Market Research document does not contain trade secret or confidential

6    information; rather, it contains general descriptions of Defendant's products.  Defendant maintains

7    that it "is obvious from the content that the document was intended for internal use only, as each

8    description begins with a short statement of whether a particular model is 'entry-level priced,'

9    'mid-priced,' 'higher-priced,' etc."  Reply at 8.  However, Defendant's pricing is available to the

10   general public, and the document contains no confidential information regarding how Defendant

11   determines these prices.  Further, Defendant concedes that the final public versions of documents

12   describing the products have been produced without restriction.  *Id.*  In short, Defendant has failed

13   to show that specific harm would result from de-designating a document that contains information

14   already available to the public.  Thus, the Court finds that Defendant has not met its burden to

15   show that the Internal Market Research document should be designated confidential.  Defendant's

16   Motion is therefore DENIED as to Appendix Doc. 9.

17           2.      Product Training Guides

18           Plaintiffs also challenge the designation of 50 of Defendant's "Product Training Guides,"

19   which were attached to several internal employee emails.  Appendix Docs. 10, 12, 14-16, 104-10,

20   119, 121-22, 131-47, 151-57, 160, 163, 174, 177, 186, 190, 201-02, 204, 207, and 211.  According

21   to Faerber, the Product Training Guides are internal documents distributed to employees and

22   authorized distributors.  Faerber Decl. ¶ 11.  She explains that they are not meant for public

23   dissemination and marked "Employee Use Only."  *Id.*  Faerber further explains that Defendant has

24   spent significant resources developing the brand, marketing, artwork and employee training

25   information contained in the guides, and they are provided to third-party retailers on the condition

26   that the retailers agree to hold them in confidence.  *Id.*  Defendant argues that public disclosure of

27   these documents would cause harm to it in that competitors could "free-ride on Defendant's

28   investment of resources in developing the product training guides," thus giving Defendant's

1    competitors an unfair strategic advantage.  Mot. at 3.

2          Plaintiffs argue that the Product Training Guides consist of information about Defendant

3    and its products, not trade secrets or other confidential research, development, or commercial

4    information, which is required for protection.  Opp'n at 6.  They maintain that the "fact that

5    Defendants may have spent significant resources developing the guides does not change the

6    subject matter contained in the guides, which subject matter and contents is not worth of

7    protection from disclosure." *Id.*

8          The Court agrees with Plaintiffs.  First, the Court notes that Defendant has already

9    produced at least one version of the Product Training Guide without designating it as confidential.

10   Specifically, on October 9, 2014, Defendant produced 6,543 pages of documents, which included

11   documents bates-numbered TCL 1-6508.  Adams Decl. ¶ 30.  Included in the October 9

12   production was Defendant's Summer 2009 Product Training Guide, marked at TCL 5821-5839,

13   which was not designated as confidential.  *Id.*, Ex. C.  This document is very similar to the

14   challenged Product Training Guide documents marked as TPTG 33-51, TWC 3105-3123, and

15   TWC 3722-3757.  *See* Appendix, Docs. 105, 155, and 160.

16         Second, Plaintiffs state that they had in their possession both the Winter 2010 Product

17   Training Guide and October 2012 Product Training Guide prior to their production by Defendant.

18   Adams Decl. ¶¶ 9-10, 15-16, Exs. A-B.  They state that these documents have been in the public

19   domain for at least six months.  *Id.* ¶¶ 9, 15.  According to the protective order, "the protections

20   conferred . . . do not cover . . . (a) any information that is in the public domain at the time of

21   disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a

22   Receiving Party as a result of publication not involving a violation of this Order" or (b) was

23   "known to the Receiving Party prior to the disclosure."  Protective Order ¶ 3.  Further, Rule 26

24   does not govern their use since Plaintiffs obtained these documents outside of discovery in this

25   litigation.  *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1079-81 (9th Cir. 1988).  Moreover,

26   ten of the challenged product training guides are identical and/or similar to the Winter 2010

27   Product Training and October 2012 Product Training Guide.  *See* Appendix, Docs. 10, 110, 136,

28   147, 151-153, 156, 186, and 188.

