1  Mark L. Eisenhut, Bar No. 185039
   meisenhut@calljensen.com
2  Matthew R. Orr, Bar No. 211097
   morr@calljensen.com
3  Samuel G. Brooks, Bar No. 272107
   sbrooks@calljensen.com
4  CALL & JENSEN
   A Professional Corporation
5  610 Newport Center Drive, Suite 700
   Newport Beach, CA  92660
6  Tel:    (949) 717-3000
   Fax:    (949) 717-3100
7
   Douglas B. Brown, Esq. *[Admitted Pro Hac Vice]*
8  dbrown@rumberger.com
   Daniel J. Gerber, Esq. *[Admitted Pro Hac Vice]*
9  dgerber@rumberger.com
   Samantha C. Duke, Esq. *[Admitted Pro Hac Vice]*
10 sduke@rumberger.com
   RUMBERGER, KIRK & CALDWELL, P.A.
11 Lincoln Plaza, Suite 1400
   300 South Orange Avenue
12 Orlando, FL  32802
   Tel.: (407) 872-7300
13 Fax: (407) 841-2133

14 Attorneys for Defendants Tempur-Sealy International, Inc.,
   formerly known as Tempur-Pedic International, Inc. and
15 Tempur-Pedic North America, LLC

16                **UNITED STATES DISTRICT COURT**

17               **NORTHERN DISTRICT OF CALIFORNIA**

18 | ALVIN TODD and MELODY TODD, et al., individually and on behalf of all others similarly | Case No.    3:13-cv-04984-JST (MEJ) |

19 situated,                                         **TEMPUR-SEALY INTERNATIONAL, INC.**
                                                     **AND TEMPUR-PEDIC NORTH AMERICA,**
20                   Plaintiffs,                     **LLC'S NOTICE OF MOTION AND**
                                                     **MOTION TO DISMISS PLAINTIFFS'**
21               vs.                                 **THIRD AMENDED COMPLAINT UNDER**
                                                     **F.R.C.P. 12(B)(1) AND 12(B)(6);**
22 TEMPUR-SEALY INTERNATIONAL, INC.,                 **SUPPORTING MEMORANDUM OF**
   formerly known as TEMPUR-PEDIC                    **POINTS AND AUTHORITIES**
23 INTERNATIONAL, INC. and TEMPUR-PEDIC
   NORTH AMERICA, LLC,                               Date:       October 22, 2015
24                                                   Time:       2:00 p.m.
                   Defendants.                       Crtrom:    9
25
26                                                   Complaint Filed:    October 25, 2013
                                                     Trial Date:    None Set
27

28
   TEM01-01:1574700_1:9-16-15

   TEMPUR-SEALY INTERNATIONAL, INC. AND TEMPUR-PEDIC NORTH AMERICA, LLC'S NOTICE OF
   MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT UNDER F.R.C.P. 12(B)(1)
   AND 12(B)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

CALL &
JENSEN

**TO THE COURT AND ALL PARTIES APPEARING OF RECORD:**

PLEASE TAKE NOTICE that on October 22, 2015 at 2:00 p.m. or as soon thereafter as the motion may be heard, at the United States District Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendants Tempur-Sealy International, Inc., formerly known as Tempur-Pedic International, Inc. and Tempur-Pedic North America, LLC (collectively referred to as "Tempur" or "Defendants") will and hereby do move this Court for an order pursuant to 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure dismissing Plaintiffs' Third Amended Complaint ("TAC").

This Motion is made on the grounds that the TAC fails to adequately (1) identify any actionable misrepresentation or material omission; (2) allege standing; and (3) allege any basis for a nationwide class action based on the law of Kentucky.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this action, the oral argument of counsel, and such other and further matters as the Court may consider.

Dated:  September 16, 2015

CALL & JENSEN
A Professional Corporation
Mark L. Eisenhut
Matthew R. Orr
Samuel G. Brooks

By:*/s/ Samuel G. Brooks*
    Samuel G. Brooks

Attorneys for Defendants Tempur-Sealy International, Inc., formerly known as Tempur-Pedic International, Inc. and Tempur-Pedic North America, LLC

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................................ 1

II.  LEGAL STANDARD ......................................................................................................... 1

III. ARGUMENT ...................................................................................................................... 2

A.   Plaintiffs Fail to State a Claim for Misrepresentation ........................................... 2

1.   Plaintiffs Have Not Satisfied Rule 9(b) ..................................................... 2

2.   The *Tobacco II* Exception Does Not Salvage Plaintiffs' Claims ............... 5

3.   Plaintiffs' Claims on Behalf of Class Members Who Purchased
in 2006 Must be Dismissed .......................................................................... 8

B.   Plaintiffs Fail to State a Claim for Misrepresentation by Omission ...................... 8

1.   The Omission Claims Based on Affirmative
Misrepresentations Must Be Dismissed ...................................................... 8

2.   Plaintiffs Lack Standing to Alleged Misrepresentation by
Omission ...................................................................................................... 8

3.   Plaintiffs Do Not Adequately Allege a Duty to Disclose
Chemical Content ...................................................................................... 10

4.   Plaintiffs Do Not Adequately Allege a Duty to Disclose
Customer Complaints ................................................................................ 11

5.   Plaintiffs Cannot State a Claim for Failure to Disclose Lack of
Substantiation ........................................................................................... 12

6.   The Omission Claims in Counts I-III, VIII, XII and XXI Must
Be Dismissed ............................................................................................ 13

C.   Plaintiffs' Nationwide Unjust Enrichment Claim Must be Dismissed ............... 14

1.   Nationwide Class Treatment is Improper Because of Conflict
Between the Laws of the 50 States at Issue .............................................. 14

2.   Plaintiffs Lack Standing to Bring this Claim ........................................... 19

IV.  CONCLUSION ................................................................................................................. 20

TEMPUR-SEALY INTERNATIONAL, INC. AND TEMPUR-PEDIC NORTH AMERICA, LLC'S NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT UNDER F.R.C.P. 12(B)(1)
AND 12(B)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

Page

Federal Cases

*Arroyo v. Chattem, Inc.*,
  926 F. Supp. 2d 1070 (N.D. Cal. 2012).................................................................. 10

*Arroyo v. Pfizer, Inc.*,
  2013 WL 415607 (N.D. Cal. Jan. 31, 2013)........................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................... 2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................. 2, 11

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009)...................................................................................... 9

*Bronson v. Johnson & Johnson*,
  2013 WL 1629191 (N.D. Cal. Apr. 16, 2013)......................................................... 13

*Butler v. Mattel, Inc.*,
  2014 WL 764514 (C.D. Cal. Feb. 24, 2014).............................................................. 9

*Chin v. Chrysler Corp.*,
  182 F.R.D. 448 (D.N.J. 1998) ................................................................................... 17

*Corder v. Ford Motor Company*,
  272 F.R.D. (W.D. Ky. 2011) .................................................................................... 19

*Crouch v. Johnson & Johnson Consumer Co., Inc.*,
  2010 WL 1530152 (D.N.J. Apr. 15, 2010).......................................................... 9, 14

*CTIA – The Wireless Association, v. City and County of San Francisco, CA*,
  827 F. Supp. 2d 1054 (N.D. Cal. 2011).................................................................... 12

*Delacruz v. Cytosport, Inc.*, No. C,
  2012 WL 1215243 (N.D. Cal. Apr. 11, 2012)........................................................... 4

*Donohue v. Apple, Inc.*,
  871 F. Supp. 2d 913 (N.D. Cal. 2012)...................................................................... 14

*Easter v. Am. W. Fin.*,
  381 F.3d 948 (9th Cir. 2004).................................................................................... 19

*Engel v. Novex Biotech LLC*,
  2015 WL 846777 (N.D. Cal. Feb. 25, 2015)............................................................ 13

*Garcia v. Sony Computer Entm't Am., LLC*,
  859 F. Supp. 2d 1056 (N.D. Cal. 2012)...................................................................... 4

TEMPUR-SEALY INTERNATIONAL, INC. AND TEMPUR-PEDIC NORTH AMERICA, LLC'S NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT UNDER F.R.C.P. 12(B)(1)
AND 12(B)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

CALL & JENSEN

**TABLE OF AUTHORITIES (cont'd)**

Page

*Gitson v. Trader Joe's Co.*,
   2013 WL 5513711 (N.D. Cal. Oct. 4, 2013) .................................................................. 4

