UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVIN TODD, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>TEMPUR-SEALY INTERNATIONAL, INC., et al.,<br><br>    Defendants. | Case No. 13-cv-04984-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: ECF No. 160 |

This putative class action alleges violations of California's Consumer Legal Remedies Act, California's Unfair Competition Law, California's False Advertising Law, and eleven states' consumer protection and unjust enrichment laws. Defendants move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiffs' third amended complaint ("TAC"). The Court will grant the motion in part and deny it in part.

**I.  BACKGROUND**

Plaintiffs bring this action on their own behalf and on behalf of a putative class of purchasers of Tempur products against Tempur-Sealy International, Inc. and Tempur-Pedic North America, LLC (collectively "Defendants") for claims arising out of Defendants' marketing and sale of mattresses, pillows, and other bedding products containing Tempur material.[1] Specifically, Plaintiffs allege that Defendants' representations of their Tempur products as "formaldehyde free," "free of harmful VOCs," "allergen and dustmite resistant," "hypoallergenic," and with a "completely harmless" odor, are false and misleading. TAC ¶¶ 3(h), 3(m), 3(n), 4. Plaintiffs allege that Defendants knew their products did not conform to these representations because

---

[1] Currently, the Plaintiffs include: Alvin and Melody Todd, Brian and Sara Stone, Robbie Simmons, Thomas Comiskey, Toni Kibbee, Tina White, Johnny Martinez, Keith Hawkins, Patricia and Alan Kaufman, Jerry and Diane Kucharski, Julie Davidoff, Ericka and Kurt Anderson, and Tracey Palmer.

internal testing revealed that Defendants' products off-gassed many VOCs, including formaldehyde, which can cause allergic reactions. Id. ¶ 4. Further, Plaintiffs claim that Defendants were aware of customer complaints about the odor and correlating physical symptoms such as headache, nausea, asthma, eye and throat irritation, and allergic reactions. Id.

Plaintiffs bring twenty-three claims under the laws of eleven states: (1) violations of California's Unfair Competition Law; (2) violations of California's False Advertising Law; (3) violations of California's Consumer Legal Remedies Act; (4) violations of Illinois's Consumer Fraud and Deceptive Practices Act; (5) unjust enrichment under Illinois common law; (6) violation of Maryland's Consumer Protection Act; (7) unjust enrichment under Maryland common law; (8) violations of Massachusetts's Consumer Protection Act; (9) unjust enrichment under Massachusetts common law; (10) violations of Missouri's Merchandising Practices Act; (11) unjust enrichment under Missouri common law; (12) violation of New Jersey's Consumer Fraud Act; (13) unjust enrichment under New Jersey common law; (14) violations of New Mexico's Unfair Practices Act; (15) unjust enrichment under New Mexico common law; (16) violations of New York's Deceptive Acts and Practices law; (17) violation of New York's False Advertising Law; (18) unjust enrichment under New York common law; (19) violation of Washington's Consumer Protection Act; (20) unjust enrichment under Washington common law; (21) violation of Wisconsin's Deceptive Trade Practices Act; (22) unjust enrichment under Wisconsin common law; and (23) unjust enrichment under Kentucky common law.

Plaintiffs filed this case in 2013, and discovery has been ongoing for more than a year. In 2014, this Court denied a motion to dismiss Plaintiffs' first amended complaint. ECF No. 50. Plaintiffs filed a motion for class certification on July 16 and August 7, 2015. See ECF Nos. 133, 145 (respectively). When Plaintiffs filed a motion to amend their complaint in August 2015, the parties submitted a new schedule, placing any responsive motions to Plaintiffs' TAC before the issue of class certification. See ECF No. 154. The Court approved this revised schedule, ECF No. 157, and Plaintiffs filed the TAC on August 27, 2015. Defendants filed the current motion to dismiss on September 16, 2015. ECF No. 160. Plaintiffs filed their response brief on September 30, 2015. ECF No. 167.

## II. JURISDICTION

The Court has jurisdiction over this case as a class action in which a member of the class of plaintiffs is a citizen of a state different from any defendant and the matter in controversy exceeds the sum of $5 million, exclusive of interests and costs.  28 U.S.C. § 1332(d).

Defendants challenge the Court's jurisdiction under Rule 12(b)(1), arguing that Plaintiffs lack standing.  ECF No. 160 at 11.  The Court addresses this argument below.

## III. LEGAL STANDARD

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[2]  Id. at 678.

