UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVIN TODD, et al., | Case No. 13-cv-04984-JST |
| Plaintiffs, | **ORDER DENYING MOTION FOR CLASS CERTIFICATION** |
| v. | |
| TEMPUR-SEALY INTERNATIONAL, INC., et al., | Re: ECF Nos. 145, 227, 228 |
| Defendants. | |

Before the Court is Plaintiffs' Motion for Class Certification, ECF No. 145.  The Court will deny the motion.

## I.      BACKGROUND

Plaintiffs[1] bring this action on their own behalf and on behalf of a putative class of purchasers of Tempur products against Tempur-Sealy International, Inc. and Tempur-Pedic North America, LLC (collectively "Defendants") for claims arising out of Defendants' marketing and sale of mattresses, pillows, and other bedding products containing Tempur material.  Specifically, Plaintiffs allege that Defendants' representations of their Tempur products as "formaldehyde free," "free of harmful VOCs," "allergen and dustmite resistant," "hypoallergenic," and with a "completely harmless" odor, are false and misleading.  ECF No. 156 ("TAC") ¶¶ 3(h), 3(m), 3(n), 4.  Plaintiffs allege that Defendants knew their products did not conform to these representations because internal testing revealed that Defendants' products off-gassed many VOCs, including formaldehyde, which can cause allergic reactions.  Id. ¶ 4. Further, Plaintiffs claim that

---

[1] Currently, the Plaintiffs include: Alvin and Melody Todd, Brian and Sara Stone, Robbie Simmons, Thomas Comiskey, Toni Kibbee, Tina White, Johnny Martinez, Keith Hawkins, Patricia and Alan Kaufman, Jerry and Diane Kucharski, Julie Davidoff, Ericka and Kurt Anderson, and Tracey Palmer.

United States District Court
Northern District of California

Defendants were aware of customer complaints about the odor and corresponding physical symptoms such as headache, nausea, asthma, eye and throat irritation, and allergic reactions.  Id.

Plaintiffs' operative Third Amended Complaint sought to bring twenty-three different claims under the laws of eleven states, including false misrepresentation and unjust enrichment claims under the consumer protection laws of ten states: California, Illinois, Maryland, Massachusetts, Missouri, New Jersey, New Mexico, New York, Washington, and Wisconsin.  Id. In addition, the TAC originally brought claims for a nationwide unjust enrichment class under Kentucky law.  Id.  However, the Court granted Defendants' motion to dismiss Plaintiffs' nationwide unjust enrichment claims without leave to amend.  ECF No. 183.

Plaintiffs' Motion for Class Certification was initially filed on August 7, 2015.  ECF No. 145.  Before briefing could commence on the motion, Plaintiffs also moved for leave to file a Third Amended Complaint.  ECF No. 149.  On August 25, 2015, the Court granted leave to amend, ECF No. 155, and subsequently stayed briefing on the Motion for Class Certification until responsive motions to the Third Amended Complaint were resolved.  ECF No. 157.  Once briefing resumed, Plaintiffs filed a supplemental brief in support of their Motion for Class Certification on March 10, 2016, ECF No. 196, Defendants filed their response on April 22, 2016, ECF No. 220, and Plaintiffs filed their reply on July 18, 2016, ECF No. 269.

Defendants have also filed Motions to Strike the opinions of two of Plaintiffs' experts, Dr. Michael DiBartolomeis and Dr. Susan Kegley.  ECF Nos. 227, 228.  These motions are addressed in a separate order.

## II.    JURISDICTION

Pursuant to the Class Action Fairness Act, the Court has jurisdiction over this case, as a class action in which a member of the class of plaintiffs is a citizen of a state different from any defendant, there are more than 100 class members nationwide, and the matter in controversy exceeds the sum of $5 million, exclusive of interest and costs.  28 U.S.C. § 1332(d).  Defendants do not contest jurisdiction.

## III.    LEGAL STANDARD

Class certification under Rule 23 is a two-step process.  First, a plaintiff must demonstrate

United States District Court
Northern District of California

that the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) are met: "One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a). "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." Wang v. Chinese Daily News, Inc., 709 F.3d 829, 833 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351, 131 S. Ct. 2541, 2551 (2011)).

Second, a plaintiff must also establish that one of the bases for certification in Rule 23(b) is met. Here, Plaintiffs invoke Rule 23(b)(3), which requires that Plaintiffs show both "predominance" and "superiority": that the presence of "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Pro. 23(b)(3).

The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rules 23(a) and at least one of the three requirements under Rule 23(b) are met. See Dukes, 131 S. Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."). In ruling on class certification, courts do not consider the merits of the plaintiffs' claims. Keilholtz v. Lennox Hearth Products Inc., 268 F.R.D. 330, 335 (N.D. Cal. 2010). Courts "must take the substantive allegations of the complaint as true" but "need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action." Id. (citations omitted).

In addition, "[w]hile it is not an enumerated requirement of Rule 23, courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" Vietnam Veterans of Am. v. C.I.A., 288 F.R.D.

1   192, 211 (N.D. Cal. 2012) (quoting <u>DeBremaecker v. Short</u>, 433 F.2d 733, 734 (5th Cir. 1970)).

2   **IV.     ANALYSIS**

3         Plaintiffs seek certification for the following class:

4         All persons who purchased, not for resale, a Tempur-Pedic mattress or pillow in the
          States of California, Illinois, Maryland, Massachusetts, Missouri, New Jersey, New
5         Mexico, New York, Wisconsin and Washington from January 1, 2006, through
          December 31, 2013.

6
          Excluded from the Class are: (i) Defendants, any entity in which Defendants have a
7         controlling interest or which has a controlling interest in Defendants, and
          Defendants' legal representatives, predecessors, successors, and assigns; (ii)
8         governmental entities; (iii) Defendants' employees, officers, directors, agents and
          representatives and their direct family members; (iv) the Judge and staff to whom
9         this case is assigned and any member of the Judge's immediate family; (v) all those
          who validly and timely opt-out of the certified class; and (vi) claims for physical
10        injuries.

