UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVIN TODD, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> TEMPUR-SEALY INTERNATIONAL, INC., et al., <br><br> Defendants. | Case No.13-cv-04984-JST <br><br> **ORDER DENYING MOTION FOR RECONSIDERATION** <br><br> Re: ECF No. 300 |

Before the Court is Plaintiffs' motion for reconsideration. ECF No. 300. The Court will deny the motion.

## I. BACKGROUND

Plaintiffs bring this action on their own behalf and on behalf of a putative class of purchasers of Tempur products against Tempur-Sealy International, Inc. and Tempur-Pedic North America, LLC (collectively "Defendants") for claims arising out of Defendants' marketing and sale of mattresses, pillows, and other bedding products containing Tempur material. Specifically, Plaintiffs allege that Defendants' representations of their Tempur products as "formaldehyde free," "free of harmful VOCs," "allergen and dustmite resistant," "hypoallergenic," and with a "completely harmless" odor, are false and misleading. ECF No. 156 ("TAC") ¶¶ 3(h), 3(m), 3(n), 4. Plaintiffs allege that Defendants knew their products did not conform to these representations because internal testing revealed that Defendants' products off-gassed many VOCs, including formaldehyde, which can cause allergic reactions. Id. ¶ 4. Further, Plaintiffs claim that Defendants were aware of customer complaints about the odor and corresponding physical symptoms such as headache, nausea, asthma, eye and throat irritation, and allergic reactions. Id.

On September 30, 2016, the Court denied Plaintiffs' motion for class certification. ECF

No. 284. The Court concluded that Plaintiffs had satisfied the numerosity, typicality, and adequacy prongs of Federal Rule of Civil Procedure 23(a), but found that Plaintiffs had failed to demonstrate commonality, predominance,[1] and superiority.

In their class certification motion, Plaintiffs argued that class-wide exposure to Defendants' misrepresentations could be inferred from the "massive advertising and brandbuilding program" and a "tightly controlled" marketing campaign conducted by Defendants. ECF. No. 269 see also Transcript of August 18, 2016 Oral Argument ("Transcript"), ECF No. 282, at 42:16-19. After "review[ing] the complete body of evidence offered by Plaintiffs in support of class certification, [however,] the Court [found] they ha[d] failed to demonstrate the marketing at issue was sufficiently extensive such that one can infer exposure on a class-wide basis." ECF No. 284 at 18.

The Court identified various evidentiary and theoretical problems with Plaintiffs' argument of class-wide exposure. For example, Plaintiffs' most-touted statistic – that Defendants' advertising generated "4.3 billion consumer impressions per month" – in actuality offered little evidentiary support because Plaintiffs did not explain (1) what the definition of an "impression" is; (2) how "impressions" are measured; or (3) whether the period of time that these "impressions" were calculated overlaps with the applicable time period for the class. Id. at 18. Nor did Plaintiffs identify which "impressions" were based on Defendants' alleged health-related misrepresentations, versus its other claims. Id. The Court identified similar flaws with Plaintiffs' contention that Defendants produced "300 million pages" of "targeted content (direct mail)." Id.

Moreover, Plaintiffs' mass exposure argument suffered from two theoretical flaws. First, the Court determined that it was wrong to "assume[] that mattress customers buy a product based on any particular marketing representation that they viewed or heard prior to their purchase. Indeed, many mattress consumers – including, potentially, some of the named Plaintiffs – likely entered a store with no specific idea of the brand or product they wish to buy, and make their purchase based simply on their impressions while shopping." Id. at 20. Second, because more

---

[1] To certify a Rule 23(b)(3) class, a plaintiff must show, in addition to commonality under Rule 23(a), that these common questions "predominate over any questions affecting only individual members."

2

than 90% of Defendants' products are sold by "over 10,000" third party retailers, ECF No. 220 at 33, Plaintiffs' needed to "demonstrate that third party retailers actually implemented [Defendant's advertising] campaign by showing Defendants' materials to class members." ECF No. 284 at 20. Yet Plaintiffs' provided "virtually no evidence" about the conduct of these third parties. Id.

