UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVIN TODD, ET AL.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>TEMPUR-SEALY INTERNATIONAL, INC., et al.,<br><br>　　　　　Defendants. | Case No.13-cv-04984-JST<br><br>**ORDER GRANTING MOTION TO SEVER AND TO TRANSFER**<br><br>Re: ECF No. 291 |

Before the Court is Defendants' motion to sever Plaintiffs' claims and to transfer claims of severed Plaintiffs. ECF No. 291. The Court will grant the motion.

## I. BACKGROUND

Plaintiffs bring this action on their own behalf and on behalf of a putative class of purchasers of Tempur products against Tempur-Sealy International, Inc. and Tempur-Pedic North America, LLC (collectively "Defendants") for claims arising out of Defendants' marketing and sale of mattresses, pillows, and other bedding products containing Tempur material. Specifically, Plaintiffs allege that Defendants' representations of their Tempur products as "formaldehyde free," "free of harmful VOCs," "allergen and dustmite resistant," "hypoallergenic," and with a "completely harmless" odor, are false and misleading. ECF No. 156 ("TAC") ¶¶ 3(h), 3(m), 3(n), 4. Plaintiffs allege that Defendants knew their products did not conform to these representations because internal testing revealed that Defendants' products off-gassed many VOCs, including formaldehyde, which can cause allergic reactions. Id. ¶ 4. Further, Plaintiffs claim that Defendants were aware of customer complaints about the odor and corresponding physical symptoms such as headache, nausea, asthma, eye and throat irritation, and allergic reactions. Id.

On September 30, 2016, the Court denied Plaintiffs' motion for class certification. ECF

No. 284. The Court concluded that Plaintiffs had satisfied the numerosity, typicality, and adequacy prongs of Federal Rule of Civil Procedure 23(a), but found that Plaintiffs had failed to demonstrate commonality, predominance,[1] and superiority.

In their class certification motion, Plaintiffs argued that class-wide exposure to Defendants' misrepresentations could be inferred from the "massive advertising and brandbuilding program" and a "tightly controlled" marketing campaign conducted by Defendants. ECF. No. 269; see also Transcript of August 18, 2016 Oral Argument ("Transcript"), ECF No. 282, at 42:16-19. After "review[ing] the complete body of evidence offered by Plaintiffs in support of class certification, [however,] the Court [found] they ha[d] failed to demonstrate the marketing at issue was sufficiently extensive such that one can infer exposure on a class-wide basis." ECF No. 284 at 18.

The Court identified various evidentiary and theoretical problems with Plaintiffs' argument of class-wide exposure. For example, Plaintiffs' most-touted statistic – that Defendants' advertising generated "4.3 billion consumer impressions per month" – in actuality offered little evidentiary support because Plaintiffs did not explain (1) what the definition of an "impression" is; (2) how "impressions" are measured; or (3) whether the period of time that these "impressions" were calculated overlaps with the applicable time period for the class. Id. at 18. Nor did Plaintiffs identify which "impressions" were based on Defendants' alleged health-related misrepresentations, versus other marketing claims. Id. The Court identified similar flaws with Plaintiffs' contention that Defendants produced "300 million pages" of "targeted content (direct mail)." Id.

Moreover, Plaintiffs' mass exposure argument suffered from two theoretical flaws. First, the Court determined that it was wrong to "assume[] that mattress customers buy a product based on any particular marketing representation that they viewed or heard prior to their purchase. Indeed, many mattress consumers – including, potentially, some of the named Plaintiffs – likely entered a store with no specific idea of the brand or product they wish to buy, and make their

---

[1] To certify a Rule 23(b)(3) class, a plaintiff must show, in addition to commonality under Rule 23(a), that these common questions "predominate over any questions affecting only individual members."

2

purchase based simply on their impressions while shopping." Id. at 20. Second, because more than 90% of Defendants' products are sold by "over 10,000" third party retailers, ECF No. 220 at 33, Plaintiffs' needed to "demonstrate that third party retailers actually implemented [Defendant's advertising] campaign by showing Defendants' materials to class members." ECF No. 284 at 20. Yet Plaintiffs' provided "virtually no evidence" about the conduct of these third parties. Id.