United States District Court
Northern District of California

1    Defendant has not provided any authority for designating information as confidential when

2    it is available in the public domain.  Defendant cites *DVD Copy Control Ass'n Inc. v. Bunner*, 116

3    Cal. App. 4th 241, 251 (2004), which holds that, with respect to trade secrets, "[p]ublication on

4    the Internet does not necessarily destroy the secret if the publication is sufficiently obscure or

5    transient or otherwise limited so that it does not become generally known to the relevant people,

6    i.e., potential competitors or other persons to whom the information would have some economic

7    value."  Defendant states that it has "actively policed the internet for publication of its confidential

8    information, and when product training guides have been posted wrongfully Defendant has made

9    reasonable efforts to take them down."  Hajjar Decl. ¶¶ 1-5, Dkt. No. 102-2.  However, as of the

10   date of this Order, the brochure remains available on websites that sell Defendant's and

11   competitors' products to the general public.  *See, e.g.*,

12   http://www.sdmattress.com/media/wysiwyg/TempurPedic_Brochure.pdf  (Winter 2010 Product

13   Training Guide); http://cantoni.com/images/tempur-pedic.pdf (October 2012 Product Training

14   Guide).  Publication of this information has not been transient or otherwise limited; instead,

15   Defendant provides these documents to retailers, who then post them online for customers' and the

16   general public's use.  Accordingly, because the information in the Product Training Guides is

17   already available to the public and competitors, Defendant has failed to show that any

18   particularized harm will result from disclosure of the information.  The Court therefore DENIES

19   Defendant's motion as to the Product Training Guides (Appendix Docs. 10, 12, 14-16, 104-10,

20   119, 121-22, 131-47, 151-57, 160, 163, 174, 177, 186, 190, 201-02, 204, 207, and 211).

21        3.    Internal Emails

22        Finally, Plaintiffs challenge Defendant's designation of (1) internal employee emails and

23   (2) attachments to internal employee emails.

24             a.    *Internal Employee Emails*

25        The following documents in the Appendix are marked as "Confidential Internal Employee

26   Email": 19,[2] 23-25, 27, 29-37, 41-44, 48-50, 59-68, 70-82, 86, 88-90, 92-95, 102-03, 111, 113,

27

28   [2] Mistakenly identified in the Appendix as an attachment, Document 19 is an internal email
relating to marketing materials.

United States District Court
Northern District of California

1    115, 161, 168, and 170.

2        In its Motion, Defendant maintains that these documents fall within the protection for

3    "confidential research, development, or commercial information" covered by the protective order.

4    Mot. at 5.  Because Defendant sells products that come in close physical contact with consumers,

5    testing is an essential element of the business.  *Id.*  Defendant argues that information regarding its

6    research, testing, product development, market studies, and business strategy would be highly

7    valuable to Defendant's competitors, who would be able to use that information to advance their

8    own research, testing, product development, market studies, and business strategy.  *Id*.  Defendant

9    further argues that access to such documents would permit competitors to identify the strengths

10    and weaknesses in Defendant's products, giving them an unfair advantage in marketing and the

11    ability gain insight into Defendant's confidential business strategies.  *Id*.

12        Defendant notes that many of the challenged emails relate to discussions regarding

13    Defendant's marketing strategies, including their marketing plans, product descriptions, and

14    advertisements.  It contends that marketing strategies "are among the most closely guarded secrets

15    in any competitive industry, and the market for mattresses and pillows is no exception."  *Id.* at 6.

16    Defendant argues that disclosure of these documents would reveal the marketing strategies that it

17    determined to be effective, and would give competitors an unfair advantage in forming their own

18    strategies.  *Id*.

19        In response, Plaintiffs argue that "[j]ust because an email may be tangentially connected to

20    research, testing and/or any of these other categories, in and of itself, would not qualify these

21    documents as Confidential."  Opp'n at 8.  Plaintiffs contend that Defendant makes only

22    generalizations about the harm that would result from disclosure, yet Plaintiffs are unable "to

23    identify any challenged email that not only contains confidential material, but for which disclosure

24    would result in prejudice or harm to the Defendants."  *Id.* at 9.