*Gratz v. Bollinger*,
   539 U.S. 244 (2003) ...................................................................................................... 19

*Guarantee Electric v. Big Rivers Electric Corp.*,
   669 F.Supp. 1371 (W.D. Ky. 1987) ......................................................................... 16, 17

*Haskins v. Symantec Corp.*,
   2014 WL 2450996 (N.D. Cal. Jun. 2, 2014) ............................................................... 3, 8

*Heindel v. Pfizer, Inc.*,
   381 F. Supp. 2d 364 (D.N.J. 2004) ........................................................................... 18, 19

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*, No. C,
   2010 WL 3448531 (N.D. Cal. 2010) ................................................................... 9, 10, 13

*Horvath v. LG Electronics Mobilecomm U.S.A., Inc.*,
   2012 WL 2861160 (S.D. Cal. Feb. 13, 2012) ............................................................... 15

*In re Apple AT&T Antitrust Litig.*,
   596 F. Supp. 2d 1288 (N.D. Cal. 2008) ........................................................................ 20

*In re Carrier IQ, Inc., Consumer Privacy Litigation*,
   2015 WL 274054 (N.D. Cal. Jan. 21, 2015) ................................................................. 19

*In re Clorox Consumer Litig.*,
   894 F. Supp. 2d 1224 (N.D. Cal. 2012) ........................................................................ 13

*In re Ditropan XL Antitrust Litig.*,
   529 F. Supp. 2d 1098 (N.D. Cal. 2007) ........................................................................ 20

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ........................................................................ 20

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
   174 F.R.D. 332 (D.N.J. 1997) ....................................................................................... 17

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ........................................................................ 20

*In re Vioxx Prods. Liabl. Litig.*,
   239 F.R.D. 450 (E.D. La. 2006) .................................................................................... 18

*Kane v. Chobani, Inc.*,
   2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ............................................................... 4

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ........................................................................................ 2

CALL &
JENSEN

**TABLE OF AUTHORITIES (cont'd)**

Page

*Koehler v. Litehouse, Inc.*,
   2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ................................................................. 15

*Koronthaly v. L'Oreal USA, Inc.*,
   2008 WL 4723862 (D.N.J. Oct. 24, 2008) ...................................................................... 9

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005) ......................................................................... 4

*Layton v. AAMCO Transmissions, Inc.*,
   717 F. Supp. 2d 368 (D. Md. 1989) ............................................................................. 12

*Littlehale v. Hain Celestial Grp., Inc.*,
   2012 WL 5458400 (N.D. Cal. July 2, 2012) ................................................................. 15

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .......................................................................................................... 8

*Lyon v. Caterpillar, Inc.*,
   194 F.R.D. 206 (E.D. Pa. 2000) .................................................................................. 18

*Maxwell v. Unilever U.S., Inc.*,
   2013 WL 1435232 (N.D. Cal. Apr. 9, 2013) .............................................................. 4, 5

*Mazza v. American Honda Motor Co.*,
   666 F. 3d 581 (9th Cir. 2012) ............................................................ 15, 16, 17, 18, 19

*Meaunrit v. The Pinnacle Foods Group, LLC*,
   2010 WL 1838715 (N.D. Cal. May 5, 2010) ............................................................... 14

*Metro-North Commuter R.R. Co. v. Buckley*,
   521 U.S. 424 (1997) ...................................................................................................... 11

*Opperman v. Path, Inc.*,
   2014 WL 1973378 (N.D. Cal. May 14, 2014) ............................................... 3, 5, 6, 7, 8

*Owen v. General Motors Corp.*,
   533 F.3d 913 (8th Cir. 2008) ........................................................................................ 2

*Pardini v. Unilever United States, Inc.*,
   961 F. Supp. 2d 1048 (N.D. Cal. 2014) ....................................................................... 20

*Porcell v. Lincoln Wood Properties, Inc.*,
   713 F. Supp. 2d 1305 (D.N.M. 2010) ............................................................................ 2

*Rainer v. Union Carbide Corp.*,
   402 F.3d 608 (6th Cir. 2005) ....................................................................................... 11

*Riva v. Pepsico, Inc.*,
   82 F. Supp. 3d 1045 (N.D. Cal. 2015) ......................................................................... 10

TEMPUR-SEALY INTERNATIONAL, INC. AND TEMPUR-PEDIC NORTH AMERICA, LLC'S NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT UNDER F.R.C.P. 12(B)(1)
AND 12(B)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

CALL &
JENSEN

**TABLE OF AUTHORITIES (cont'd)**

Page

*Schwartz v. Independent Appraisals, LLC,*
   2011 WL 5593108 (D. Mass. Nov. 17, 2011) ................................................................. 13

*Spence v. Glock*
   227 F.3d at 312 (5th Cir. 2000) ................................................................................. 18

*State Farm Mut. Auto Ins. Co. v. Campbell,*
   538 U.S. 408 (2003) ................................................................................................... 18

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998) ............................................................................................... 2, 3, 8

*Stuart v. Cadbury Adams USA, LLC,*
   458 F. App'x 689 (9th Cir. 2011) .............................................................................. 11

*Szymczak v. Nissan North Am., Inc.,*
   2011 WL 7095432 (S.D. N.Y. 2011) ......................................................................... 14

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d (9th Cir. 2002) .............................................................................................. 2

*Warren v. Fox Family Worldwide, Inc.,*
   328 F.3d 1136 (9th Cir. 2003) .............................................................................. 2, 8

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) ..................................................................................................... 9

*Whitson v. Bumbo,* No. C,
   2009 WL 1515597 (N.D. Cal. Apr. 16, 2009) ............................................................. 9

*Wright v. Bath & Body Works Direct, Inc.,*
   2012 WL 12088132 (W.D. Mo. Oct. 17, 2012) ......................................................... 12

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,*
   471 U.S. 626 (1985) ................................................................................................... 12

*Zinser v. Accufix Research Inst., Inc.,*
   253 F.3d 1180 (9th Cir. 2001) .......................................................................... 15, 17

State Cases

*Harvey v. Nissan North America, Inc.,*
   2005 WL 1252341 (N.J. Super. App. Div. Apr. 29, 2015) ......................................... 14

*Hernandez v. Burger,*
   102 Cal. App. 3d 795 (Cal. 1980) .............................................................................. 19

*Hershenow v. Enterprise Rent-A-Car of Boston, Inc.,*
   445 Mass. 790 (Mass. 2006) ....................................................................................... 2

TEMPUR-SEALY INTERNATIONAL, INC. AND TEMPUR-PEDIC NORTH AMERICA, LLC'S NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT UNDER F.R.C.P. 12(B)(1)
AND 12(B)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

**TABLE OF AUTHORITIES (cont'd)**

Page

*In re Tobacco II Cases,*
46 Cal. 4th 298 (Cal. 2009) ............................................................................. 5

*International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck &*
*Co.*, 192 N.J. 372 (N.J. 2007).......................................................................... 2, 11

*Kwikset Corp. v. Superior Court,*
246 P.3d 877 (Cal. 2011)................................................................................. 11

*Lohman v. Daimler-Chrysler Corp.,*
142 N.M. 437 (Ct. App. N.M. 2007)............................................................... 14

*McCann v. Foster Wheeler LLC,*
48 Cal. 4th 68 (Cal. 2010) ..................................................................... 16, 17, 18

*Philip Morris Inc. v. Angeletti,*
358 Md. 689 (Md. 2000) .................................................................................. 2

*Potter v. Firestone,*
6 Cal. 4th 965 (Cal. 1993) ............................................................................... 11

*Schnall v AT&T Wireless Services, Inc.,*
171 Wash. 2d 260 (Wash. 2011) ..................................................................... 2

*Smoot v. Physicians Life Insurance Co.,*
135 N.M. 265 (N.M. Ct. App. 2003)............................................................... 14

*Stutman v. Chemical Bank,*
95 N.Y.2d 24 (N.Y. 2000)................................................................................ 2

*Tietsworth v. Harley-Davidson, Inc.,*
270 Wis. 2d 146 (Wis. 2004)........................................................................... 14

*Valenti v. Hewlett Packard Co.,*
275 Wis.2d 878 (Wis. App. 2004).................................................................... 3

*Whiteley v. Philip Morris Inc.,*
117 Cal. App. 4th 635 (Cal. 2004) .................................................................. 11

State Statutes

Cal. Health & Saf. Code §§ 25249.10 ...................................................................... 10
Wisconsin Statute Section 100.18 ............................................................................ 14

Federal Rules

Fed. R. Civ. P. 12(b)(1)  ...................................................................................... 1, 2
Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 2

**TABLE OF AUTHORITIES (cont'd)**

Page

Other Authorities

71 FR 13472-01 ................................................................................................................ 10
Restatement (Second) of Conflicts § 148 .......................................................................... 18

TEMPUR-SEALY INTERNATIONAL, INC. AND TEMPUR-PEDIC NORTH AMERICA, LLC'S NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT UNDER F.R.C.P. 12(B)(1)
AND 12(B)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1    **I.        INTRODUCTION**

2            Plaintiffs' about-face on their Third Amended Complaint ("TAC") after two years of litigation

3    makes evident that their previous allegations could not support their purported class action.