Furthermore, because Plaintiffs' claims sound in fraud, they must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  This rule requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  A plaintiff satisfies her pleading burden under Rule 9(b) by alleging the "who, what, where, when, and how" of the charged misconduct. Cooper v. Picket, 137 F.3d 616, 627 (9th Cir. 1997).

## IV. DISCUSSION

Defendants move to dismiss Plaintiffs' claims on several grounds.  Defendants contend

---

[2] Generally, on a motion to dismiss, the Court considers only the complaint.  See Iqbal, 556 U.S. at 678.  However, a court may take judicial notice of certain information under Federal Rule of Evidence 201, and consider this information with the complaint. Mir v. Little Co. of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988).  Defendants have requested judicial notice of a final rule from the Consumer Product Safety Commission regarding the standard for the flammability of mattress sets.  ECF No. 160-2.  This case is premised on misleading or fraudulent advertising, however, and Defendants do not endeavor to explain why the Commission's rule is relevant.  Accordingly, the Court declines Defendants' request for judicial notice.

3

that Plaintiffs: (1) have not met the heightened pleading requirements for fraud and their misrepresentation claims cannot be saved by the Tobacco II exception; (2) have not adequately alleged facts for class members who purchased Tempur products in 2006; (3) have not adequately alleged an injury sufficient to support standing for misrepresentation by omission; (4) have not adequately alleged a duty to disclose; (5) cannot sustain claims under state unjust enrichment laws for misrepresentation by omission; and (6) cannot sustain a nationwide class claim for unjust enrichment under Kentucky state law because of conflicts with other state laws.  ECF No. 160.

The Court addresses each of these arguments in turn.

### A. Pleading Standard for Fraud and Tobacco II Exception

Defendants move to dismiss all of Plaintiffs' claims for misrepresentation because they contend that Plaintiffs have not satisfied Rule 9(b)'s pleading requirements.  Id. at 11.  Plaintiffs' TAC alleges misrepresentation arising under the state consumer protection statutes of ten states.  TAC ¶¶ 97-397.

This Court has already addressed whether Plaintiffs' complaint provides sufficient factual allegations for claims sounding in fraud.  See ECF No. 50 at 7-8.  Plaintiffs continue to plausibly allege that: (1) since at least 2007 and continuing through at least August 7, 2013, Defendants have misrepresented the contents and quality of their Tempur products, claiming such products were "formaldehyde free," "hypoallergenic," "safe," "free of harmful VOCs," "allergen resistant," and "safe and healthy" on their website, in their retail in-store brochures, and in other marketing materials; (2) that Defendants knew these assertions were untrue based on their own internal testing and consumer complaints; (3) that Defendants continued making the representations and omitted any facts suggesting otherwise; (4) that such representations were likely to deceive a reasonable consumer because Plaintiffs did not have access to information regarding the chemical makeup of Defendants' products; (5) that Plaintiffs relied on such misrepresentations and omissions in purchasing Tempur products; and (6) that Defendants' misrepresentations and omissions caused injury to Plaintiffs in that Plaintiffs would not have purchased, or would have purchased at a significantly reduced price, the Tempur products had Plaintiffs known their true contents.  TAC ¶¶ 10, 23-35, 51-54.

4

As stated in the Court's prior order denying Defendants' motion to dismiss, Plaintiffs sufficiently plead the "who" required by Rule (9)(b). Where there are multiple defendants involved in allegedly fraudulent acts, the plaintiffs must "identify the role of each defendant in the alleged fraudulent scheme." Fields v. Wise Media, LLC, No. C-12-05160-WHA, 2013 WL 3187414, at *4 (N.D. Cal. June 21, 2013) (citing Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007)). Plaintiffs have properly alleged that both Defendants jointly engage in marketing the Tempur products at issue in this case. See TAC ¶¶ 36-38.

Defendants argue that Plaintiffs' complaint does not allege whether any Plaintiff actually saw or heard the specific misrepresentations and relied on those misrepresentations in their purchase. ECF No. 160 at 12-13. Defendants further argue that Plaintiffs cannot rely on the Tobacco II exception previously discussed by the Court, which allows a party to rely on "an extensive long term advertising campaign" for the alleged misrepresentations, rather than requiring plaintiffs to point to specific advertisements they remember. ECF No. 50 at 9-10.