11  ECF No. 145 at 10.[2]

12        Defendants challenge certification on several grounds.  They allege that the claims of

13  named Plaintiffs are not typical of the claims of the class; that Plaintiffs' state-law claims require

14  proof of individual reliance; and that there is insufficient evidence that class members were

15  exposed to a long-term, nationwide advertising campaign such that a presumption of class-wide

16  reliance would be appropriate.

17        The Court examines the relevant Rule 23 elements in turn.

18        **A.     Numerosity**

19        Plaintiffs contend that the proposed class will likely number "in the thousands, or hundreds

20  of thousands."  ECF No. 145 at 24.  Defendants do not dispute this prong.  The Court concludes

21  that Plaintiffs meet the numerosity requirement.

22        **B.     Typicality and Adequacy**

23        Typicality ensures that "the interests of the named representatives align with the interests

24  of the class."  <u>Wolin v. Jaguar Land Rover N. Am. LLC</u>, 617 F.3d 1168, 1175 (9th Cir. 2010).

25  "The test of typicality 'is whether other members have the same or similar injury, whether the

26  action is based on conduct which is not unique to the named plaintiffs, and whether other class

27

28  [2] Page references are to the internal page numbers affixed by the Court's electronic docketing
    system.

United States District Court
Northern District of California

4

members have been injured by the same course of conduct.'" Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985). "[T]ypicality is primarily an inquiry into alignment of interest rather than an investigation into the forms of relief for which the named plaintiff has prayed." Gaudin v. Saxon Mortgage Servs., Inc., 297 F.R.D. 417, 426 (N.D. Cal. 2013).

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000). "The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 626, n. 20 (1997) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158, n. 13 (1982)). Among other functions, these requirements serve as ways to determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 158, n. 13.

Plaintiffs contend that the typicality requirement is met because the named Plaintiffs, like the rest of the class, were exposed to Defendants' marketing regarding the safety of their mattresses. Plaintiffs contend that "Defendants' tightly controlled and scripted [m]arketing [c]ampaign contained materially false affirmative representations through a wide variety of media outlets . . ., sales training programs and customer service scripts," and that all named Plaintiffs were exposed to that marketing campaign. ECF No. 145 at 13, 21. "Given that the focus of the asserted claims is the conduct of the Defendants, including the material omissions, the Plaintiffs' claims are not based on any conduct that is unique to them. Each of the named Plaintiffs have affirmatively stated that they were exposed to the Defendants' [m]arketing [c]ampaign and that had they known the truth, they would not have purchased the Tempur-Pedic product or would not have paid the price that they paid." Id. at 21. Plaintiffs acknowledge that the "named Plaintiffs or Class Members here may not have seen every aspect of the Defendants' [m]arketing [c]ampaign or . . . have relied upon any or all of the Defendants' affirmative misrepresentations," but argue that

1   this fact is irrelevant.  Id. at 20.  Regarding adequacy, Plaintiffs argue that because counsel for the

2   named Plaintiffs have "substantial experience in matters of this type and have no conflicts of

3   interest," the Plaintiffs are adequate representatives for the class.  Id. at 24.

4        In response, Defendants first contend that Plaintiffs are neither typical nor adequate

5   because their statements in deposition contradict their claims in prior declarations.  Specifically,

6   Defendants contend that in 2015, each of the named Plaintiffs submitted a declaration stating they

7   saw or remember seeing certain marketing materials, but that in depositions taken in 2016,

8   Plaintiffs' testimony demonstrated that "these declarations were not entirely truthful, and in fact

9   many of the Plaintiffs never saw the materials they claimed led to their decision to purchase."

10  ECF No. 220 at 19.  Defendants contend that the declarations must therefore be struck under the

11  Ninth Circuit's "sham affidavit" rule and further that Plaintiffs are not adequate representatives

12  and are not typical.  Id. at 19, 50-51.

13       The sham affidavit rule does not apply here.  That rule states the principle "that a party

14  cannot create a genuine issue of fact sufficient to survive summary judgment simply by

15  contradicting his or her own previous sworn statement."  Cleveland v. Policy Mgmt. Sys. Corp.,

16  526 U.S. 795, 806 (1999); Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th Cir. 2009)

17  ("[A]s we have explained, if a party who has been examined at length on deposition could raise an

18  issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would

19  greatly diminish the utility of summary judgment as a procedure for screening out sham issues of

20  fact.").  This is a motion for class certification, not summary judgment.  Inconsistent testimony by

21  a party might be relevant to the question of credibility, but it is not grounds for automatically

22  striking the testimony.

23       Defendants' second and more substantive contention is that while Plaintiffs previously

24  stated that they remember seeing the various marketing materials at issue in this case, their

25  deposition testimony in fact indicates they do not have that recollection. [3]  See ECF No. 220 at 21.

26

27  [3] It is worth noting that Plaintiffs offer virtually no argument on this issue within the bounds of
    their reply brief itself, but instead provide it in a sixty-five page "appendix."  ECF No. 269-1.

28  That appendix is presented as a chart consisting of three columns: quotations from Defendants'
    response brief, citations to relevant deposition testimony, and Plaintiffs' own argumentative

United States District Court
Northern District of California

United States District Court
Northern District of California

This, too, is unpersuasive.  While the lack of recollection might somewhat undermine the credibility of a plaintiff's testimony, Defendants do not explain how it renders any of the Plaintiffs atypical.  In fact, Defendants do not even make their arguments with regard to a particular Plaintiff.  They merely mash together deposition references and argue that the Plaintiffs' testimony considered as a whole is suspect.  See ECF No. 220 at 21-23, 24 ("The inferences that can be drawn from this testimony are not good.").  What this has to do with typicality, Defendants do not say.