Due to these flaws, the Court concluded that Plaintiffs had failed to "put forth evidence that would allow an inference of class-wide reliance." Id. at 21. And without such an inference, "the need to individually decide whether class members had been exposed to the alleged misrepresentations would dominate over other commonly shared issues of law or fact." Id. The Court also noted that "Plaintiffs premise[d] their misrepresentation by omission and unjust enrichment claims on the same alleged marketing campaign, and ma[d]e the same arguments in relation to class certification." Id. Therefore, the Court concluded that common issues of fact did not predominate for those claims for the same reason. Id. Finally, because resolving Plaintiffs' claims would require a highly individualized inquiry into each class member's exposure to Defendant's advertising, the Court determined that a "class action would not be a superior mechanism for resolving this dispute." Id. at 22. The Court then denied Plaintiffs' class certification motion.

On April 12, 2017, Plaintiffs filed a motion for reconsideration of the Court's order denying class certification. ECF No. 300.[2] Plaintiffs claim the Court erred in its commonality, predominance, and superiority findings.

## II. LEGAL STANDARD

Local Rule 7–9 provides that a party moving for leave to file a motion for reconsideration must show:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the

---

[2] The motion was originally filed on April 3, 2017, ECF No. 292, but was re-filed to comply with Local Rule 7-9(a).

3

time of such order; or

(3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L.R. 7–9(b).

### III. ANALYSIS

#### A. Commonality and Predominance

Plaintiffs argue the Court erred in its commonality and predominance finding when it concluded that Plaintiffs "failed to demonstrate the marketing at issue was sufficiently extensive such that one can infer exposure on a class-wide basis." ECF No. 284 at 18.

First, Plaintiffs claim this finding is inconsistent with the Ninth Circuit's recent decision in Briseno v. ConAgra Foods, Inc., 844 F.3d 1121 (9th Cir. 2017). In Briseno, the defendant "opposed class certification on the ground that there would be no administratively feasible way to identify members of the proposed classes because consumers would not be able to reliably identify themselves as class members." Id. at 1124. The Ninth Circuit rejected this argument, holding that a "separate administrative feasibility prerequisite to class certification is not compatible with the language of Rule 23." Id. at 1123. According to Plaintiffs, this Court's conclusion that "the need to individually decide whether class members had been exposed to the alleged misrepresentation would dominate over other commonly shared issues of law or fact," ECF No. 284 at 21, "essentially injects an administrative feasibility requirement" into the case, ECF No. 300 at 11. Plaintiffs therefore claim the Court's Order contravenes Briseno.

The Court disagrees that its commonality analysis conflicts with Briseno's rejection of the administrative feasibility requirement. The Court found that individualized showings of reliance would be necessary only after it concluded that Plaintiffs had failed to demonstrate class-wide exposure. The Court's holding does not impose a freestanding administrative feasibility requirement; it simply follows naturally from Plaintiffs' failure to provide sufficient evidence of a widespread and extensive advertising campaign to obtain a presumption of class-wide reliance. Indeed, the Ninth Circuit made almost an identical finding in Mazza v. American Honda Motor Co., 666 F.3d 581, 596 (9th Cir. 2012). There, because the plaintiffs failed to sufficiently demonstrate a "massive advertising campaign," the court concluded that common questions of fact

4

would not predominate because "an individualized case must be made for each member showing reliance." Id. at 596. The Briseno court emphasized that its opinion was limited to whether the Ninth Circuit imposed an "ascertainability" requirement, and did not reach questions like predominance. 844 F.3d at 1125 n.4 ("Although the parties here use the word "ascertainability," they dispute only whether a class proponent must proffer an administratively feasible way to identify class members. *That is therefore the only issue we decide.*" (emphasis added)). Briseno did not address Mazza, much less overrule it, and the Court therefore rejects this basis for Plaintiffs' motion.