Due to these flaws, the Court concluded that Plaintiffs had failed to "put forth evidence that would allow an inference of class-wide reliance." Id. at 21. And without such an inference, "the need to individually decide whether class members had been exposed to the alleged misrepresentations would dominate over other commonly shared issues of law or fact." Id. The Court also noted that "Plaintiffs premise[d] their misrepresentation by omission and unjust enrichment claims on the same alleged marketing campaign, and ma[d]e the same arguments in relation to class certification." Id. Therefore, the Court concluded that common issues of fact did not predominate for those claims for the same reason. Id. Finally, because resolving Plaintiffs' claims would require a highly individualized inquiry into each class member's exposure to Defendant's advertising, the Court determined that a "class action would not be a superior mechanism for resolving this dispute." Id. at 22. The Court then denied Plaintiffs' class certification motion.

On April 12, 2017, Plaintiffs filed a motion for reconsideration of the Court's order denying class certification. ECF No. 300.[2] Plaintiffs claimed the Court erred in its commonality, predominance, and superiority findings. The Court denied the motion for reconsideration on June 30, 2017. ECF No. 308. Given that ruling, the Court now considers Defendants' motion to sever Plaintiffs' claims and to transfer claims of severed Plaintiffs to the judicial districts in which they reside. ECF No. 291 at 5.

## II. MOTION TO SEVER

### A. Legal Standard

"If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties." Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997). "Under Federal

---

[2] The motion was originally filed on April 3, 2017, ECF No. 292, but was re-filed to comply with Local Rule 7-9(a).

Rule of Civil Procedure 20(a), permissive joinder of plaintiffs 'is proper if (1) the plaintiffs assert[] a right to relief arising out of the same transaction and occurrence and (2) some question of law or fact common to all the plaintiffs will arise in the action.'" Visendi v. Bank of Am., N.A., 733 F.3d 863, 870 (9th Cir. 2013) (quoting Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir.2000)); Fed. R. Civ. P. 20(a).

"Even once these requirements are met, a district court must examine whether permissive joinder would "comport with the principles of fundamental fairness" or would result in prejudice to either side. Coleman, 232 F.3d at 1296.

**B.     Analysis**

"The first prong, the 'same transaction' requirement, refers to similarity in the factual background of a claim." Coughlin, 130 F.3d at 1350. The single transaction requirement "is not met where plaintiffs would have to prove their claims or defendants would have to litigate their defenses on an individualized basis." Corley v. Google, Inc., 316 F.R.D. 277, 283 (N.D. Cal. 2016). Although not identical, "the predominance analysis under Rule 23(b) and the single transaction or occurrence analysis under Rule 20(a) may, in some instances, be two sides of the same coin." Id. at 286.

Here, severance is proper largely for the same reasons that class certification was not proper. In denying class certification, the Court found that Plaintiffs had failed to demonstrate that Defendants' marketing campaign was sufficiently extensive such that one could infer exposure on a class-wide basis. ECF No. 284. This means a fact finder will need to individually decide whether and how each Plaintiff was exposed to the alleged misrepresentations. Id. Some Plaintiffs may have relied on a specific representation by a third party retailer that a mattress was free of toxic chemicals. Others may have been enticed by marketing materials advertising Defendants' health and wellness brand. The potential factual dissimilarities in each Plaintiff's experience weigh in favor of severance.

The leading Ninth Circuit cases on severance support this conclusion. In Visendi v. Bank of America, N.A., the court severed the claims of 137 named plaintiffs who alleged that the defendant banks' "deceptive mortgage lending and securitization practices decreased the value of their homes, impaired their credit scores, and compromised their privacy." 733 F.3d 863, 866 (9th

4

Cir. 2013). The required factual similarity was absent, the court found, because the "case involves over 100 distinct loan transactions with many different lenders, [t]hese loans were secured by separate properties scattered across the country, and some of the properties, but not all, were sold in foreclosure." Id. at 870. Even though the plaintiffs had alleged that "Defendants' misconduct was 'regular and systematic,'" the court determined that "their interactions with Defendants were not uniform." Id. On that basis, the court severed the plaintiffs' claims.

The Ninth Circuit likewise granted the defendant's motion to sever in Coughlin, where 49 plaintiffs alleged that their immigration applications and petitions had been "unreasonably delayed . . . in violation of the Administrative Procedure Act ('APA') and the United States Constitution." 130 F.3d at 1350. The court explained that "the mere allegation of general delay is not enough to create a common transaction or occurrence" because "[e]ach Plaintiff [] waited a different length of time, suffering a different duration of alleged delay." Id. Also weighing in favor of severance was the fact that the "delay [wa]s disputed in some instances[,] varie[d] from case to case," and that there might "be numerous reasons for the alleged delay." Id.