25        Having reviewed the documents in camera, the Court finds that Defendant has failed to

26    meet its burden of showing the specific prejudice of harm that will result from disclosure of each

27    email. As a preliminary matter, many of the emails contain no text at all, and the subject lines

28    contain generalized terms such as "Direct Response Weekly Mattress Returns," "Odor Returns

9

1   and Exchanges by Month 2009," and "Accepted: Tempur Allergen Results," with nothing more.

2   *See* Appendix Docs. 23-25, 29, 31, 33-35, 42, 44, 49-50, 60-61, 63, 65, 67-68, 71, 74, 76-77, 79-

3   82, 90, and 93.  Defendant admits: "The fact that Defendants track information regarding returns is

4   not secret."  Reply at 3.  However, because these pages include the names of the senders and

5   recipients, Defendant argues that "[d]isclosure of this information could lead to harassment of

6   Defendants' employees.  Or, if third parties contact those employees for information regarding

7   returns, Defendants' ability to direct its public communications through the proper channels will

8   be compromised."  *Id.*  Defendant makes this blanket argument with no legal support and without

9   specific demonstrations of fact or concrete examples.  Further, even if the emails contain any

10   information identifying specific customers, Defendant may redact it.

11          As to the remaining emails, they contain only generalized entries such as "Odor Log –

12   Daily Summary" or brief communications among employees and/or customers.  *See* Appendix

13   Docs. 27, 30, 32, 36-37, 41, 43, 48, 59, 62, 64, 66, 70, 72-73, 75, 78, 86, 88-89, 92, 94-95, 102-03,

14   111, 113, 115, 161, 168, and 170.  Nowhere does Defendant identify any specific secret or

15   otherwise show the specific harm that will result from disclosure of any of the documents.  *See*

16   *Contratto*, 227 F.R.D. at 309; *Foltz,* 331 F.3d at 1130.  Defendant's broad allegations of harm with

17   respect to either the documents as a whole, or categories of documents, do not satisfy the standard

18   set forth in *Foltz*.  *See Foltz*, 331 F.3d at 1130; *Beckman*, 966 F.2d at 476.  Again, if any of the

19   emails contain information identifying specific customers, Defendant may redact it.  Accordingly,

20   Defendant's Motion is also DENIED as to Appendix Docs. 19, 23-25, 27, 29-37, 41-44, 48-50,

21   59-68, 70-82, 86, 88-90, 92-95, 102-03, 111, 113, 115, 161, 168, and 170.

22                     *b.       Attachments*

23          The following documents in the Appendix are marked as "Attachment to Confidential

24   Email": 11, 13, 17-18, 20-22, 39-40, 45, 69, 83-85, 87, 91, 96-101, 112, 114, 116-18, 120, 123-30,

25   148-50, 158-59, 162, 164-67, 169, 171-73, 175-76, 178-85, 187-89, 191-200, 203, 205-06, 208-10,

26   and 212-13.  In its Reply, Defendant identifies six documents that it mistakenly designated as

27   confidential: Docs. 40, 45, 69, 100-01, and 165.  Reply at 4 n.3.  Accordingly, Defendant's Motion

28   is DENIED as to these documents.

United States District Court
Northern District of California

1       As to the remaining documents, Defendant notes that public versions of many of the

2   attachments at issue have been previously produced independently of the emails, without

3   restriction, but maintains that nonpublic drafts of these documents were properly designated as

4   confidential.  Mot. at 4-5.  Defendant argues that publication of unfinished drafts could lead to

5   consumer confusion.  Reply at 5.  Defendant further argues that if competitors are given the

6   opportunity to analyze early drafts of marketing materials in comparison with published versions,

7   they could identify language that Defendant has determined to be more or less effective, and could

8   adjust their own marketing materials accordingly.  *Id.*

9       Upon review of these documents, the Court finds that Defendant has not met its burden to

10  show particularized harm that may result from their disclosure.  The documents are largely draft

11  versions of Product Training Guides and other materials that contain the same or similar