4    Highlighting this fact, the TAC omits portions of the First Amended Complaint ("FAC") which

5    referred to specific alleged misrepresentations that each Plaintiff "considered and relied upon" in favor

6    of allegations of a wide-spread "marketing campaign" consisting of fourteen vague and generalized

7    representations that each Plaintiff was simply "exposed to".[1] Yet, Plaintiffs do not even allege many of

8    these representations were false or misleading. Plaintiffs' effort to save their class action has backfired

9    because the TAC is devoid of any specific allegations tying any representation to any named Plaintiff.

10   What this Court had previously deemed a "close call"[2] is now clear: after extensive discovery and

11   three pleadings, Plaintiffs still cannot state any plausible claim for misrepresentation. Therefore, those

12   claims must be dismissed with prejudice. Likewise, because Plaintiffs fail to state a claim for

13   misrepresentation, they cannot state a claim for deceit by omission.

14           Plaintiffs also assert a new omission theory based on a contention that "there is no known safe

15   level of exposure" to formaldehyde and various volatile organic compounds ("VOCs"),[3] but this claim

16   fails because Plaintiffs have not alleged sufficient injury-in-fact and Defendants have no duty to

17   disclose immaterial facts. To the extent Plaintiffs merely allege lack of substantiation, the law provides

18   no right of action.

19           Plaintiffs also add nationwide class allegations seeking recovery for unjust enrichment under

20   Kentucky law. However, under well-established choice-of-law principles it would be inappropriate to

21   apply the unjust enrichment law of Kentucky to residents of the other 49 states. Further, no Plaintiff

22   resides in Kentucky or purchased their Tempur product in Kentucky. Therefore, no Plaintiff has

23   standing to bring this claim. As a result, Count Twenty-Three must be dismissed.

24   **II.       LEGAL STANDARD**

25           The Plaintiffs' Complaint must allege "enough facts to state a claim to relief that is plausible

---

[1] Obviously, after the depositions of the named Plaintiffs, the pleadings had to change based on testimony that few Plaintiffs even saw the representations that are alleged to be false.
[2] (Doc. 50, p. 10).
[3] (Doc. 156, ¶¶ 4, 50).

26

27

28

TEMPUR-SEALY INTERNATIONAL, INC. AND TEMPUR-PEDIC NORTH AMERICA, LLC'S NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT UNDER F.R.C.P. 12(B)(1)
AND 12(B)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

CALL &
JENSEN

1   on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556

2   U.S. 662, 678 (2009). This "requires more than labels and conclusions, and a formulaic recitation of

3   the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555 (citations omitted).

4   Pleading "deficienc[ies] should be exposed at the point of minimum expenditure of time and money by

5   the parties and the Court". *Id.* at 557-58. Furthermore, when a cause of action alleges a course of

6   fraudulent conduct as the basis of a claim, it sounds in fraud, and the complaint "as a whole must

7   satisfy the particularity requirements of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125

8   (9th Cir. 2009). That is, each Plaintiffs' allegations "must be accompanied by the who, what, when,

9   where, and how of the misconduct charged . . . [and] set forth what is false or misleading about a

10   statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2002)

11   (citations and internal quotation marks omitted).

12       Where the face of the complaint does not demonstrate a basis for standing, the Court lacks

13   jurisdiction and should dismiss the action under Rule 12(b)(1). *Warren v. Fox Family Worldwide, Inc.*,

14   328 F.3d 1136, 1139 (9th Cir. 2003);  *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

15   101-02 (1998).

16   **III.   ARGUMENT**

17       **A.   Plaintiffs Fail to State a Claim for Misrepresentation**

18           1.   Plaintiffs Have Not Satisfied Rule 9(b)

19       Plaintiffs' claims for misrepresentation sound in fraud, and therefore must satisfy Rule 9(b)'s

20   standard. *See* (Docs. 50 and 156, ¶¶ 4-10). However, the allegations of the TAC do not have the

21   particularity necessary to satisfy the rule and must be dismissed.

22       The TAC alleges misrepresentation arising under the state consumer protection statutes of

23   California, Illinois, Massachusetts, Maryland, Missouri, New Jersey, New Mexico, New York,

24   Washington, and Wisconsin. Each of these state's laws require proof of reliance or causation.[4]  Yet,

[4] (Doc. 50); *see also Philip Morris Inc. v. Angeletti*, 358 Md. 689 (Md. 2000); *Hershenow v. Enterprise Rent-A-Car of Boston, Inc.*, 445 Mass. 790, 791 (Mass. 2006); *Owen v. General Motors Corp.*, 533 F.3d 913, 922 (8th Cir. 2008); *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389-91 (N.J. 2007); *Porcell v. Lincoln Wood Properties, Inc.*, 713 F. Supp. 2d 1305 (D.N.M. 2010); *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000); *Schnall v AT&T Wireless*

Continued on the next page

despite having all of Tempur's advertising at their disposal, not once in the 129 page TAC does a single Plaintiff identify any specific misrepresentation that he or she actually saw and relied upon in purchasing his or her Tempur product. Changing their theory of the case which previously focused on six specific representations, Plaintiffs now allege Tempur had a "lengthy, pervasive and widespread advertising campaign[] to which the Plaintiff Consumer Representatives were **exposed**, covering at least seven (7) years". (Doc. 156, ¶ 3) (emphasis added). Through the "Marketing Campaign", Tempur delivered fourteen seemingly disparate messages. *Id.* Only messages (h), (m), and part of (n) ("hypoallergenic") were a part of the Second Amended Complaint. There is no mention of how these messages were delivered (via print, television, Internet) or the time period each message was delivered. *Id.* Nor were samples of these advertisements attached to the TAC.

The TAC offers slightly more detail for five of the representations delivered through the "Marketing Campaign". (Doc. 156, ¶¶ 8, 50, 52-54). Yet, these more specific descriptions do not help Plaintiffs' case because (1) one concerns a retail communication when no Plaintiff alleges even being exposed to any claim through a retail communication (¶¶ 8, 52); (2) the second concerns an in-store brochure from 2013 (the end of the supposed long-term campaign) (¶ 52); (3) the third and fourth concern claims without any description of where the claims were made or any allegation that any plaintiff was even "exposed" to these statements (¶¶ 50, 53); and (4) the fifth discusses a website representation to which no plaintiff alleges being "exposed". (¶ 54).

While a few Plaintiffs list various representations that they remember being "exposed" to, mere "exposure" to a particular statement is insufficient to support a claim for misrepresentation. *See, e.g. Haskins v. Symantec Corp.*, No. 13-cv-01834, 2014 WL 2450996, at *1 (N.D. Cal. Jun. 2, 2014) (Tigar, J.) (dismissing claim where the plaintiff simply alleged she "relied" on a long list of representations and she was "exposed to" those representations); *Opperman v. Path, Inc.*, No. 13-cv-00453-JST, 2014 WL 1973378, at *15 (N.D. Cal. May 14, 2014) (Tigar, J.) (finding plaintiffs failed to allege that any one of them saw any particular representation when they only alleged they "visited

---

Continued from the previous page
*Services, Inc.*, 171 Wash. 2d 260, 278 (Wash. 2011); *Valenti v. Hewlett Packard Co.*, 275 Wis.2d 878, 878(Wis. App. 2004).