These arguments are unavailing. Plaintiffs identify in the TAC the specific marketing phrases they saw and relied on, provide copies of the various advertisements themselves, and include a spreadsheet detailing which advertisements were seen by each Plaintiff. See TAC ¶¶ 23-35; ECF No. 165 Ex. H-1, Part 1-10. These pleadings are sufficient to meet the requirements imposed by Rule 9(b), and so there is no need to resolve the Tobacco II issue. Therefore, Defendants' motion to dismiss on these grounds is denied.

**B.      2006 Purchases**

Defendants argue that Plaintiffs' claims on behalf of Class Members who purchased Tempur products in 2006 should be dismissed because the earliest purchase date Plaintiffs allege is 2007. See TAC ¶ 52-54, 95. Because Plaintiffs do not allege that misrepresentations were made in 2006, the TAC does not support any claims based on purchases before 2007. Defendants' motion to dismiss claims based on pre-2007 sales is granted without leave to amend.

**C.      Standing**

Defendants argue that Plaintiffs lack standing for claims of misrepresentation by omission because Plaintiffs allege no injury. ECF No. 160 at 17. The Court has previously addressed and

rejected this argument. See ECF No. 50 at 16. It explained that "Plaintiffs have alleged that the chemicals contained in Tempur-pedic's products can and do cause physical harm and that the products have injured some customers." Id.; See TAC ¶ 56. Further, the Court highlighted the Ninth Circuit's recognition that "where plaintiffs have 'spent money that, absent defendants' actions, they would not have spent' there is 'a quintessential injury-in-fact' that establishes standing under Article III's injury requirement." ECF No. 50 at 16 (quoting Maya v. Centex Corp., 658 F.3d 1060, 1069 (9th Cir. 2011)). Plaintiffs here have alleged both that some customers have been harmed by the Tempur product and that they would not have purchased the products had they known of the products' chemical contents. Defendants' motion to dismiss for lack of standing is denied.

### D. Duty to Disclose and Omission Claims

Because the Plaintiffs' affirmative misrepresentation claims are properly alleged, they need not rely on misrepresentation by omission. Nevertheless, the Court considers Defendants' arguments against Plaintiffs' misrepresentation by omission claims. Defendants argue that Plaintiffs' claims based on misrepresentation by omission should be dismissed because Plaintiffs do not adequately allege a duty to disclose. ECF No. 160 at 10-12. Defendants claim that they have no duty to disclose the chemical content in their Tempur products because Plaintiffs allege no set of facts indicating whether the presence of formaldehyde or other potentially harmful VOC was material to themselves or a reasonable consumer. Id.

This is inaccurate. Plaintiffs repeatedly allege that the presence of VOCs, formaldehyde, and other possible allergens was material, because they would not have purchased the Tempur product, or would have paid less for them, had they known the true contents of the product. See TAC ¶¶ 23-35, 107.

Defendants also specifically argue that the following state law claims should be dismissed because Plaintiffs' pleadings of misrepresentation by omission are insufficient:

#### 1. Counts I-III (California)

Defendants argue that omission claims under these counts must be dismissed because Plaintiffs have not alleged facts showing the levels of VOCs or formaldehyde that have caused

harm to Plaintiffs. ECF No. 160 at 13. As previously stated in the section on standing, Plaintiffs have adequately pleaded an injury-in-fact caused by the alleged inaccurate or misleading information provided by Defendants. The Court has previously addressed the standard to establish a duty to disclose under California law and found that Plaintiffs meet that standard. See ECF No. 50 at 6. The pleadings for these counts have not changed. Defendant's motion to dismiss Counts I-III is denied.

### 2. Count VII (Massachusetts)

Defendants argue that Massachusetts plaintiff Ms. White has failed to allege facts to support a duty to disclose under Massachusetts law. Massachusetts follows the Restatement (Second) of Torts, which states that a duty to disclose exists where "'(i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to or goes to the essence of, the transaction.'" Knapp v. Neptune Towers Associates, 72 Mass. App. Ct. 502, 507 (2008) (quoting Stolzoff v. Waste Sys. Intl., Inc., 58 Mass. App. Ct. 747, 763 (2003)). In this case, Plaintiffs allege that Defendants were aware of information that was contrary to the assertions in their advertising, and that their advertising was misleading without this information. See TAC ¶¶ 8-10. This is sufficient to allege a duty to disclose under the second prong as defined by the Restatement. For this reason, Defendants' motion to dismiss Count VII is denied.

### 3. Count XII (New Jersey)

Defendants argue that Count XII should be dismissed because it is subsumed under New Jersey's Product Liability Act. ECF No. 160 at 23. They further argue that the claim should be dismissed because there is no duty to disclose in New Jersey absent a fiduciary duty or special relationship. Id.