Defendants' remaining arguments are equally unpersuasive.  They contend that the named Plaintiffs are not typical because Plaintiffs only bought certain models of Defendants' products, but Plaintiffs seek "to certify a single class of purchasers of 30 separate and distinct mattress models."  ECF No. 220 at 52.  Typicality in this context does not require that named plaintiffs and the class have purchased identical products.  In the Ninth Circuit, "[t]he test of typicality 'is whether other members have the same *or similar* injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D.Cal.1985)) (emphasis added).  Thus, in Lilly v. Jamba Juice Co., 308 F.R.D. 231 (N.D. Cal. 2014), the Court certified a class of "smoothie kit" purchasers, even though the named plaintiffs had not purchased all of the various smoothie kits offered by the defendant, because the alleged misrepresentation was the same as to each kit.  Id. at 240.  Similarly here, Plaintiffs' theory of the case is that Defendants falsely represented that all of

---

responses.  It is difficult to view this appendix as anything other than an unsubtle vehicle for deliberately circumventing the page limits imposed on the parties' briefing.

Defendants have embraced the same strategy.  As discussed below, Defendants argue that several states' consumer protection laws require a showing of individualized reliance and/or causation of harm, but rather than using up space in their opposition brief, they simply refer the Court to a thirty-three page "appendix" that is not contained within the four corners of their opposition brief.  That appendix, though presented as a chart of "variations" in state law, in fact includes numerous legal assertions based upon Defendants' own interpretations of case law.  ECF No. 220-2.  Moreover, Defendants appear to have intentionally violated the Court's formatting requirements, pursuant to Civil L.R. 3-4(c)(2) for minimum spacing between lines of text, in order to pack even more text into an already over-length brief.

These stratagems violate the Court's rules and diminish the effectiveness of the parties' advocacy.

their products are free of harmful chemicals when in fact, none of them are.  Slight differences between the mattresses purchased by class members are not disqualifying, or even relevant.

Next, Defendants contend that Mr. and Mrs. Todd and Mrs. Simmons are subject to the unique defenses of prior knowledge, and that Mrs. White is subject to a unique defense because she accepted an offer for a replacement mattress from Defendants.  ECF No. 220 at 53.  Where a named plaintiff is subject to unique defenses, she may not be typical of the class.  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  Defenses unique to a class representative counsel against class certification, however, only where they "threaten to become the focus of the litigation."  Id. (internal quotation marks and citation omitted).   Even assuming the merits of Defendants' proposed defenses, none of them meets this standard.

Finally, Defendants contend Plaintiffs are not adequate because they engage in "claim splitting," or "elect[ing] to pursue only select claims rather than all meaningful claims, thus putting at risk the valid claims of absent class members."  Amaro v. Gerawan Farming, Inc., No. 114CV00147DADSAB, 2016 WL 3924400, at *14 (E.D. Cal. May 20, 2016).  Here, Defendants contend that Plaintiffs, by declining to pursue claims for personal injuries caused by Defendants' products, are inadequately representing those class members who may have potentially valid personal injury actions.  ECF No. 220 at 50.  A strategic decision to pursue those claims a plaintiff believes to be most viable does not render her inadequate as a class representative.  See In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig., 270 F.R.D. 521, 532 (N.D. Cal. 2010) ("Plaintiffs are permitted to press a theory of contract liability that affords them the best chance of certification and of success on behalf of the class."); In re Universal Serv. Fund Tel. Billing Practices Litig., 219 F.R.D. 661, 669 (D. Kan. 2004) ("This is not a case where the class representatives are pursuing relatively insignificant claims while jeopardizing the ability of class members to pursue far more substantial, meaningful claims. Rather, here the named plaintiffs simply decided to pursue certain claims while abandoning a fraud claim that probably was not certifiable.").[4]  Here, the Court cannot conclude that Plaintiffs' decision to pursue these particular

---

[4] But see Krueger v. Wyeth, Inc., No. 03CV2496 JLS (AJB), 2008 WL 481956, at *3 (S.D. Cal. Feb. 19, 2008) (denying certification where named plaintiff did not bring personal injury claims

United States District Court
Northern District of California

1    claims renders them inadequate representatives.

2        For these reasons, the Court concludes that the typicality and adequacy prongs have been

3    met.

4        **C.    Commonality and Predominance**

5        As regards commonality, "for purposes of Rule 23(a)(2) [e]ven a single [common]

6    question will do." Dukes, 131 S. Ct. at 2556 (internal citation omitted).  Where questions

7    common to class members present significant issues that can be resolved in a single adjudication

8    "there is clear justification for handling the dispute on a representative rather than on an individual

9    basis." Amchem, 521 U.S. at  623 (internal quotation marks and citation omitted).  However, the

10   common contention "must be of such a nature that it is capable of classwide resolution—which

11   means that determination of its truth or falsity will resolve an issue that is central to the validity of

12   each one of the claims in one stroke."  Dukes, 131 S. Ct. at 2551.

13       In seeking to certify a Rule 23(b)(3) class, Plaintiff must further show that these common

14   questions "predominate over any questions affecting only individual members."  "Considering

15   whether questions of law or fact common to class members predominate begins . . . with the

16   elements of the underlying causes of action." Erica P. John Fund, Inc. v. Halliburton Co., 563

17   U.S. 804, 809 (2011).  In determining whether common questions predominate, the Court

18   identifies the substantive issues related to the plaintiff's claims (both the causes of action and

19   affirmative defenses), and then considers the proof necessary to establish each element of the

20   claim or defense, and how these issues would be tried. See Schwarzer, et al., Cal. Prac. Guide Fed.

21   Civ. Pro. Before Trial Ch. 10–C § 10:412.  "When common questions present a significant aspect

22   of the case and they can be resolved for all members of the class in a single adjudication, there is

23   clear justification for handling the dispute on a representative rather than an individual basis."