Second, Plaintiffs argue that the Court misapplied Berger v. Home Depot USA, Inc., 741 F.3d 1061 (9th Cir. 2014), when it explained that Plaintiffs needed to show that "class members were exposed to the alleged misrepresentations in the first place." ECF No. 284 at 13. Specifically, Plaintiffs emphasize Berger's statement that "the victim's reliance on the false statements . . . [is] not required to show a violation of California's UCL." Id. at 1068. But Plaintiffs' quote from Berger is selective and misleading. The Ninth Circuit went on to state that "the question of likely deception does not automatically translate into a class-wide question" because, for example, "it might well be that there was no cohesion among the members because they were exposed to quite disparate information from various representatives of the defendant." Id. (citing Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1020–21 (9th Cir. 2011). The court then concluded that the Berger had *not* made the requisite showing to warrant a presumption of class-wide reliance. Id. at 1169. Berger supports, rather than undermines, the Court's Order.

Third, Plaintiffs claim that, in analyzing commonality and predominance, the Court focused exclusively on exposure to Defendants' affirmative misrepresentations, neglecting "Defendants' omissions and the effect of Defendants' misleading 'health and wellness efforts.'" ECF No. 292 at 12-23.[3] As the Court stated in its Order, however, Plaintiffs' failure to demonstrate class-wide exposure to the misrepresentations also doom these alternatives theories.

---

[3] Plaintiffs also claim that the Court improperly "cross[ed] into weighing evidence, determining fact issues and analyzing expert testimony, and determining the merits of the underlying class claims" but do not explain *how* the Court did so. ECF No. 300 at 9. Accordingly, the Court focuses on Plaintiffs' related argument that the Order did not consider other modes of exposure.

Even if Defendants' health and wellness branding efforts were deceptive, for example, Plaintiffs did not demonstrate how many of its "customer impressions" were health related. Likewise, there is no reason that Plaintiffs' failure to show that Defendants' 10,000 third party retailers actually implemented the marketing campaign would not apply equally to any health and wellness branding efforts. Finally, even if Defendants had included a "disclosure to consumers that Defendants' products contained harmful chemicals," Plaintiffs still cannot show that those disclosures would have reached consumers.[4] Therefore, the fact that the Court did not separately the reliance question for these two alternative "modes of 'exposure'" is not grounds for reconsidering the Order.[5]

Plaintiffs' reliance on <u>Daniel v. Ford Motor Co</u>., 806 F.3d 1217 (9th Cir. 2015), is unavailing. In that case, the plaintiffs sued over certain "rear suspension defects" in Ford Focus vehicles, which they alleged Ford should have disclosed. <u>Id.</u> at 1220. The Ninth Circuit reversed a grant of summary judgment in favor of Ford in part because the "[p]laintiffs presented evidence that they interacted with and received information from sales representatives at authorized Ford dealerships prior to purchasing their Focuses." <u>Id.</u> at 1225. This was sufficient, according to the court, "to sustain a factual finding that Plaintiffs would have been aware of the disclosure if it had been made through Ford's authorized dealerships." <u>Id.</u> Here, by contrast, the Court explicitly

---

[4] In any event, as Defendants note in their opposition, Plaintiffs confirmed at the hearing on the certification motion that any omissions were relevant only if Defendants also made affirmative misrepresentations:

> [MR. SHIPMAN:] *If the representations were true, they would have no duty to speak the truth*. We think the record is replete with evidence that they didn't speak the truth, that—
>
> THE COURT: Can we agree the same thing I just said is true with regard to the omission claims, because it's affirmative representations that give rise to a duty to speak? So either the—so if the same analysis would apply. Either a uniformity of representation, or the benefit of the Tobacco II cases, that's equally true for the omission claims, too, isn't it?
>
> MR. SHIPMAN: I would think so, Your Honor.

ECF No. 303-2 at 6 (emphasis added).