Coughlin and Visendi counsel in favor of severing Plaintiffs' claims. See also Garner v. Bank of Am. Corp., No. 2:12-CV-02076-PMP, 2014 WL 1945142, at *4 (D. Nev. May 13, 2014) ("While Plaintiffs here allege in some detail an overarching conspiracy and coordinated conduct, which the Visendi plaintiffs apparently did not allege or alleged only in conclusory fashion, Plaintiffs' claims nevertheless will entail individualized inquiry, such as what representations were made to them by their respective loan officers and whether each Plaintiff justifiably relied on those alleged misrepresentations."). Like in those cases, there are important, individualized questions that must be answered about Plaintiffs' separate claims. For example, there are likely "numerous reasons" that each Plaintiff chose to purchase one of Defendants' products. See Coughlin, 130 F.3d at 1350. As the Court noted in its Order on class certification, it is wrong to "assume[] that mattress customers buy a product based on any particular marketing representation that they viewed or heard prior to their purchase. Indeed, many mattress consumers – including, potentially, some of the named Plaintiffs – likely entered a store with no specific idea of the brand or product they wish to buy, and make their purchase based simply on their impressions while shopping." ECF No. 284 at at 20. Similarly, without any evidence that the third-party retailers

5

actually implemented Defendants' marketing plan, it is more than plausible that Plaintiffs had distinct experiences when buying their mattresses. At bottom, the Court finds that Plaintiffs' "interactions with Defendants were not uniform," 733 F.3d at 870, and that Rule 20's "same transaction" requirement is therefore not satisfied.

Moreover, joinder has the potential to prejudice both parties. See Coleman, 232 F.3d at 1296. As Defendants have explained, the testimony of certain Plaintiffs is stronger or more credible than others. For example, some Plaintiffs admitted to not having seen certain advertisements, ECF No. 291-2, and others submitted declarations about which marketing materials they relied on that may be inconsistent with their deposition testimony. Compare ECF No. 191-15 with ECF No. 191-21. Another district court recently explained the dangers of joinder in a case like this: "There is a risk that a jury might conclude that one plaintiff's misuse of a product bars all of the other plaintiffs' individual claims. Similarly, 'one plaintiff, despite a weaker case of causation, could benefit merely through association with the stronger plaintiff's case.'" Czuchaj v. Conair Corp., No. 313-cv-01901, 2016 WL 4216686, at *2 (S.D. Cal. Aug. 10, 2016) (quoting Rubio v. Monsanto Co., 181 F. Supp. 3d 746, 758 (C.D. Cal. 2016). The same principles apply here.

Defendant also voices a reasonable concern that Plaintiffs will seek to emphasize the materiality of the alleged misrepresentations, and downplay the equally important question of whether each Plaintiff actually viewed and then relied on those advertisements. The Rubio court recognized a similar danger in that case, in which the two plaintiffs claimed to have developed cancer from exposure to Monsanto's herbicides. 181 F. Supp. 3d at 754-55. The court explained why "trying the two claims together may be prejudicial":

> Plaintiffs appear to view their most important task in this case as being the need to prove that Roundup causes cancer generally. In order to state a claim, however, they must also demonstrate that Roundup caused their individual instances of cancer. Consolidating the two claims may give rise to the easy, potentially prejudicial inference that if Roundup caused Rubio's cancer it caused Mendoza's as well, or vice versa.

Id.; see also Alvarado v. FedEx Corp., No. C 04-00098 SI, 2006 WL 1465522, at *1 (N.D. Cal. May 25, 2006) ("In light of the disparate and fragmented nature of plaintiffs' remaining claims, the Court is persuaded that combining the cases for trial would prejudice FedEx. Jurors would be

presented with a 'parade of horribles,' in which the whole may very well be greater than the sum of its parts."). For this reason, too, the risk of prejudice weighs in favor of severance.

Although Plaintiffs attempt to distinguish some of the authorities Defendant cites in favor of severance, they identify no case with analogous facts in which the court denied a motion to sever. Rather, Plaintiffs repeat the arguments from their reconsideration motion that Rule 20 is satisfied because "all [Plaintiffs] were misled by Defendants' material omissions." ECF No. 293. at 7. The Court explained in its order denying that motion why Plaintiffs' omissions theory suffers from the same defects as its affirmative misrepresentations theory. In sum, Plaintiffs offer no persuasive argument for keeping Plaintiffs' claims together. The Court grants the motion to sever.

## III. MOTION TO TRANSFER

### A. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404.[3] A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors," including: "(1) plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of books and records; (5) which forum's law applies; (6) the interests of justice; and (7) administrative considerations." Rubio, 181 F. Supp. 3d at 759 (quoting 15 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure, §§ 3841-55 (2007); see also Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99 (9th Cir. 2000) (listing additional factors).