12  information that has been made available for public viewing.  As noted above, Defendant's broad

13  allegations of harm with respect to either the documents as a whole, or categories of documents,

14  do not satisfy its burden to show that disclosure should be prevented.  "[C]ourts have consistently

15  granted protective orders that prevent disclosure of many types of information, such as letters

16  protected under attorney-client privilege which revealed the weaknesses in a party's position,"

17  "medical and psychiatric records," "federal and grand jury secrecy provisions," and "confidential

18  settlement agreements."  *Phillips*, 307 F.3d at 1212 (citations omitted).  By contrast, courts have

19  held that documents similar to those sought to be protected in this case were not subject to

20  protection under Rule 26(c).  *See, e.g.*, *Contratto*, 227 F.R.D. at 310 (holding that defendant had

21  not established that internal memoranda regarding its product, including statistical information and

22  assessments of the consequences of the problems complainants had faced, was not protectable);

23  *Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing*, 214 F.R.D. 583, 586 (C.D. Cal. 2003)

24  (holding that defendants had not established that three memoranda from counsel to the company

25  and a letter regarding an investigation of certain patents were protectable under Rule 26(c));

26  *Grundberg v. Upjohn Co.*, 137 F.R.D. 372, 395-96 (D. Utah 1991) (holding that defendant drug

27  company failed to establish good cause for maintaining confidential designation of drug

28  experience reports, internal memoranda regarding adverse reactions, a letter from a third party,

United States District Court
Northern District of California

1    and other documents related to the drug Halcion).

2           Defendant's general allegations of harm do not meet the Rule 26(c) standard, and as a

3    result, Defendant has not established good cause to uphold the confidential designation of the

4    documents. *See Foltz*, 331 F.3d at 1130; *see also Medtronic Vascular, Inc. v. Abbott*

5    *Cardiovascular Sys., Inc.*, 2007 WL 4169628, at *2 (N.D. Cal. Nov. 20, 2007) ("Plaintiff's

6    general assertion that disclosure of business communications would chill business relations is not

7    a sufficient allegation of specific harm.  This general blanket argument would apply to all non-

8    public communications.  Plaintiff has not demonstrated any specific harm will ensue from

9    disclosure of the documents at issue.").

10          Accordingly, Defendant's Motion is DENIED as to Appendix Docs. 11, 13, 17-18, 21-22,

11   39, 83-85, 87, 91, 96-99, 112, 114, 116-18, 120, 123-30, 148-50, 158-59,162, 164, 166-67, 169,

12   171-73, 175-76, 178-85, 187-89, 191-200, 203, 205-06, 208-10, and 212-13.

13          4.     Summary

14          Based on the analysis above, the Court finds that Defendant has failed to meet its burden as

15   to the following documents: (1) Internal Market Research document (Appendix Doc. 9); (2)

16   Product Training Guides (Docs. 10, 12, 14-16, 104-10, 119, 121-22, 131-47, 151-57, 160, 163,

17   174, 177, 186, 190, 201-02, 204, 207, and 211); and (3) Internal Emails/Attachments (Docs. 11,

18   13, 17-19, 21-25, 27, 29-37, 39-45, 48-50, 59-103, 111-18, 120, 123-30, 148-50, 158-59,161-62,

19   164-67, 168-73, 175-76, 178-85, 187-89, 191-200, 203, 205-06, 208-10, and 212-13).

20   Accordingly, Defendant's Motion is DENIED as to those documents, although Defendant may

21   redact any information about specific customers.

22          However, Defendant has met its burden as to the Gallup Study Reports (Docs. 1-8).

23   Accordingly, the Court next considers whether the public interest in disclosure is outweighed by

24   Defendant's private interest in confidentiality.

25   **B.**     **Public Interest In Disclosure vs. Defendant's Confidentiality Interest**

26          As the Ninth Circuit has instructed, the Court must look to the seven factors listed in

27   *Glenmede Trust* to balance the public and private interests in deciding whether maintaining a

28   protective order is necessary.  *In re Roman Catholic Archbishop*, 661 F.3d at 424.  Having already

United States District Court
Northern District of California

12

1    discussed the first factor (privacy) above, the Court will address the other relevant *Glenmede Trust*

2    factors.