TEMPUR-SEALY INTERNATIONAL, INC. AND TEMPUR-PEDIC NORTH AMERICA, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT UNDER F.R.C.P. 12(B)(1) AND 12(B)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Apple's website");  *In re Facebook PPC Adver. Litg.*, No. 5:09-cv-03043-JF, 2010 WL 3341062, at *10 (N.D. Cal. Aug. 25, 2010) (dismissing UCL claim where the plaintiffs alleged they "reviewed and relied on the policies, practices and representations set forth on [the defendant's] website" but failed to "identify with particularity at least the specific polices and representations that they reviewed"); *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 5289253, at *8 (N.D. Cal. Sept. 19, 2013) (dismissing claims where the plaintiffs did not allege they actually read the specific alleged misstatements on the defendant's website); *Gitson v. Trader Joe's Co.*,  No. 13-cv-01333-WHO, 2013 WL 5513711, at *6 (N.D. Cal. Oct. 4, 2013) (dismissing claims where the complaint did not "allege that the plaintiffs ever saw Trader Joe's website or what the website states"); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (dismissing claims because "none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements; nor do they allege that they entered into the transaction as a result of those advertisements"), *aff'd*, 252 F. App'x 777 (9th Cir. 2007); *Garcia v. Sony Computer Entm't Am., LLC*, 859 F. Supp. 2d 1056, 1063 (N.D. Cal. 2012) (dismissing claims where the complaint alleged that the defendant's website contained misleading statements but the plaintiff did "not specifically aver that [he] relied on those particular statements"); *Delacruz v. Cytosport, Inc.*, No. C 11-3532 CW, 2012 WL 1215243, at *9 (N.D. Cal. Apr. 11, 2012) ("Plaintiff's claims of reliance on misrepresentations on the website also fail. She does not plead that she read or relied on any statements on the website."); *Maxwell v. Unilever U.S., Inc.*, No. 12-cv-1736, 2013 WL 1435232, at *2, *5 (N.D. Cal. Apr. 9, 2013) (dismissing claims where plaintiff alleged "that she relied on the statements located on the labeling and the websites when making her decision to purchase the products" but "fail[ed] to unambiguously specify . . . the particular statements [she] allegedly relied on when making her purchases").

Even if merely alleging "exposure" were sufficient (which it is not), Plaintiffs cannot pursue claims based on representations to which they were never "exposed". Not one of the Plaintiffs alleges they were exposed to the following allegedly misleading statements:[5] "formaldehyde free", "free of

---

[5] The Plaintiffs' misrepresentation claims are predicated on seven statements: (1) "formaldehyde free"; (2) "free of harmful VOCs"; (3) "safe";  (4) "completely harmless"; (5) "allergen resistant";  (6) "hypoallergenic"; and (7) "slight odor that will dissipate in a few days". *See* (Doc. 156,  ¶¶ 4, 10, 103, 112, 128, 144, 194, 233, 253, 283, 336, 357).

TEMPUR-SEALY INTERNATIONAL, INC. AND TEMPUR-PEDIC NORTH AMERICA, LLC'S NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT UNDER F.R.C.P. 12(B)(1)
AND 12(B)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

harmful VOCs", "completely harmless", and "slight odor that will dissipate in a few days." (Doc. 156, ¶¶ 23-35). Toni Kibbee alleges she was "exposed" to a "no VOC" statement and the Andersens allege they were "exposed" to a "free of VOCs" statement, but these are not the actionable misrepresentations which form the basis of their claims. *See id.* at ¶¶ 333, 357. Plaintiffs plead the statement "free of *harmful* VOCs" is false and misleading, not that Tempur ever represented that its products were free of VOCs or had no VOCs. *Id.* Further, only Tina White and the Kaufmans allege they were exposed to representations that Tempur products were "safe." *Id.* Even if they can pursue a claim that this was a misrepresentation, the other Plaintiffs cannot. Likewise, Simmons, Comiskey, Davidoff, Palmer, Kibbee, the Stones, the Andersens, and the Kucharskis do not claim to have been "exposed" to representations that Tempur products are "hypoallergenic." *See id.* Therefore, their claims in Counts IV, X, XVI-XVII, XIX, and XXI cannot be based on this alleged misrepresentation. Finally, Simmons, Davidoff, and Palmer do not claim to have been "exposed" to representations that Tempur products are "allergen resistant". Counts IV and XVI-XVII; therefore, fail to state a claim.

The vagueness of Plaintiffs' allegations in the TAC is telling. After extensive discovery spanning two years of litigation, Plaintiffs still cannot identify any specific misleading advertisement that they saw and upon which they relied (or which caused their purchase). For this reason, Plaintiffs' misrepresentation claims should be dismissed with prejudice.

### 2.   The *Tobacco II* Exception Does Not Salvage Plaintiffs' Claims

To the extent Plaintiffs are seeking to avoid pleading requirements by alleging a "long-term advertising campaign" under the California Supreme Court's decision in *In re Tobacco II Cases,* 46 Cal. 4th 298 (Cal. 2009), they come up short. In its previous order, this Court found whether to apply the *Tobacco II* exception to be a "close call". (Doc. 50, p. 10). With the new pleading, this is no longer a "close call" and the misrepresentation claims must be dismissed.

First, *Tobacco II* only applies to the California claims, and not to the claims of the other sixteen Plaintiffs who bring claims for violations of the consumer protection laws of nine other states. As a result, the other sixteen Plaintiffs' misrepresentation claims must be dismissed summarily. Second, the allegations do not satisfy the six factor test for the *Tobacco II* exception as articulated by this Court in *Opperman v. Path, Inc.*, No. 13-cv-00453-JST, 2014 WL 1973378 (N.D. Cal. May 14,

2014) (to relieve a plaintiff from duty to allege exposure and reliance on a specific misrepresentation plaintiff must allege (1) "that she actually saw or heard the defendant's advertising campaign," (2) campaign is "sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require the plaintiff to plead each misrepresentation she saw and relied upon," (3) facts sufficient to give notice of "what, in particular, the defendant is alleged to have said, and how it was misleading," (4) "the degree to which the alleged misrepresentations contained within the advertising campaign are similar to each other, or even identical," (5) "when and how each named plaintiff was exposed to the advertising campaign," and (6) "when a plaintiff made her purchase or otherwise relied in relation to a defendant's advertising campaign" so as to permit the court "to determine which portion of that campaign is relevant").

While each Plaintiff pays lip service to the first factor – i.e., that they actually saw or heard the "Marketing Campaign" – there are no allegations that establish the alleged "Marketing Campaign" is sufficiently lengthy in duration or widespread in dissemination that it would be unrealistic to require each plaintiff to plead each misrepresentation he or she saw and relied upon. There is no support for the conclusory allegation that Tempur engaged in a 7-year "Marketing Campaign" with respect to the alleged misrepresentations. Rather, Plaintiffs allege no more than that the allegedly false statements might have been made by sales representatives, or that they were included for a time on an obscure page of the website. (Compare Doc. 156, ¶ 3 with  ¶¶ 8, 50-54). Furthermore, the California Plaintiffs only allege they were exposed to the "Marketing Campaign" "over a period of years". *Id.* at ¶ 23. "Years" is not a "decades-long" advertising campaign supporting the *Tobacco II* exception.

The "Marketing Campaign" is also not alleged to be sufficiently widespread in dissemination. As this Court has held, "the complaint should describe the mechanism of dissemination for all identified representations." *Opperman*, 2014 WL 1973378, at *18. Plaintiffs do not describe how the fourteen messages were conveyed through the "Marketing Campaign" – i.e. whether they were a part of a television commercial or a one-on-one communication with a call center representative. (Doc. 156, ¶ 3). In fact, of the fourteen messages identified, only three are described in any sort of detail regarding their mechanism of dissemination. *Id.* at ¶¶ 8, 52, 54. Certainly, greater detail is necessary to "ensure[] that the advertisements at issue are representations that consumers were likely to have

CALL&
JENSEN

viewed, as opposed to representations that were isolated or more narrowly disseminated, such as statements buried on a rarely-viewed webpage, or made on an investor phone conference." *Opperman*, 2014 WL 1973378, at *18.

Further, Plaintiffs' broad allegation that Tempur was the industry leader in expenditure of advertising dollars and advertised over a wide variety of media does not save the Todds' claim. Spending alone does not prove the existence of an actionable long-term advertising campaign. *Cf. Delacruz*, 2012 WL 2563857, at *5, 9 (tens of millions in advertising insufficient to satisfy *Tobacco II* exception).

The third factor requires Plaintiffs to attach a representative sample of the advertisements to which the Todds were supposedly exposed. Such materials are absent from the TAC. The TAC simply does not offer enough detail to allow Tempur to "understand which advertising is alleged to be misleading, and how it is misleading". *See Opperman*, 2014 WL 1973378, at *19.