The Supreme Court of New Jersey has stated that "the [Product Liability Act] is paramount [over the Consumer Fraud Act] when the underlying claim is one of harm caused by a product." Sinclair v. Merck, 195 N.J. 51, 66 (2008). Although Plaintiffs allege many examples of harms that result from the presence of chemicals in Defendants' products, TAC ¶¶ 57-87, the underlying

7

claim is not based on product liability. Rather, it is a consumer fraud case based on inaccurate or misleading advertising. See TAC ¶¶ 90-93. Additionally, the New Jersey Consumer Fraud Act recognizes both affirmative misrepresentations and omissions. See Talalai v. Cooper Tire & Rubber Co., 360 N.J. Super. 547, 561-62 (2001). Defendants' motion to dismiss Count XII is denied.

### 4. Count XIV (New Mexico)

New Mexico's Unfair Practices Act "'imposes a duty to disclose material facts reasonably necessary to prevent any statements from being misleading.'" Grassie v. Roswell Hosp. Corp., 258 P.3d 1075, 1094-95 (N.M. Ct. App. 2010) (quoting Lohman v. Daimler-Chrysler Corp., 166 P.3d 1091, ¶ 40 (N.M. Ct. App. 2007)). Defendants argue that the duty to disclose "only arises if some *other* representation would be misleading without disclosure." ECF No. 160 at 23. They assert that New Mexico plaintiff Mr. Martinez could not have been misled because he failed to allege that he saw or heard any representations. Id.

Contrary to Defendants' assertion, Mr. Martinez specifically alleges that Defendants advertised their product as "allergen resistant" and "hypoallergenic" and points out the advertisements he saw. TAC ¶¶ 283-85, ECF No. 165 Ex. H-1, Part 1. Mr. Martinez further alleges that Defendants concealed contrary information that would have corrected the misleading advertising. Id. These pleadings are sufficient under New Mexico law. Defendants' motion to dismiss Count XIV is denied.

### 5. Count XXI (Wisconsin)

Defendants correctly state that omission claims are not actionable under Wisconsin's Deceptive Trade Practices Act. See Tietsworth v. Harley-Davidson, Inc., 2004 WI 32, 40. However, Plaintiffs do not rely on an omission claim to fulfill the pleading requirements under this statute, only on an affirmative misrepresentation. See ECF No. 167 at 25-26. Defendants' motion to dismiss Count XXI is denied.

### E. State Unjust Enrichment Claims

Defendants argue that all unjust enrichment claims[3] must be dismissed because Plaintiffs' omission claims fail. ECF No. 160 at 23. Because neither Plaintiffs' affirmative misrepresentation nor their omission claims fail, Defendants' motion to dismiss these counts is denied.

### F. Kentucky Unjust Enrichment Claim and Conflict of Laws

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 590 (9th Cir. 2012). Therefore, California's choice-of-law rules apply. Plaintiffs allege that Kentucky law should apply to a nationwide class claim for unjust enrichment. They allege that Defendants' principal place of business is in Kentucky and that Kentucky has a significant aggregation of contacts to the unjust enrichment claims because the misleading marketing statements originated there. TAC ¶ 36. Defendants argue that Plaintiffs' nationwide unjust enrichment claim under Kentucky law must be dismissed because Kentucky law would not apply under California's choice-of-law provisions. ECF No. 160 at 24. Plaintiffs respond that a choice-of-law analysis is premature at the pleading stage. ECF No. 167 at 27.

Many courts reserve choice-of-law analysis and dismissal of nationwide class claims for the class certification stage. See e.g., Brazil v. Dole Food Co., No. 12-CV-01831-LHK, 2013 WL 5312418 at *11 (N.D. Cal. Sept. 23, 2013). They emphasize that dismissal at the pleading stage would be premature prior to discovery and the development of a factual record. See e.g., Dean v. Colgate-Palmolive Co., No. EDCV 15–0107 JGB, 2015 WL 3999313 at *11 (C.D. Cal. June 17, 2015) (holding that a choice-of-law analysis "is not appropriate at this stage of litigation" but rather should occur "after the parties have engaged in discovery"); Frenzel v. AliphCom, 76 F. Supp. 3d 999, 1007 (N.D. Cal. 2014) (stating that "choice of law analysis is a fact-specific inquiry which requires a more developed factual record than is generally available on a motion to dismiss"). Other courts have been willing to dismiss nationwide class claims at the pleading stage.