24   Hanlon, 150 F.3d at 1022 (citing Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal

25   Practice & Procedure § 1778 (2d ed.1986)).  The predominance inquiry requires that the plaintiffs

26   demonstrate that common questions predominate as to each cause of action for which the plaintiffs

27

28   on behalf of the class).

United States District Court
Northern District of California

9

1    seek class certification.  Amchem, 521 U.S. at 620.

2           Plaintiffs argue that the dominant issues in this case can be resolved through common

3    proof.  These include that "the affirmative misrepresentations made by Tempur-Pedic about its

4    products are false," that "the Defendants knew those representations were false," and that

5    "Tempur-Pedic failed to inform consumers" regarding the alleged harmful chemicals contained in

6    its products.  ECF No. 145 at 27.  Plaintiffs contend that the elements of materiality of, and

7    reliance on, the alleged misrepresentations will be resolved through common proof because all of

8    the states involved in the case require a showing that a "*reasonable, objective* person would have

9    considered the Defendants' representations and/or omissions material."  ECF No. 145 at 32

10   (emphasis in original).  Plaintiffs therefore argue that the inquiry will focus on Defendants'

11   conduct, not on individual Plaintiffs or class members, and will be litigated primarily on a class-

12   wide level.  See id. at 31-33.  Similarly, they argue that their unjust enrichment claims "require

13   resolution of substantially the same question – whether the Defendants received some benefit from

14   the Plaintiffs and Class Members that it would be inequitable to allow them to keep in light of

15   their conduct."  Id. at 47.  Finally, Plaintiffs contend that damages will be provable on a class-wide

16   level through the use of conjoint analysis, as explained by their expert, Dr. Peter Rossi.  Id. at 53.

17   That analysis, which Plaintiffs argue is widely accepted by district courts, will enable Plaintiffs to

18   measure "the price premium attributable to the Defendants' affirmative misrepresentations and

19   omissions," thus calculating the difference between the product as represented and as received.  Id.

20   at 51-54.

21          Defendants offer two main arguments in response: (1) that Plaintiffs must prove

22   individualized reliance, making class treatment inappropriate; and (2) that even if proof of

23   individualized reliance is unnecessary, Plaintiffs have not demonstrated that the class was exposed

24   to the challenged marketing materials.  While the former argument is a misstatement of relevant

25   law and therefore unpersuasive, the latter argument is accurate.  The Court concludes that

26   Plaintiffs have failed to show that class members as a group were exposed to the alleged

27   misrepresentations, and accordingly cannot demonstrate commonality or predominance.

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### 1.   State Law Regarding Individualized Reliance

Defendants first contend that four states – California, Maryland, Washington, and Wisconsin – require proof of individualized reliance rather than a general showing that an objective consumer would be misled.  ECF No. 220 at 27.  In their brief, they neither offer analysis on this point nor engage with Plaintiffs' cited authority, but instead direct the Court to an appendix, which lists cases that Defendants assert support their arguments.[5]

Having reviewed the competing law offered by both parties, the Court concludes Defendants have misrepresented the law of all four states.  With regard to California, this Court has previously held that for false misrepresentation claims, "an inference of common reliance arises if representations are material, and materiality is judged by an objective standard rather than any understandings specific to the individual consumer."  Lilly v. Jamba Juice Co., 308 F.R.D. 231, 242 (N.D. Cal. 2014).  The Ninth Circuit has reached the same conclusion.  See, e.g., Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1020 (9th Cir. 2011) (The change in California law "decidedly did not change the California rule that relief under the UCL is available without individualized proof of deception, reliance and injury." (citation omitted)) abrogated on other grounds by Comcast Corp. v. Behrend, 133 S. Ct. 1426 (2013).  Defendants' appendix cites to three cases: Bruton v. Gerber Products Co., No. 12-CV-02412-LHK, 2014 WL 172111, at *6 (N.D. Cal. Jan. 15, 2014); In re Actimmune Mktg. Litig., No. C 08-CV-2376 MHP, 2010 WL 3463491, at *8 (N.D. Cal. Sept. 1, 2010); and Philips v. Ford Motor Co., No. 14-CV-02989-LHK, 2015 WL 4111448, at *13 (N.D. Cal. July 7, 2015).  None of these cases stands for the proposition that reliance must be proven for each class member as opposed to by reference to a reasonable or objective consumer.  See, e.g., Bruton, 2014 WL 172111 at *7 ("A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence the plaintiff *in all reasonable probability* would not have engaged in the injury-producing conduct." (emphasis added) (citation omitted)).

Regarding Maryland, Defendants' appendix cites to one case, Philip Morris, Inc. v.

---

[5] See supra fn. 3.

Angeletti, 752 A.2d 200, 235 (Md. 2000), and assert that the holding of that case is that

"[i]ndividual reliance is likely required."  ECF No. 220-2 at 7.  But the portion of the case cited by

Defendants discusses claims for common law fraud and negligent misrepresentation, rather than

claims under the Maryland Consumer Protection Act.  Moreover, the Angeletti court does not

conclude that individualized proof of reliance is generally required, but rather that it was necessary

based on the facts of the case before it, which involved class members who purchased a variety of

tobacco products over an unspecified period of time.  See Angeletti, 752 A.2d at 206, 235.

Finally, Defendants ignore Luskin's, Inc. v. Consumer Prot. Div., 726 A.2d 702, 713 (1999),

which held that under the Maryland Consumer Protection Act, "it is the probability that the

deceptive practice affected the customer's  decision that makes the misrepresentation material."

Defendants' support for their Washington argument is even weaker.  Their appendix cites

to two cases, only one of which is relevant, Picket v. Holland America Line-Westours, Inc.

("Picket II"), 145 Wash. 2d 178 (Wash. 2001).  And, contrary to Defendants' position here, what

the court actually said in Pickett II was that "[w]hether individual reliance is required for causation

under the CPA is a 'debatable question without a clear answer under Washington law.'"  145

Wash. 2d at 197.  Two later Washington cases resolved that question in the negative.  Indoor

Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc., 170 P.3d 10, 22 (Wash.