[5] Nor did the Court hold, as Plaintiffs suggest, that an omissions claim can never succeed absent evidence that the omissions were tied to affirmative misrepresentations. ECF No. 304 at 14-15.

found that Plaintiffs had "provide[d] virtually no evidence" that Defendants' third party retailers were disseminating Defendants' marketing campaign. ECF No. 284 at 20. Unlike in Daniel, there is no reason to think that "Plaintiffs would have been aware of [a] disclosure" about harmful materials in its products, even if that disclosure were part of its advertising plan.[6] See also Butler v. Porsche Cars North America, Inc., No. 16-CV-2042-LHK, 2017 WL 1398316, at *10-11 (N.D. Cal. Apr. 19, 2017) (denying certification partly because plaintiffs gave the court "no basis to find that all class members were exposed to a Porsche representation with omissions, or that class members would have been aware of a disclosure about the defect from Porsche in a common way had a disclosure been made.") (internal quotation marks omitted). In sum, the Court continues to conclude that Plaintiffs failed to demonstrate commonality and predominance.[7]

### B. Superiority

Finally, Plaintiffs argue that the Court should reconsider its superiority finding. ECF No. 300 at 23. Plaintiffs first argue that "because individual recoveries in this litigation would likely be too small to justify litigation, class treatment is the only option." ECF No. 300 at 25. They cite Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234–35 (9th Cir. 1996), for the proposition that "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," but ignore the fact that the court found plaintiffs had failed to show "why the class mechanism is superior to alternative methods of adjudication." Like in Valentino, Plaintiffs did not demonstrate that class treatment would be superior given the predominance of individualized inquiries at the liability stage

Next, Plaintiffs argue that the Court improperly based its superiority finding on the need

---

[6] Plaintiffs' arguments that they presented substantial evidence of (1) the harmful chemicals in Defendants' products and (2) the fact that customers would have adversely reaction to disclosures about those chemicals are beside the point absent evidence of class-wide exposure.

[7] In reply, Plaintiffs argue that their claims for injunctive relief mean the commonality and predominance requirements are satisfied and that the Court erred in finding otherwise. ECF No. 304 at 16. But the closest Plaintiffs came to making this argument in their motion was to state in a footnote that "[i]t is also important to recognize this case seeks injunctive relief against Defendants' deceptive business practices." ECF No. 300 at 15 n.4. The Court does not consider new facts or argument made for the first time in a reply brief. "It is inappropriate to consider arguments raised for the first time in a reply brief." Ass'n of Irritated Residents v. C & R Vanderham Dairy, 435 F.Supp.2d 1078, 1089 (E.D. Cal. 2006).

for an individualized inquiry into each class member's exposure to Defendants' advertising. ECF No. 300 at 25. As support, Plaintiffs point to the well-established proposition that the need for individualized "damage calculations alone cannot defeat certification." Leyva v. Medline Indus. Inc., 716 F.3d 510, 513 (9th Cir. 2013). Yet in this case, as Plaintiffs concede, the individualized inquiry relates to liability, not damages. This Court is not aware of any precedent that prohibits a Court from considering the need for individualized liability determinations when determining if a class action is the superior method of adjudication, and Plaintiffs have not identified any. The Court will not reconsider its superiority finding.

### C. Sub-Classes

Should the Court not reconsider its denial of class certification, Plaintiffs seek leave to "submit a proposal for division of the proposed class into subclasses." ECF No. 300 at 26. Plaintiffs offer little information about how they intend to define the subclasses except to say that one subclass could be created for class members misled by an omission and another subclass for those class members directly exposed to affirmative misrepresentations. Id. But that division would not solve the problem of Plaintiffs' failure to show class-wide exposure to Defendants' marketing scheme, which pervades its various modes of exposure theories. The Court denies this request.

### CONCLUSION

The motion for reconsideration is denied.

IT IS SO ORDERED.

Dated: June 30, 2017

JON S. TIGAR
United States District Judge