### B. Analysis

Here, Defendants seek to transfer each Plaintiff's case back to his or her home district. As explained below, most but not all of the factors above weigh in favor of transfer.[4]

---

[3] Plaintiffs are correct that Defendant did not demonstrate in its motion that venue would be proper for each Plaintiff in the transferee districts. But Plaintiffs do not actually argue that venue would *not* be proper and Defendant argues persuasively in reply that it would. The Court rejects this argument against transfer.

[4] Because the Court granted the motion to sever, feasibility of consolidation weighs toward transfer. ECF No. 293 at 16; ECF No. 298 at 11.

7

The first factor, plaintiff's choice of forum, weighs slightly against transfer. It is well settled that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). Defendants argue, however, that Plaintiffs' choice is entitled to little weigh here because of the Ninth Circuit's clarification that "when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). Plaintiffs respond that this case is no longer a class action after the Court's order, thus restoring the deference given to Plaintiffs' choice of forum. ECF No. 293 at 13. Neither party points the Court to a case with a procedural posture like this one—where a motion to transfer is considered after a denial of class certification—but the Court sees no reason why Lou's logic would not apply. Plaintiffs' choice of forum was made when this case was still a putative class action. The Court will give Plaintiffs' choice of forum some deference, but does not consider it controlling.

The convenience of the parties and witnesses also weighs in favor of transfer. Although Plaintiffs do not object to traveling for trial, they cannot credibly argue that the Northern District of California is *more* convenient than their home districts. ECF No, 293 at 13. Defendants' convenience does not weigh either way since its home district is in Kentucky, where none of the cases would be tried. ECF No. 291. Because of the individualized liability questions described above, Defendants have indicated an intent to call at trial "representatives of retail stores that sold the mattresses" to each plaintiff, as well as friends or other who recommended the mattresses to Plaintiffs. ECF No. 291 at 15. These witnesses are likely to reside in the transferee districts. On the other hand, Plaintiffs state that their expert witnesses reside in California and would be inconvenienced by transfer. ECF No. 293 at 14. "The convenience of expert witnesses, however, is given little weight." Williams v. Bowman, 157 F. Supp. 2d 1103, 1108 (N.D. Cal. 2001). Accordingly, this factor weighs in favor of transfer.

The next factor is ease of access to the evidence. Plaintiffs' argue that this factor weighs against transfer because the expert witnesses reside in this district. ECF No. 293 at 15. But as Defendant notes and Plaintiffs acknowledge, advancements in technology mean this factor is

8

"increasingly irrelevant." Lax v. Toyota Motor Corp., 65 F. Supp. 3d 772, 780 (N.D. Cal. 2014) (quoting Fanning v. Capco Contrs., Inc., 711 F.Supp.2d 65, 70 (D.D.C. 2010)). Any expert report can be digitized; this factor is neutral.

The familiarity of each forum with the applicable law weighs in favor of transfer. Even if the different state laws at issue here are "all similar," presumably some differences exist, and the transferee courts are likely to be most familiar with the laws of the states in which they sit. This Court may be "capable of applying the laws of different states," ECF No. 293 at 16, but that does not mean it is most familiar. Relatedly, because, for the most part, Plaintiffs' claims arise from purchases of mattresses in their home states, those states have a somewhat greater interest in those claims than does this district. This factor, too, weighs slightly in favor of transfer.

The final factors discussed by the parties, court congestion and administrative considerations, do not weigh strongly in either direction. With no evidence about different congestion levels among the various courts, the Court concludes that this factor is neutral. Lax, 65 F. Supp. 3d at 781 (holding that where congestions differences were not "significant or stark" they did not "weigh on transfer"). Finally, the parties debate whether transfer would increase the costs in this case. Plaintiffs emphasize the cost of flying their experts to eleven different locations. ECF No. 293 at 18. The Court agrees that this cost is not insubstantial, but disagrees that it would increase costs eleven fold, given that the experts would likely spend the same time preparing and testifying regardless of where the trials held. Moreover, this increased cost presumably would be offset in some part by Plaintiffs and their local witnesses not having to travel to this district. This factor is neutral.

In sum, aside from Plaintiffs' choice of forum, each of the factors is either neutral or weighs in favor of transfer. Given that Plaintiffs' choice is entitled to less weight in this context, the Court grants the motion to transfer.

///

///

///

///

9

**CONCLUSION**

The motion to sever and transfer Plaintiffs' claims is granted.

IT IS SO ORDERED.

Dated: June 30, 2017

_____
JON S. TIGAR
United States District Judge