3         Factor 2 requires consideration of "whether the information is being sought for a

4    legitimate purpose or for an improper purpose."  While Plaintiffs' brief argues extensively about

5    whether Defendant has good cause to maintain confidentiality, nowhere have they identified a

6    legitimate purpose for disclosing the challenged materials other than the public's right to know.

7    The Ninth Circuit has said that "a litigant is not entitled to the court's protection" from "additional

8    liability and litigation" due to the disclosure of confidential information.  *Foltz*, 331 F.3d at 1137.

9    But Defendant has met its burden to show that the reports should remain confidential at this time.

10   The Court is unaware of any legitimate purpose for disclosing to the public the "confidential

11   research, development, [and] commercial information" of a company before that information

12   becomes material to the case.  *See* Fed. R. Civ. P. 26(c)(1)(G).  The relevant question under this

13   factor is whether there is a legitimate purpose for disclosing the information now.  Plaintiffs did

14   not answer that question.  Until the challenged materials are proffered on an issue relevant to

15   Defendant's liability or some other relevant issue in this litigation, Plaintiffs' desire for disclosure

16   is, at best, premature.

17        Factors 4 and 7 require consideration of whether confidentiality is being sought over

18   information important to public health and safety, and whether the case involves issues important

19   to the public, respectively.  As noted above, this case involves allegations that Defendant's

20   representation of its Tempur products as "formaldehyde free," "free of harmful (volatile organic

21   compounds) VOCs," "allergen resistant," and "hypoallergenic" are false and misleading.  Sec.

22   Am. Compl. ¶ 11.  Although these allegations involve matters related to public health and safety,

23   the reports do not address any such issues.  Plaintiffs have not even alleged that the challenged

24   reports are material to their case.  If there was a relevant public interest in the challenged

25   materials, "the mere allegation of misconduct in the discovery documents . . . without more, does

26   not create a public interest sufficiently large enough to outweigh [ ] private interests in

27   confidentiality."  *Id.* at 427 (noting that there has been "no judicial determination" regarding the

28   challenged materials).

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1   The Court also finds that Factor 5—whether the sharing of information among litigants

2   will promote fairness and efficiency—does not weigh in favor of disclosure since Plaintiffs

3   already have access to the information.

4   Having weighed the relevant *Glenmede Trust* factors, the Court finds that the public

5   interest in disclosure does not outweigh Defendant's private interest in maintaining the

6   confidentiality of the challenged reports.  Accordingly, Defendant's Motion is GRANTED as to

7   Appendix Docs. 1-8.

8   **CONCLUSION**

9   Based on the analysis above, the Court finds that Defendant has shown good cause for

10   maintaining the confidentiality of the Gallup Study Reports, as particularized harm may result

11   from disclosure of information to the public, and the public interest in disclosure of the challenged

12   materials does not overcome Defendant's private interest in maintaining their confidentiality.

13   Accordingly, the Motion to Retain Confidentiality is **GRANTED** as to Appendix Docs. 1-8.

14   However, Defendant has failed to meet its burden as to the remaining documents.

15   Accordingly, Defendant's Motion is **DENIED** as to: (1) the Internal Market Research document

16   (Appendix Doc. 9); (2) Product Training Guides (Docs. 10, 12, 14-16, 104-10, 119, 121-22, 131-

17   47, 151-57, 160, 163, 174, 177, 186, 190, 201-02, 204, 207, and 211); and (3) Internal

18   Emails/Attachments (Docs. 11, 13, 17-25, 27, 29-37, 39-45, 48-50, 59-103, 111-18, 120, 123-30,

19   148-50, 158-59,161-62, 164-67, 168-73, 175-76, 178-85, 187-89, 191-200, 203, 205-06, 208-10,

20   and 212-13).  Defendant may redact any information about specific customers.

21   **IT IS SO ORDERED.**

22

23   Dated: March 6, 2015

24   _____
MARIA-ELENA JAMES
25   United States Magistrate Judge

26

27

28

14