Fourth, the messages listed in Paragraph 3 of the TAC are not "similar enough to be considered as part of one campaign, or the delivery of a single message or set of messages;" rather, they are "a disparate set of advertising content published in the ordinary course of commerce." *Opperman*, 2014 WL 1973378, at *17. For example, messages concerning quality, NASA, medical applications, investment and research, comfort, relief from pain and pressure, Good Housekeeping, and prevention of snoring have nothing to do with messages concerning allergies, VOCs, or formaldehyde. (Doc. 156, ¶ 3). The messages allegedly contained within Tempur's advertising campaign are not merely variations of consistent central terms and are not sufficiently similar to each other to relieve the Plaintiffs from pleading that they saw and relied on specific representations. The lack of connection is also established by the fact that the TAC does not even assert the new messages were false.

As already explained, the California claims are subject to Rule 9(b)'s particularity requirement, yet the Todds do not allege "when and how" they were supposedly exposed to the "Marketing Campaign" or the statements that Tempur products were "allergen resistant" or "hypoallergenic." (*Id.* at ¶ 23). It is not "sufficient simply to allege general exposure without more detail." *Opperman*, 2014 WL 1973378, at *17. Plaintiffs utterly fail to specify the timeframe of each message conveyed in the

1    "Marketing Campaign," so the Court cannot determine which portion of the campaign is relevant. *Id.*

2    at *18.

3

4    In short, Plaintiffs – including the California plaintiffs – are not relieved from their pleading

5    obligations by *Tobacco II* and the misrepresentation claims must be dismissed.

6            3.   <u>Plaintiffs' Claims on Behalf of Class Members Who Purchased in 2006 Must be</u>

7            <u>Dismissed</u>

8    Plaintiffs purport to represent all persons who purchased their Tempur product from January 1,

9    2006 through December 31, 2013. (Doc. 156, ¶ 95). However, the  TAC alleges the "Marketing

10   Campaign" did not begin until 2007. *Id.* at ¶ 3. The earliest date alleged for purchase of a Tempur

11   product by one of the Plaintiffs is May 2007. *Id.* at ¶ 28. Even if Plaintiffs could rely on a "Marketing

12   Campaign" to support their claims beginning in 2007 (they cannot), the TAC fails to state a plausible

13   claim for relief for sales in 2006.

14       **B.**    **Plaintiffs Fail to State a Claim for Misrepresentation by Omission**

15           1.   <u>The Omission Claims Based on Affirmative Misrepresentations Must Be</u>

16           <u>Dismissed</u>

17   Plaintiffs allege that because Tempur made affirmative representations about its products, it

18   assumed "a corresponding duty to disclose . . . the truth." *Id.* at ¶ 4. Because Plaintiffs do not state a

19   claim for affirmative misrepresentation (as discussed above), they cannot state a claim for

20   misrepresentation by omission on the same facts. *See, e.g. Haskins*, 2013 WL 6234610, at *6.

21           2.   <u>Plaintiffs Lack Standing to Alleged Misrepresentation by Omission</u>

22   Standing is a jurisdictional requirement. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S.

23   83, 101-02 (1998). Therefore, where the face of the complaint does not demonstrate a basis for

24   standing, the Court should dismiss the action. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136,

25   1139 (9th Cir. 2003). Injury-in-fact sufficient to confer standing requires allegations that the plaintiff

26   has personally suffered a harm both (1) "concrete and particularized" and (2) "actual or imminent, not

27   conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Where a

28   complaint makes allegations of potential future injury, the threat of future harm must be "certainly

TEMPUR-SEALY INTERNATIONAL, INC. AND TEMPUR-PEDIC NORTH AMERICA, LLC'S NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT UNDER F.R.C.P. 12(B)(1)
AND 12(B)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

CALL &
JENSEN

1    impending" as opposed to a mere possibility. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). In a

2    putative class action, the plaintiff must have standing before he can represent a class. *Whitson v.*

3    *Bumbo*, No. C 07-05597 MHP, 2009 WL 1515597, at *5 (N.D. Cal. Apr. 16, 2009).

4           Plaintiffs declare Tempur products "can and do contain formaldehyde and other VOCs that are

5    known allergens and <u>potentially</u> harmful and are not hypoallergenic." (Doc. 156, ¶¶ 23-35) (emphasis

6    added). Each Plaintiff alleges that had they been told this fact, they would not have purchased the

7    product for the retail price paid or would not have purchased the product at all. *Id.* However, despite

8    extensive discovery, Plaintiffs do not allege the amounts or levels of these chemicals under the

9    conditions of use have actually caused harmful chemical exposures or have caused them a single

10   serious adverse health affect. *Id.* Thus, the issue is not whether there is causation sufficient to prove a

11   personal injury, but rather a plausible standard of disclosure that all manufacturers must conform to

12   regarding the disclosure of "potentially" harmful chemicals.

13          No standing exists for a claim based on mere "potential" injury. *See Birdsong v. Apple, Inc.*,

14   590 F.3d 955, 961 (9th Cir. 2009) (finding the plaintiffs lacked Article III standing because the

15   plaintiffs' allegation that the iPods had a *potential* risk of noise-induced hearing loss did not constitute

16   a distinct and palpable injury that is actual or imminent but rests on a hypothetical risk of hearing loss

17   which no plaintiff has claimed to suffer); *Herrington v. Johnson & Johnson Consumer Companies,*

18   *Inc.*, No. C 09-1597 CW, 2010 WL 3448531, at *3 (N.D. Cal. 2010) (dismissing complaint because

19   the plaintiffs failed to plead that the *amount* of the chemicals in the product caused harm or created a

20   credible or substantial risk of harm); *Butler v. Mattel, Inc.* No. CV-13-306-DSF, 2014 WL 764514

21   (C.D. Cal. Feb. 24, 2014) (finding no standing because the sleeper is only claimed to have a

22   "propensity" for mold growth and there is no evidence that mold growth is actual or imminent);

23   *Koronthaly v. L'Oreal USA, Inc.*, No. 07-CV-558 (DMC), 2008 WL 4723862, at *4 (D.N.J. Oct. 24,

24   2008) (finding the plaintiff failed to identify an injury-in-fact because she failed to provide any

25   authoritative evidence that the lead levels in the defendant's lipstick products constituted a dangerous

26   amount or is in some way prohibited, and her subjective allegation that the lipstick lost value because

27   of the presence of lead was not sufficient); *Crouch v. Johnson & Johnson Consumer Co., Inc.* No. 09-

28   CV-2905 (DMC), 2010 WL 1530152, at *4-5 (D.N.J. Apr. 15, 2010) (dismissing claims pertaining to

CALL&
JENSEN

1  allegedly toxic chemicals *that have not been banned by the FDA*, including 1,4–dioxane and

2  formaldehyde, because the potential injury is too remote, hypothetical and/or conjectural to establish

3  Article III injury).

4      Because Plaintiffs have not alleged any levels or that the amount of VOCs or formaldehyde

5  caused harm, they fail to allege injury-in-fact with respect to their omission claims, and these claims

6  must be dismissed.

7          3.      Plaintiffs Do Not Adequately Allege a Duty to Disclose Chemical Content

8      The TAC alters Plaintiffs' previous omission claim regarding a failure to disclose that Tempur

9  products "contain formaldehyde and other potentially harmful VOCs", (doc. 156, ¶¶ 23-35), to now

10  include allegations that there "is no known safe level of exposure to" various VOCs, including

11  formaldehyde, in a transparent effort to save their class action. *Id.* at ¶¶ 4, 50. But, this allegation fails

12  to state a plausible claim for relief because, as numerous courts have recognized, levels matter when

13  assessing harm and materiality. *See Herrington*, 2010 WL 3448531, at *8 (dismissing the UCL, FAL,

14  and CLRA omission claims based on the mere presence of 1,4-dioxane and formaldehyde because

15  there was no allegation of a material fact for which a reasonable person would attach importance);

16  *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1078-79 (N.D. Cal. 2012) (dismissing claim because

17  the complaint did not sufficiently allege materiality because it did not allege a level of hexavalent

18  chromium in Dexatrim that caused it to be unsafe or that the plaintiff saw or relied on any materials

19  before purchase which should have contained the disclosure); *see also Riva v. Pepsico, Inc.*, 82 F.