---

[3] The state unjust enrichment claims can be found in Counts V, VII, IX, XI, XIII, XV, XVIII, XX, XXII, and XXIII.

9

See e.g., Brandon Banks v. Nissan North Am., Inc., No. C 11–2022 PJH, 2012 WL 8969415 at *1 (N.D. Cal. Mar. 20, 2012); Koehler v. Litehouse, Inc., No. CV 12–04055 SI, 2012 WL 6217635 at *7 (N.D. Cal. Dec. 13, 2012). Here, in light of the advanced stage of litigation and the extensive discovery that has already been completed, the Court concludes it is appropriate to conduct a choice-of-law analysis.

Under California law, there is a three-step governmental interest test to determine which state's laws apply. The test states:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinate to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied. Mazza, 666 F.3d at 590 (citing McCann v. Foster Wheeler LLC, 48 Cal. 4th 68, 81-82 (2010)).

### 1. Differences in Laws of Affected Jurisdictions

"The fact that two or more states are involved does not itself indicate that there is a conflict of law problem. A problem only arises if differences in state law are material, that is, if they make a difference in this litigation." Id. (citation omitted). Defendants have supplied the Court with a table detailing the differences in unjust enrichment claims for all 50 states. ECF No. 160-3, 160 at 25-28. The Court concludes that the differences in law between the states involved in this litigation are material. Accord., Mazza, 666 F.3d at 591 (holding "the elements necessary to establish a claim for unjust enrichment also vary materially from state to state."). Thus, the Court moves to the test's second step.

### 2. Interests of Foreign Jurisdictions

"It is a principle of federalism that each state may make its own reasoned judgment about what conduct is permitted or proscribed within its borders. Every state has an interest in having its law applied to its resident claimants." Id. at 591-92. The issues presented in this case are similar

to those in Mazza.  Both cases involved misleading advertising and unjust enrichment, and in both cases a party attempted to apply a single state's law to a nationwide class.  Under step two of the test, the Mazza court concluded that "[e]ach of our states also has an interest in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses. These interests are squarely implicated in this case."  Id. at 592-93.  In line with Mazza, the Court finds here that the foreign states have significant interests in applying their own laws to Plaintiffs' claims.

### 3. Impairment of State's Interest

"California's governmental interest test is designed to accommodate conflicting state policies, as a problem of allocating domains of law-making power in multi-state contexts . . ."  Id. at 593.  The test is not intended to weigh conflicting state interests by evaluating which law has the "better" or "worthier" social policy, but rather "recognizes the importance of our most basic concepts of federalism, emphasizing 'the appropriate scope of conflicting state policies,' not evaluating their underlying wisdom."  Id. (quoting McCann, 48 Cal. 4th at 97.).

Under California law, "the place of the wrong has the predominant interest."  Id. "California considers the 'place of the wrong' to be the state where the last event necessary to make the actor liable occurred."  Id. (quoting McCann, 48 Cal. 4th at 94 n.12).  For a claim of unjust enrichment, the last event necessary for liability appears to be acceptance of a benefit that is inequitable to retain.[4]  In this case, the final act is the alleged acceptance of money for the purchase of a Tempur product, and so each class member's unjust enrichment claim should be governed by the unjust enrichment laws of the jurisdiction in which the money was accepted.  As a result, Defendants' motion to dismiss the nationwide Kentucky unjust enrichment claim is

---

[4] Many states' laws contain this type of language for an unjust enrichment claim.  See e.g., Brandt v. Ward Partners, 242 F.3d 6,16 (1st Cir. 2001) (finding that the third element of unjust enrichment under Massachusetts law is retention of a benefit that makes the retention unjust); Berry & Gould v. Berry, 360 Md. 142, 151 (Md. 2000) (holding that the third element of unjust enrichment under Maryland law is acceptance of a benefit under circumstances that would make it inequitable to keep); Credit Inst. v. Veterinary Nutrition Corp., 133 N.M. 248, 253 (N.M. Ct. App. 2002) (holding that under New Mexico law, the final element of an unjust enrichment claim is benefitting in a way that makes retention of that benefit unjust).

granted without leave to amend.[5]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is hereby granted in part and denied in part.

IT IS SO ORDERED.

Dated: January 28, 2016

                                          JON S. TIGAR
                                   United States District Judge

---

[5] Given this conclusion, the Court does not consider Defendants' alternative argument that Plaintiffs lack standing to allege a violation of Kentucky law.