2007); Schnall v. AT & T Wireless Servs., Inc., 259 P.3d 129, 137 (Wash. 2011).  Thus, in

Schnall, 259 P.3d at 137, the Washington Supreme Court wrote:

> The trial court found that each plaintiff would have to show individual reliance,
> making class certification inappropriate.  [Citation omitted].  Unfortunately, the
> trial court did not have the benefit of our recent opinion in Indoor
> Billboard/Washington, Inc.[,] . . .  where we firmly rejected the principle that
> reliance is necessarily an element of the plaintiff's case.

Finally, with regard to Wisconsin, Defendants' appendix cites to a case from a federal

district court, Valente v. Sofamor, S.N.C., 48 F. Supp. 2d 862, 874 (E.D. Wis. 1999).  Contrary to

Defendants' appendix's assertion that the case held that "[i]ndividual reliance [is] required," ECF

No. 220-2 at 19, it makes no mention of individualized reliance in its discussion of Wisconsin's

United States District Court
Northern District of California

1    Deceptive Trade Practices Act.[6]

2         In sum, the Court concludes that, under relevant state law, materiality and reliance on

3    alleged misrepresentations can be proven by reference to a reasonable consumer, and therefore are

4    amenable to class-wide proof.  On this issue, common issues predominate.[7]

5             **2.**      **Class-Wide Exposure**

6         While Plaintiffs need not prove individualized reliance, this alone does not entitle them to

7    class certification.  Separate from reliance, Plaintiffs must also prove that the class members were

8    *exposed* to the alleged misrepresentations in the first place.  See Berger v. Home Depot USA, Inc.,

9    741 F.3d 1061, 1068 (9th Cir. 2014) (holding that "the question of likely deception does not

10   automatically translate into a class-wide question," and that the party seeking certification must

11   show that the class was "actually exposed to the business practices at issue"); Stearns v.

12   Ticketmaster Corp., 655 F.3d at 1020 (9th Cir. 2011) ("We do not, of course, suggest that

13   predominance would be shown in every California UCL case.  For example, it might well be that

14   there was no cohesion among the members because they were exposed to quite disparate

15   information from various representatives of the defendant.").  Put another way, it means little if an

16   objective, reasonable consumer would have found the alleged misrepresentations material if none

17   of the class members saw, read, or were otherwise exposed to those misrepresentations.

18        Plaintiffs do not define or limit their proposed class to include only consumers who saw

19   the alleged misrepresentations, and they do not offer direct evidence that most or all class

20   members were exposed to the challenged advertising materials.  Rather, Plaintiffs' argument

21   appears to be that class-wide exposure can be inferred from the "massive advertising and brand-

22   building program" and a "tightly controlled" marketing campaign conducted by Defendants.  ECF

23

---

24   [6] As for the remaining states, Defendants acknowledge that individualized reliance is not
25   necessary, but contend that "causation of harm acts as its surrogate, and is still a highly
     individualized inquiry."  ECF No. 220 at 27.  Defendants offer no authority in support of this
26   position.

27   [7] Defendants also contend that even if individualized reliance is not a necessary element, Plaintiffs
     have failed to demonstrate materiality to a "reasonable" consumer.  ECF No. 220 at 35, 37.  This
28   argument regards the merits of Plaintiffs' class-wide argument, not whether the question could be
     resolved through common issues of fact.

United States District Court
Northern District of California

1    No. 269; see also Transcript of August 18, 2016 Oral Argument ("Transcript"), ECF No. 282, at

2    42:16-19 (describing the campaign as providing a "uniform message").  As set forth below, this

3    argument is unpersuasive.

4                            **a.       Relevant Case Law**

5            Plaintiffs contend that the "Tempur-Pedic brand was supported by a massive advertising

6    and brand-building program that drives consumer awareness." ECF No. 269 at 11.  They argue

7    that Defendants "tightly controlled their [m]arketing [c]ampaign, undertaking to train and provide

8    product training guides to each of their authorized retailers."  ECF No. 145 at 21.  Plaintiffs argue

9    it "is therefore quite reasonable to expect that most members of the proposed class were exposed

10   to the campaign."  ECF No. 269 at 11.

11           Plaintiffs cite no legal authority for this argument in their briefs, but it resembles

12   arguments and holdings in other cases that rely on the In re Tobacco II Cases, 46 Cal. 4th 298

13   (2009).[8]  In those cases, the California Supreme Court "found that reliance on misrepresentations

14   about the health hazards of cigarette smoking could be presumed because there was evidence of a

15   'decades-long campaign of the tobacco industry to conceal the health risks of its product while

16   minimizing the growing consensus regarding the link between cigarette smoking and lung cancer

17   and, simultaneously, engaging in saturation advertising targeting adolescents, the age group from

18   which new smokers must come.'"  Id. (quoting In re Tobacco II, 46 Cal. 4th at 327).  Because of

19   the length and widespread nature of the tobacco advertising campaign, the court relieved plaintiffs

20   of showing that class members had been exposed to any particular advertisement.

21           Tobacco II's holding has subsequently been applied to other cases in which class members

22   were exposed to lengthy, widespread advertising campaigns.  A recent decision in this district,

23   Ehret v. Uber Techs., Inc., 148 F. Supp. 3d 884, 895 (N.D. Cal. 2015) noted that "in numerous

24   cases involving claims of false[ ]advertising, class-wide exposure has been inferred because the

25   alleged misrepresentation is on the packaging of the item being sold.  In such a case, given the

26

27   ───────────────
     [8] While this approach is generally used in connection with California state law claims, courts have
28   extended it to similar claims in other states as well.  See, e.g., Makaeff v. Trump Univ., LLC, No.
     3:10-CV-0940-GPC-WVG, 2014 WL 688164, at *14 (S.D. Cal. Feb. 21, 2014)

1    inherently high likelihood that in the process of buying the product, the consumer would have seen

2    the misleading statement on the product and thus been exposed to it, exposure on a classwide basis

3    may be deemed sufficient." Id.  Alternatively, "class-wide exposure can be inferred outside of

4    product labeling cases where there is an extensive advertising campaign." Id.