20  Supp. 3d 1045 (N.D. Cal. 2015) (finding plaintiffs failed to demonstrate what level of exposure in

21  humans increased the risk of cancer above a non-speculative, credible level.).[6]

22      Plaintiffs recognize this fact by asserting that "VOCs are chemical compounds that *can* be

23  toxic and even deadly, *in sufficient concentrations*." (Doc. 156, ¶ 45) (emphasis added). Yet, they fail

---

24  [6] *See also* Cal. Health & Saf. Code §§ 25249.10 (Proposition 65: allowing exemption to warning

25  requirement if exposure poses no significant risk); 71 FR 13472-01, March 15, 2006, Part 6, cmt. e,
   attached as Exhibit A to Defendants' Request for Judicial Notice ("RJN") filed contemporaneously with

26  this Motion (stating the potential health hazard associated with any chemical depends on both toxicity and
   exposure; "[a] label stating the names of any FR chemicals used in the mattress would thus not in fact

27  provide any useful information to the consumer because the mere presence of an FR chemical is not an
   indication that the mattress containing that chemical poses any health risk."). Thus, the Consumer Product
   Safety Commission expressly rejected the "one molecule is enough" theory when it issued its final rule.

28

TEMPUR-SEALY INTERNATIONAL, INC. AND TEMPUR-PEDIC NORTH AMERICA, LLC'S NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT UNDER F.R.C.P. 12(B)(1)
AND 12(B)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

to allege the *concentration* of VOCs found in their Tempur products. *Id.* at ¶ 89 (stating only that the products owned by the consumer representatives contain VOCs). To the extent Plaintiffs argue there is "no known safe level of exposure" – implying one molecule is enough – this theory would necessarily impose on every consumer product manufacturer, not to mention the natural world, an obligation to disclose the mere presence of any molecule contained in their product.[7] Such a disclosure defies common sense and Plaintiffs' claim must be dismissed. *See Iqbal*, 556 U.S. at 679 (court must draw on its judicial experience and *common sense* in determining whether a complaint states a plausible claim for relief); *see also Arroyo v. Pfizer, Inc.*, No. C-12-4030 EMC, 2013 WL 415607, at *4 (N.D. Cal. Jan. 31, 2013) (plaintiff did not plausibly state claim to relief because they did not allege any underlying factual premise justifying her theory of deception); *see also Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 691 (9th Cir. 2011) (affirming dismissal of omission claim based on failure to tell consumers that the gum only reduces stains *if* consumers continue to brush and floss regularly because only an *un*reasonable consumer would be deceived by this omission); *cf. Kwikset Corp. v. Superior Court*, 246 P.3d 877, 892 (Cal. 2011) (finding the "Made in the U.S.A" label material to a reasonable consumer because the California Legislature has, by statute, made clear that country of origin is the sort of consideration reasonable people can and do attach importance). Plaintiffs allege no set of facts that indicate whether the Tempur product contained "formaldehyde or other potentially harmful VOCs" was material to themselves or a reasonable consumer. There is no allegation that any plaintiff read the mattress tag before purchase or that they even knew what a VOC was. As a result, the omission claim based on failure to disclose chemical content must be dismissed.

### 4. Plaintiffs Do Not Adequately Allege a Duty to Disclose Customer Complaints

---

[7] Tort law recognizes the ubiquity of chemical exposures and has evolved liability standards that differentiate harmful from non-harmful exposures. "Increased risk alone is not actionable." *Industrial Union, supra.,* 2850-51; 2854-862; *Whiteley v. Philip Morris Inc.*, 117 Cal. App. 4th 635, 701 (Cal. 2004). Rather, the level of exposure, and the likelihood of harm, determine the viability of claims. *Potter v. Firestone,* 6 Cal. 4th 965, 989-90 (Cal. 1993). "[W]e recognize the indisputable fact that all of us are exposed I to carcinogens every day. As one commentator has observed, "it is difficult to go a week without news of a toxic exposure. Virtually everyone in society is conscious of the fact that the air they breathe …")*; see also Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 434 (1997) ("[C]ontacts, even extensive contacts, with serious carcinogens are common."); *Rainer v. Union Carbide Corp.,* 402 F.3d 608, 621 (6th Cir. 2005) (rejecting claims for sub-cellular injury because exposures to "toxic" chemicals are common place and liability could be limitless.);

Plaintiffs allege Tempur was under a duty to disclose customer complaints concerning allergic reactions and other symptoms which *certain customers* attributed to their Tempur product. (Doc. 156, ¶¶ 23-35). The legal authority supporting such a claim does not exist. In fact, the few cases that have addressed a similar theory, have rejected the existence of such a duty. *See Wright v. Bath & Body Works Direct, Inc.*, No. 12-00099-CV-W-DW, 2012 WL 12088132, at *3 (W.D. Mo. Oct. 17, 2012) (dismissing omission claim based on failure to disclose complaints and stating plaintiffs "seek[ ] to impose an impossible duty on vendors of commercial products, a duty that requires them to notify consumers if the product has received negative reviews or has been the subject of consumer complaints."); *Layton v. AAMCO Transmissions, Inc.*, 717 F. Supp. 2d 368, 372 (D. Md. 1989) (no common law duty by franchisor to reveal Attorney General investigations).

The duty Plaintiffs seek to impose would undoubtedly violate Defendants' First Amendment rights by compelling Defendants to speak regarding matters of disputed opinion. *See Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985). A government may require businesses to disclose accurate and uncontroversial facts without running afoul of the Constitution as long as the disclosures are reasonably related to a governmental interest. *CTIA – The Wireless Association, v. City and County of San Francisco, CA,* 827 F. Supp. 2d 1054 , 1059 (N.D. Cal. 2011), *affirmed  in part, reversed in part*, 494 Fed. App'x 252 (9th Cir. 2012). However, "[m]andatory disclosures by businesses of government opinions and viewpoints, by contrast, are subject to more exacting scrutiny." *Id.* In this case, Plaintiffs allege Defendants were required by law to disclose unsubstantiated customer complaints regarding those customers' *opinions.* (Doc. 156, ¶¶ 23-35). These complaints do not amount to uncontroverted facts and Plaintiffs have offered no support justifying mandating this disclosure. Nor, for that matter, is an allegation that a single molecule of a chemical constitutes a health or safety risk anything more than a highly controversial opinion. *See supra* Part B, 3.

        5.    <u>Plaintiffs Cannot State a Claim for Failure to Disclose Lack of Substantiation</u>

Plaintiffs allege that Tempur had a duty to disclose that it had no objective tests, analysis, research, or studies to support or validate its affirmative representations (Doc. 156, ¶¶ 4, 50). However,  it is well-settled that UCL and CLRA claims cannot be based on an alleged lack of

CALL&
JENSEN

substantiation because injury only exists if the claim is actually false or misleading. *Engel v. Novex Biotech LLC*, No. 14-cv-03457-MEJ, 2015 WL 846777, at *5 (N.D. Cal. Feb. 25, 2015) ("Courts have repeatedly held that actions based on such allegations are not actionable by private individuals."); *Bronson v. Johnson & Johnson*, No. 12-cv-04184-CRB, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013) (granting motion to dismiss claims under all three prongs of the UCL premised on lack of substantiation allegations because "[c]laims that rest on a lack of substantiation, instead of provable falsehoods, are not cognizable under the California consumer protection laws"); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1232 (N.D. Cal. 2012) ("Consumer claims for a lack of substantiation are not cognizable under California law."). Defendants have found no case in any other jurisdiction which allows a claim for lack of substantiation. As a result, Plaintiffs claims based upon Tempur's alleged failure to disclose that it did not have substantiation for the alleged misrepresentations must be dismissed.

6.     The Omission Claims in Counts I-III, VIII, XII and XXI Must Be Dismissed

### a.     *Counts I-III (California)*

The omission claims under Counts I-III must be dismissed because there are no facts alleged showing the levels of VOCs or formaldehyde caused the Plaintiffs harm under any objective test for materiality under the CLRA, UCL, or FAL. *See Herrington*, 2010 WL 3448531, at *8.

### b.     *Count VIII (Massachusetts)*

In Massachusetts, a duty to disclose exists where (i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction. *Schwartz v. Independent Appraisals*, *LLC*, No. 11-11051-RGS, 2011 WL 5593108 (D. Mass. Nov. 17, 2011) (citations omitted). Ms. White fails to allege any facts showing Tempur was under a duty to disclose. First, there is no allegation of a fiduciary relationship. Second, Ms. White's misrepresentation claim fails. *See supra* Part IV, A. Third, there is no allegation that chemical content or presence of customer complaints is basic to the mattress purchase transaction. As a result, any claim based on an omission in Count VIII must be dismissed.