5          Tobacco II, however, did not create a free pass on the question of class-wide exposure.

6    Many cases have rejected an inference of class-wide exposure on stronger evidence than Plaintiffs

7    present here.  In Mazza v. Am. Honda Motor Co., 666 F.3d 581, 595 (9th Cir. 2012), the Ninth

8    Circuit recognized the validity of Tobacco II but declined to apply that approach to the case before

9    it, which involved marketing by Honda in brochures, television ads, dealership kiosks, and other

10   contexts regarding their "Collision Mitigation Braking System."  The Ninth Circuit held that

11   "Tobacco II's holding was in the context of a decades-long tobacco advertising campaign where

12   there was little doubt that almost every class member had been exposed to defendants' misleading

13   statements, and defendants were not just denying the truth but representing the opposite." Id. at

14   596 (citation omitted).  In Mazza, by contrast, Honda's "product brochures and TV commercials

15   fall short of the extensive and long-term fraudulent advertising campaign at issue in Tobacco II."

16   Id. (citation omitted).

17         As the Ninth Circuit subsequently explained, Mazza limited the extent of Tobacco II based

18   on "two crucial facts" regarding the advertising campaign at issue.  Berger v. Home Depot USA,

19   Inc., 741 F.3d 1061, 1068 (9th Cir. 2014).  First, it referred to the "breadth" of the advertising, or

20   the fact that Honda's advertising was not sufficiently "extensive and longterm." Id. (citing to

21   Mazza, 666 F.3d at 596).  Second, it also referred to the "content," of the advertising, or the fact

22   that the advertising materials "do not deny" that limitations to the challenged brake system exist.

23   Id.

24         Subsequent district court cases have examined efforts at class certification using the lens

25   provided by Mazza and Berger.  In In re Clorox Consumer Litigation, 301 F.R.D. 436, 439 (N.D.

26   Cal. 2014), a district court denied class certification of claims based on alleged misrepresentations

27   in a marketing campaign that a brand of cat litter was more effective at eliminating odors.  The

28   court noted that Clorox ran four TV commercials for only sixteen months, and that an independent

United States District Court
Northern District of California

15

analysis commissioned by Clorox indicated not enough people were seeing the advertisements. Id. at 444.  It also noted that while the plaintiffs pointed to additional statements contained on packaging, many of these statements were not misleading, as they stated merely that the cat litter contained carbon or that carbon eliminates odor, not that the cat litter eliminates odor "better" than other brands.  Id.

In In re NJOY, Inc. Consumer Class Action Litig., 120 F. Supp. 3d 1050, 1064 (C.D. Cal. 2015), the district court denied class certification of claims that NJOY falsely misrepresented that their e-cigarette products were safer than traditional cigarettes.  The district court found that the content of the marketing "was uniform" and that the challenged "safety messages" were contained in "virtually every advertisement NJOY ran."  Id. at 1105-06.  However, it also concluded that the breadth of the advertising at issue was not sufficient to warrant class certification.  It noted that NJOY's print advertising campaign lasted less than a year, and its radio and television commercials ran for less time than that.  Id. at 1106-08.

In Ehret, the district court considered putative class claims that Uber made misrepresentations when it charged its customers a 20% "gratuity" even though it kept a substantial portion of the fee for itself.  148 F. Supp. 3d at 887.  The court concluded that the misrepresentations were "uniform and consistent," rejecting Uber's various arguments that it sometimes portrayed the fee as a service charge in addition to a gratuity.  Id. at 899-900.  But it also concluded that the marketing campaign was not sufficiently extensive, as "there is insufficient evidence that all customers during the class period were likely exposed to the misrepresentation."  Id. at 900.  The court noted that the misrepresentations occurred only on Uber's website and blog posts, not on Uber's app interface itself.  Moreover, even the relevant statements on the website or blog were mixed with a number of other sections "covering a whole range of topics," therefore decreasing the likelihood that all visitors to the website or blog saw the alleged misrepresentations. Id. at 901.

Finally, in Makaeff v. Trump University, LLC, No. 3:10-CV-0940-GPC-WVG, 2014 WL 688164, at *1 (S.D. Cal. Feb. 21, 2014), the district court granted class certification of claims that Trump University made material misrepresentations in order to persuade consumers to buy

United States District Court
Northern District of California

United States District Court
Northern District of California

successively more expensive "real estate investing seminars." Id. at 2. The plaintiffs referred to print advertisements with quotes from Donald Trump such as "I can turn anyone into a successful real estate investor, including you," and alleged that individuals who paid for various tiers of seminars were promised a certain amount of education and training when, in fact, the seminars were merely aimed at encouraging them to buy the next tier of seminars. Id. For example, individuals "who paid for the Fulfillment Seminar were promised a three-day seminar and one full year of expert interactive support," but actually received "a three day infomercial accompanied by a phone number," at which Trump University representatives "pressured customers to raise their credit card limits to purchase Trump Elite Programs." Id. at 4. Trump University also "utilized various forms of recognizable signs to appear to be an accredited academic institution" such as an official school crest, when in fact it was never accredited and was asked "by the New York Board of Education to cease any claim to being a 'university.'" Id. at 5. In examining the issue of predominance, the district court found that while the advertising at issue "w[as] not part of a massive advertising campaign," it was "uniform, highly orchestrated, concentrated, and focused on its intended audience." Id. at 13. It also noted that the nature of the product and "the effect of this campaign" made it "highly likely" that anyone who paid for and attended the "real estate investment seminars" likely did so based on Trump University's targeted campaign. Id.; see also In re NJOY, 120 F. Supp. 3d at 1109 ("[The nature of the product—real estate investment seminars—made it likely that those who actually purchased the seminars saw the advertisements." (citing Makaeff, 2014 WL 688164, at *13).