### c.     *Count XII (New Jersey)*

CALL& JENSEN

*All* claims in Count XII should be dismissed, including the omission claims, because the New Jersey Product Liability Act subsumes Plaintiff's consumer protection claim. *See Crouch v. Johnson & Johnson Consumer Co., Inc.* No. 09-CV-2905 (DMC), 2010 WL 1530152, at *6-7 (D.N.J. Apr. 15, 2010) (dismissing complaint with prejudice because the plaintiff's consumer protection claim based on presence of 1,4 dioxane and formaldehyde in baby products was covered by the Product Liability Act). Further, even if the claims were not subsumed, the omission claims should be dismissed because under New Jersey law, "[w]hen there is no fiduciary duty or special relationship between parties, there is no affirmative duty to disclose." *Harvey v. Nissan North America, Inc.*, 2005 WL 1252341 (N.J. Super. App. Div. Apr. 29, 2015); *Szymczak v. Nissan North Am., Inc.*, 2011 WL 7095432 (S.D. N.Y. 2011).

### d.    *Count XIV (New Mexico)*

In New Mexico, the duty to disclose only arises if some *other* representation would be misleading without disclosure. *Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, 445 (Ct. App. N.M. 2007); *Smoot v. Physicians Life Insurance Co.*, 135 N.M. 265, 269 (N.M. Ct. App. 2003). Mr. Martinez fails to plead that he saw or heard any representation or that such representation caused him to purchase the Tempur product. (Doc. 156, ¶ 29). As a result, there was no representation given justifying further disclosure and any claim based on an omission must be dismissed.

### e.    *Count XXI (Wisconsin)*

Omission claims are not actionable under Wisconsin Statute Section 100.18. *Tietsworth v. Harley-Davidson, Inc.*, 270 Wis. 2d 146, 169-171 (Wis. 2004). As a result, any claims based on an omission must be dismissed.

### 7.    The State-Specific Unjust Enrichment Claims Must be Dismissed

Plaintiffs' unjust enrichment claims are based on Tempur's failure to disclose alleged "material information". (Doc. 156, Counts V, VII, IX, XI, XIII, XV, XVIII, XX, XXII). Because Plaintiffs omission claims fail, the unjust enrichment claims likewise must be dismissed. *See, e.g. Meaunrit v. The Pinnacle Foods Group, LLC*, No. C 09-04555 CW, 2010 WL 1838715, at *12 (N.D. Cal. May 5, 2010); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 933 (N.D. Cal. 2012).

### C.    **Plaintiffs' Nationwide Unjust Enrichment Claim Must be Dismissed**

### 1.    Nationwide Class Treatment is Improper Because of Conflict Between the Laws

CALL &
JENSEN

of the 50 States at Issue.

Under the Ninth Circuit's decision in *Mazza v. American Honda Motor Co.*, 666 F. 3d 581, 594 (9th Cir. 2012) each class members' unjust enrichment claim should be governed by the unjust enrichment law of the jurisdiction in which the transaction took place. As such, Plaintiffs cannot pursue claims under Kentucky law on behalf of customers who purchased their mattresses and pillows in another state.

### a. It is appropriate to conduct the choice-of-law analysis at the pleading stage.

Courts routinely dismiss class allegations where, as here, deficiencies are apparent from the face of the pleading. *See, e.g.,  Banks v. Nissan N. Am., Inc.*, No. C 11-2022 PJH, 2012 WL 8969415, at *1 (N.D. Cal. Mar. 20, 2012) (dismissing nationwide class allegations based upon application of *Mazza*); *Littlehale v. Hain Celestial Grp., Inc.*, No. C 11-6342 PJH, 2012 WL 5458400, at *2 (N.D. Cal. July 2, 2012) (dismissing plaintiff's UCL and CLRA claims under *Mazza* where alleged transactions occurred in Pennsylvania; holding that claims should be governed by Pennsylvania law); *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at *7 (N.D. Cal. Dec. 13, 2012) (dismissing plaintiff's class allegations to the extent asserted on behalf of a nationwide class because the underlying purchases would involve purchases made outside California by non-California residents); *Horvath v. LG Electronics Mobilecomm U.S.A., Inc.*, No. 3:11-CV-01576-H-RBB, 2012 WL 2861160, at *8-11 (S.D. Cal. Feb. 13, 2012) (applying *Mazza* choice-of-law analysis on motion to dismiss).

### b. California choice-of-law rules govern the viability of Plaintiffs' nationwide claim

Because the Court's jurisdiction in this action is based on diversity among the parties, the choice-of-law rules of California control. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001) ("A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law."). Under California law, the general rule is that each class member's unjust enrichment claim should be governed by the unjust enrichment law of the jurisdiction in which the transaction took place. *Mazza*, 666 F. 3d at 591-94 (vacating certification order and finding material differences between the consumer protection laws and *unjust enrichment laws* of California and the other states, including Kentucky).

CALL & JENSEN

Like *Mazza*, in this instance, California's choice-of-law rules require the application of the laws of the state in which the transaction occurred to each putative class member – not Kentucky's. Nothing in *Mazza* requires the Court await a motion for class certification to determine the governing law where the facts alleged in the TAC compel the application of the law of residency (or state of transaction) to each putative class members' claims. *See infra* Part C(1)(a).

### c. Under California's choice-of-law rules, the putative class members' claims are subject to the jurisdiction in which the alleged transactions took place

California applies the governmental interest analysis in resolving choice-of-law issues. *Mazza*, 666 F.3d at 590. To determine whether a foreign state's interest outweighs California's interest in applying its law, a court applies a three-step test:  First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied. *Id.* (quoting *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81-82 (Cal. 2010)).[8]

### i. Kentucky law is materially different from other states

In Kentucky, a claim for unjust enrichment requires proof of (1) a benefit conferred upon the defendant at the plaintiff's expense, (2) a resulting appreciation of the benefit by the defendant, and (3) an inequitable retention of the benefit without payment for its value. *Guarantee Electric v. Big Rivers Electric Corp.*, 669 F.Supp. 1371, 1381 (W.D. Ky. 1987). While this general definition is similar among the fifty states, the application of each states' unjust enrichment law has its own material differences. An appendix highlighting the variations in the unjust enrichment laws of the

---

[8] Although Kentucky applies a different conflict of law analysis, Kentucky courts have recognized that the consumer protection statute of Kentucky should not supplant the state consumer protection statutes of the states in which the transaction occurred. *See Corder v. Ford Motor Company*, 272 F.R.D. 205, 211-12 (W.D. Ky. 2011).

CALL & JENSEN

several states is filed with this motion. *See* App'x A. However, by example, in Kentucky, unjust enrichment is an equitable remedy, whereas in Illinois and West Virginia it is an action in law. *Id.* Additionally, the various jurisdictions measure unjust enrichment recovery under widely varying standards – examples of recoveries available under the different states' laws include the reasonable value of the goods, restitution, disgorgement, money paid by the plaintiff, the benefit conferred to the defendant, and the difference between the reasonable value of the goods and the benefit conferred. *Id.* Some states do not specify the misconduct necessary to proceed on an unjust enrichment claim, while others require the misconduct include dishonesty or fraud. *Id.* Some states do not recognize a stand alone cause of action for unjust enrichment (California) while others only allow it if there is no other adequate remedy at law. *Id.* And, for example, Alabama does not even allow for unjust enrichment claims to proceed as class actions. *Id.* Thus, the disparities in state law present irreconcilable material conflicts.

        ii.       *The other jurisdictions have significant interests in applying their laws to the claims of consumers in their state*

Because Kentucky's unjust enrichment law conflicts with the laws of other jurisdictions, the Court must "examine[ ] each jurisdiction's interest in the application of its own law[s] under the circumstances of the particular case to determine whether a true conflict exists." *Mazza*, 666 F.3d at 590 (quoting *McCann*, 48 Cal. 4th at 81-82). Here, as in *Mazza*, there is a true conflict between the interests of Kentucky and the other states in applying their respective laws to transactions entered into by the other states' residents within their borders. Although Kentucky has an interest in regulating the conduct of corporations headquartered within its borders, several courts – including the Ninth Circuit – recognize that the home states of the non-resident plaintiffs also have a profound interest in protecting their citizens from allegedly fraudulent conduct within their state, and in delineating the scope of recovery for their citizens.[9]  Not surprisingly, courts refuse to apply a single state's law based solely on the assertion (identical to the one plaintiffs make here) that the allegedly wrongful conduct "emanated" from the state where the defendant is headquartered. *See In re Ford Motor Co. Ignition*

---

[9] *See Zinser*, 253 F.3d at 1187 (9th Cir. 2001) (noting that every state has an interest in having its own laws applied to its residents), *as amended by* 273 F.3d 1266 (9th Cir. 2001); *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 314 (5th Cir. 2000) (same); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998) (same).