### b. Application

The Court previously dealt with this issue in its April 16, 2014 Order denying Defendants' Motion to Dismiss. In that motion, Defendants contended that Plaintiffs had not pleaded a plausible claim because "they ha[d] not alleged that each of them viewed the advertisements at issue." ECF No. 50 at 9. Though the Court concluded it was "a close call," it held, based on the Tobacco II case, that Plaintiffs' claims were plausible because they had pleaded that there was an extensive and long-term marketing campaign through a variety of media. Id. at 10.

The question presented here is different. The inquiry is no longer whether Plaintiffs have

merely pleaded a plausible claim under Rule 12(b)(6), but rather whether they have shown the existence of such a campaign.  Having now reviewed the complete body of evidence offered by Plaintiffs in support of class certification, the Court finds they have failed to demonstrate the marketing at issue was sufficiently extensive such that one can infer exposure on a class-wide basis.

As support for their claim that Defendants used a "tightly controlled and scripted [m]arketing [c]ampaign," Plaintiffs assert that "Tempur-Pedic produced more than 300 million pages of 'targeted content' (direct mail) each year, and generated more than 25 million page views per year on its website."  ECF No. 145 at 13.  They also state that "Tempur-Pedic's marketing efforts were supported by a call center," id. at 13-14, and provide numerous exhibits to the Court of responses by customer service representatives to customer complaints.  They add that "Tempur-Pedic trained or assisted in the training of its retailers ('Tempur University'); prepared Product Training Guides throughout the Class Period to which retailers and their own direct sales employees were to refer when responding to consumers' questions; and provided templates and preapproved ad layouts for its retailers."  Id. at 13-14.  They allege that the effect of this campaign was that "Tempur-Pedic drove over 4.3 billion consumer impressions per month, with 2.8 billion of those generated from television, 600 million from radio, and 80 million from newspapers."  Id. at 13.

This evidence falls far short of demonstrating the "extensive" and "longstanding" marketing campaigns needed to justify class certification.  Plaintiffs' most-touted statistic – that Defendants' advertising generated "4.3 billion consumer impressions per month" – in actuality offers little evidentiary support.  The figure appears to be taken from a single slide from a 2007 PowerPoint presentation intended for investors, see ECF No. 145 at 13 n.1; see also ECF No. 194-3 at 17, but neither the presentation nor Plaintiffs explain (i) what the definition of an "impression" is; (ii) how "impressions" are measured; or (iii) whether the period of time that these "impressions" were calculated overlaps with the applicable time period for the class.  There is no evidence concerning which representations, if any, led to these "consumer impressions."  Nor do Plaintiffs apportion out which of these impressions were based on the alleged health-related

18

misrepresentations, as opposed to the myriad of other claims that Defendants made in advertising their products – such as those related to comfort, durability, support, customer recommendations, and so forth.  Finally, Plaintiffs do not attempt to estimate how many of these "impressions" eventually led to purchases of a Tempur-Pedic product, such that they could be relevant to a class that consists only of customers who ultimately bought one of Defendants' products.

The same problems apply to Plaintiffs' contention that "300 million pages" of "targeted content (direct mail)" was produced by Defendants.  Plaintiffs do not define "targeted content," describe what kinds of statements were contained in the mailings or who received them, or offer any reason to assume that consumers actually viewed any of the content or were likely to have done so.  Likewise, while Plaintiffs cite to "25 million page views per year" on Defendants' website, they decline to specify how many of those views were of webpages that included alleged misrepresentations.   At oral argument, Defendants represented that just 0.018 percent of visitors to Tempur-Pedic's website viewed pages with the challenged representations.  Transcript at 25:7; see also Ehret, 148 F. Supp. 3d at 901 (rejecting similar contentions regarding alleged misrepresentations on a company webpage and blog because many other topics were also discussed on those websites).  Plaintiffs do not challenge this figure.

Plaintiffs also rely unpersuasively on representations allegedly made to customers during customer service calls.  To begin, it is unclear whether these calls or other responses to Tempur-Sealy customers are relevant, given that they likely occurred after a customer had already purchased a Tempur-Sealy product.  More importantly, Plaintiffs once again fail to specify what portion of these customer service calls were related to complaints or statements regarding chemicals or off-gassed emissions, as opposed to other concerns or issues.  Defendants stated at oral argument that the portion of callers who complained about odors or gasses was approximately half of one percent, Transcript at 29:22, and Plaintiffs did not rebut that figure.  Finally, Plaintiffs have provided no evidence of a uniform response to customer complaints about gasses or chemicals.

Beyond this catalog of problems with Plaintiffs' evidence, there are two broader flaws with their theory regarding classwide exposure.  First, as Defendants note, it cannot be assumed that

United States District Court
Northern District of California

1   mattress customers buy a product based on any particular marketing representation that they

2   viewed or heard prior to their purchase.  Indeed, many mattress consumers – including,

3   potentially, some of the named Plaintiffs – likely entered a store with no specific idea of the brand

4   or product they wish to buy, and make their purchase based simply on their impressions while

5   shopping.  See, e.g., Transcript at 31:21-23 ("Another woman was at the state fair, and there was a

6   tent there, and she lay down on the mattress and decided [to] buy Tempur-Pedic.").  This contrasts

7   with cases challenging advertising directly on the product's packaging, such that one could infer

8   anyone who bought that product also viewed the package, see Ehret, 148 F. Supp. 3d at 895, or the

9   real estate "seminars" at issue in Makaeff v. Trump University, 2014 WL 688164, at *13, which

10  were unique enough that the court could infer that participants were present only because they had

11  been recruited through Trump University's advertising.

12          Second, Defendants note that the vast majority of their products – more than 90% – are

13  sold by "over 10,000" third-party retailers.  ECF No. 220 at 33.  Thus, even if Plaintiffs were able

14  to show that Defendants disseminated a uniform marketing campaign based around the alleged

15  misrepresentations, they would need to demonstrate that third party retailers actually *implemented*

16  that campaign by showing Defendants' materials to class members.  On this crucial point,

17  however, Plaintiffs provide virtually no evidence.  They assert that Defendants "trained or assisted

18  in the training of its retailers" and "provided templates and preapproved layouts for its retailers,"

19  but they do not attempt to show how many retailers received this assistance from Defendants, or

20  whether any retailers made use of Defendants' training, templates, or layouts.  ECF No. 145 at 13-

21  14.  Indeed, it appears that retailers were under no obligation to use any materials provided by

22  Defendants, and Defendants have offered declarations from two independent retailers stating that

23  they "do not follow manufacturers' suggestions on how to sell mattresses," as doing so would be

24  counterproductive to distinguishing themselves from their competitors who sell the same products.

25  ECF No. 221-6 at ¶¶ 5, 14; see also ECF No. 221-7 at ¶¶ 4-5 ("No mattress retailer I've worked

26  for adopted any manufacturer's suggestions for selling the manufacturer's mattresses.  Each

27  retailer has several manufacturers' products in each store.").

28          In sum, though Plaintiffs contend that Defendants ran a uniform, extensive marketing

1  campaign that communicated the alleged misrepresentations to the class, they offer little more than

2  conclusory statements to show that class members received them.  Plaintiffs are able to prove

3  neither that Defendants' marketing was sufficiently extensive to reach most of the class, nor that it

4  was sufficiently uniform in its use of the alleged misrepresentations.  Plaintiffs have not put forth

5  evidence that would allow an inference of class-wide reliance.

6            **3.**       **Omissions and Unjust Enrichment**

7        Plaintiffs premise their misrepresentation by omission and unjust enrichment claims on the

8  same alleged marketing campaign, and make the same arguments in relation to class certification.

9  See ECF No. 145 at 14 ("Thus, this is both a material affirmative representations and material

10  omissions case."); id. at 47 ("As for the claims advanced by the Plaintiffs for unjust enrichment,

11  those claims require resolution of substantially the same question.").  Accordingly, for the reasons

12  outlined in the previous section, the Court concludes that common issues of fact do not

13  predominate for these claims.

14        For all of these reasons, the Court concludes Plaintiffs have not demonstrated they meet

15  the predominance requirement under Rule 23(b)(3).  Even acknowledging Plaintiffs' argument

16  that they would not need to prove individualized reliance, and even assuming, for the sake of

17  argument, that Plaintiffs' theory for proving class-wide damages was sufficient, the need to

18  individually decide whether class members had been exposed to the alleged misrepresentations

19  would dominate over other commonly shared issues of law or fact.  In light of this conclusion, the

20  Court does not reach the parties' disputes regarding Plaintiffs' argument for a conjoint analysis of

21  damages.

22            **D.**      **Ascertainability**

23        "A class definition is sufficient if the description of the class is definite enough so that it is

24  administratively feasible for the court to ascertain whether an individual is a member."  Lilly v.

25  Jamba Juice Co., 308 F.R.D. 231, 237 (N.D. Cal. 2014).  Plaintiffs contend that all class members,

26  like the Plaintiffs themselves, purchased one of Defendants' products, and that these purchases can

27  be verified through retail records. ECF No. 145 at 18.

28        Defendants argue that Plaintiffs "attempt to gloss over ascertainability issues" by including

1    consumers of any Tempur-Pedic product even though the alleged misrepresentations about, and

2    the harms resulting from, each product may be different.  ECF No. 220 at 61-62.  This is an

3    argument about predominance, not ascertainability.  See Kurihara v. Best Buy Co., No. C 06-

4    01884 MHP, 2007 WL 2501698, at *5 (N.D. Cal. Aug. 30, 2007) ("When rejecting class

5    certification based on overbreadth, however, the problem lies in the court's ability to ascertain the

6    class, not whether the putative classmembers have been aggrieved.").

7         Defendants also argue that the class is overbroad because it does not differentiate between

8    the different lengths of statutes of limitations for the various states.  They argue that if the class is

9    certified, the period for each state subclass should be limited by their respective statutes of

10   limitations.  Once again, this argument does not concern ascertainability.

11        The Court concludes that the class is ascertainable.

12        **E.    Superiority**

13        A class action must be "superior to other available methods for fairly and efficiently

14   adjudicating the controversy."  Fed. R. Civ. Pro. 23(b)(3).  "The superiority inquiry under Rule

15   23(b)(3) requires determination of whether the objectives of the particular class action procedure

16   will be achieved in the particular case."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1023 (9th Cir.

17   1998).  Though the nature of the litigation and the size of the class suggest that classwide

18   resolution might be preferable, all else being equal, the Court has also concluded that resolving

19   Plaintiffs' claims would require a highly individualized inquiry into each class member's exposure

20   to Defendants' advertising.  Accordingly, it concludes that a class action would not be a superior

21   mechanism for resolving this dispute.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

United States District Court
Northern District of California

**CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Class Certification is denied.[9]

A Case Management Conference is hereby scheduled for Wednesday, October 26, 2016 at 2:00 p.m.  A Joint Case Management Statement shall be filed by Monday, October 17, 2016 at 5:00 p.m.

IT IS SO ORDERED.

Dated:  September 30, 2016

_____
JON S. TIGAR
United States District Judge

---

[9] In light of this conclusion, the Court does not consider Defendants' objections to the reports of Dr. Aimee Rossi and Dr. Peter Rossi submitted along with Plaintiffs' Reply in support of class certification.  ECF No. 272.