1    *Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997) (rejecting claim that "Michigan has the

2    greater interest in having its law applied because Ford's headquarters are located in Michigan" and

3    "any misrepresentations, statements or advertisements regarding the Ford vehicles originated in

4    Michigan"); *see also Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 312-13 (5ᵗʰ Cir. 2000); *Lyon v.*

5    *Caterpillar, Inc.*, 194 F.R.D. 206, 217 (E.D. Pa. 2000). To hold otherwise would strip all other states

6    of their ability to regulate the sale and marketing of products to their resident consumers any time a

7    Kentucky company sold or marketed the product in question. The interest each jurisdiction has derives

8    from its prerogative to decide the "extent to which [it] will tolerate a degree of lessened protection for

9    consumers to create a more favorable business climate for the companies that the state seeks to attract

10   to do business in the state." *Mazza*, 666 F.3d at 592.

        iii.    *Other jurisdictions' interests will be more impaired if Kentucky*
11              *law applies*

12       Finally, California's choice-of-law rules require the court to "carefully evaluate[] and

13   compare[] the nature and strength of the interest of each jurisdiction in the application of its own law

14   to determine which state's interest would be more impaired if its policy were subordinated to the

15   policy of the other state." *Id.* at 590 (quoting *McCann*, 48 Cal. 4ᵗʰ at 81-82).    The    court    must

16   apply "the law of the state whose interest would be more impaired if its law were not applied." *Id.* The

17   law of each consumer's home jurisdiction should apply because: (1)      each state's choice about

18   the standards that apply to the sale and marketing of products to its residents represents a policy

19   decision about the costs and benefits of particular regulatory schemes – interests that will be

20   compromised if Kentucky law is applied to all plaintiffs' claims;[10]  (2)"[e]ach plaintiff's home

21   jurisdiction has a stronger interest in deterring foreign corporations from . . . injuring its citizens and

22   ensuring . . . its citizens are compensated than [defendant's home state] does in deterring its corporate

23   citizens' wrongdoing[;]"[11] and (3)     even *assuming* all class members relied upon the alleged

24   misrepresentations, the reliance or receipt of such representations occurred in their home state, which

---

[10] *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) (it is "[a] basic principle of

25   federalism . . . that each State may make its own reasoned judgment about what conduct is permitted or
     proscribed within its borders").

26   [11] *In re Vioxx Prods. Liabl. Litig.*, 239 F.R.D. 450, 456 (E.D. La. 2006) (citations omitted); *Heindel v. Pfizer,
     Inc.*, 381 F. Supp. 2d 364, 378 (D.N.J. 2004) ("the deterrence of interest of New Jersey as the domicile and

27   locus of the defendant manufacturer must yield in this case to the compensation interest of Pennsylvania").

28

TEMPUR-SEALY INTERNATIONAL, INC. AND TEMPUR-PEDIC NORTH AMERICA, LLC'S NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT UNDER F.R.C.P. 12(B)(1)
AND 12(B)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

CALL &
JENSEN

1  under the Restatement (Second) of Conflicts § 148 alone justifies application of the laws of each class

2  members' home jurisdiction.[12]

3  "California recognizes that 'with respect to regulating or affecting conduct within its borders,

4  the place of the wrong has the predominant interest.'" *Mazza*, 666 F.3d at 593 (quoting *Hernandez v.*

5  *Burger*, 102 Cal. App. 3d 795, 902 (Cal. 1980)). California law defines the "place of the wrong" as the

6  state "where the last event necessary to make the actor liable occurred."  *Id*. Therefore, the state in

7  which each putative class member *purchased* their product has the stronger interest. *See also Corder*

8  *v. Ford Motor Company*, 272 F.R.D. 205, 211-12 (W.D. Ky. 2011) (finding the law of the state of

9  purchase should apply to each putative class member's claim). Plaintiffs even admit that a "substantial

10  part of the events or omissions giving rise to the Consumer Representatives' claims occurred in the

11  Northern District of California, (doc. 156, ¶ 41), as opposed to Kentucky. Under *Mazza,* the law of the

12  state law of purchase controls claims for unjust enrichment. Therefore, Plaintiffs cannot represent a

13  nationwide unjust enrichment class. That claim must be dismissed.

14  2.  Plaintiffs Lack Standing to Bring this Claim

15  Because standing is a jurisdictional issue, a district court properly addresses the "issue of

16  standing before it address[es] the issue of class certification." *Easter v. Am. W. Fin.*, 381 F.3d 948, 962

17  (9th Cir. 2004). In putative class actions, a named plaintiff must show he or she has standing;

18  allegations of injury to the class are insufficient. *Gratz v. Bollinger*, 539 U.S. 244, 289 (2003)

19  (instructing that "named plaintiffs who represent a class must allege and show that they *personally*

20  have been injured, not that injury has been suffered by other, unidentified members of the class to

21  which they belong and which they purport to represent") (emphasis added). Further, as a matter of case

22  management, the issue of standing should be decided at the pleadings stage as opposed to class

23  certification. *In re Carrier IQ, Inc., Consumer Privacy Litigation*, No. C-12-md-2330 EMC, 2015 WL

24  274054, at *13 (N.D. Cal. Jan. 21, 2015).

---

[12] Under Section 148 of the Restatement (Second) Conflict of Laws, courts consider "(a) the place . . . where the plaintiff acted in reliance upon the defendant's representation, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the . . . place of incorporation and place of business of the parties."  Where "any two of the above-mentioned contacts, *apart from the defendant's domicile, state of incorporation or place of business,* are located wholly in a single state, *this will usually be the state of the applicable law with respect to most issues." Id.* at cmt. J. (emphasis added).

CALL &
JENSEN

Plaintiffs are eighteen individuals who reside in ten different states (none of which are Kentucky). (Doc. 156, ¶¶ 23-35). Each of the Plaintiffs alleges unjust enrichment under the laws of his or her own state (excluding the Todds), but also purports to bring the same claim under the law of Kentucky on behalf of a nationwide unjust enrichment class. Courts in this district have made clear that "[w]here . . . a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal" at the pleading stage. *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) (dismissing class claims under all state laws where there was no representative plaintiff); *Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2014) (where California plaintiff asserted violations of the consumer protection laws of all fifty states, dismissing claims under the consumer protection laws of the other states); *In re Apple AT&T Antitrust Litig.*, 596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008) (dismissing class claims under consumer protection laws of forty-two other states and the District of Columbia, where named plaintiffs resided in California, New York, and Washington); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (dismissing class claims under the laws of twenty-four states in which plaintiffs did not reside and did not purchase the drugs at issue); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026-1027 (N.D. Cal. 2007) (dismissing class claims under the laws of seven states in which no named plaintiff resided). Therefore, as a matter of law, because none of the plaintiffs resides in or purchased their product in Kentucky, none of them has standing to allege a violation of Kentucky law. Count Twenty-Three must be dismissed.

## IV.    **CONCLUSION**

For the foregoing reasons, Tempur respectfully requests that the Court dismiss the Third Amended Complaint in its entirety with prejudice.

Dated:  September 16, 2015

CALL & JENSEN
A Professional Corporation
Mark L. Eisenhut
Samuel G. Brooks


By:*/s/ Samuel G. Brooks*
Samuel G. Brooks
Attorneys for Defendants Tempur-Sealy International, Inc., formerly known as Tempur-Pedic International, Inc. and Tempur-Pedic North America, LLC

CALL & JENSEN

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2015, I electronically filed the foregoing document described as **TEMPUR-SEALY INTERNATIONAL, INC. AND TEMPUR-PEDIC NORTH AMERICA, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT UNDER F.R.C.P. 12(B)(1) AND 12(B)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** with the Clerk of the Court using the CM/ECF System which will send notification of such filing via electronic mail to all counsel of record.

/s/     _Samuel G. Brooks_

TEMPUR-SEALY INTERNATIONAL, INC. AND TEMPUR-PEDIC NORTH AMERICA, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT UNDER F.R.C.P. 12(B)(1) AND 12(B)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES